The Kantrow Law Group, PLLC
*Proposed Attorneys for Allan B. Mendelsohn, Trustee*
732 Smithtown Bypass, Suite 101
Smithtown, New York 11787
Fred S. Kantrow, Esq.
516 703 3672

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------------x
In re:                                                                                    Chapter 7
                                                                                                Case No.: 23-72433-reg
SPROUT MORTGAGE LLC,

                                Debtor.
---------------------------------------------------------------------x

**TRUSTEE'S APPLICATION SEEKING ENTRY OF AN ORDER
PURSUANT TO RULE 2004 OF THE FEDERAL RULES OF BANKRUPTCY
PROCEDURE AUTHORIZING THE SERVICE OF A SUBPOENA UPON
ELIZABETH (BETH) STRAUSS DIRECTING THE PRODUCTION OF DOCUMENTS
AND APPEARANCE FOR ORAL DEPOSITION**

TO:    HON. ROBERT E. GROSSMAN
          UNITED STATES BANKRUPTCY JUDGE

Allan B. Mendelsohn, the interim trustee (the "Trustee") of the Estate of Sprout Mortgage, LLC, the debtor (the "Debtor"), by and through his proposed attorneys, The Kantrow Law Group, PLLC, respectfully submits this as and for his application (the "Application") seeking the entry of an Order pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") authorizing the service of a subpoena upon Elizabeth (Beth) Strauss, directing the production of documents and directing appearance at an oral examination, and states as follows:

## BACKGROUND

1.      On or about July 5, 2023, an involuntary petition was filed against Sprout Mortgage LLC, seeking the entry of an Order for Relief pursuant to chapter 7 of title 11 of the United States Code (the "Bankruptcy Code"). After a contested hearing before the Court on August 9, 2023, at which Sprout Mortgage LLC opposed the entry of an Order for Relief, the Court determined that such relief was appropriate and should be granted. Upon the entry of the Order for Relief on

August 11, 2023, Allan B. Mendelsohn was appointed the interim Trustee. Due to the nature of this case, the Trustee has moved expeditiously to commence his administration of the estate.

2. Up to this date, the Trustee has spoken with numerous parties regarding the Debtor's pre-bankruptcy operations; the various pending litigations to which the Debtor and other "affiliated" parties are defendants; and the pending Fair Labor Standards Act class action case pending in the Eastern District of New York (the "FLSA Action").  The Trustee's limited review has allowed him to conclude that the Debtor has a significant creditor body consisting of priority wage claims, and substantial unsecured creditor claims.  Moreover, the Trustee understands that since the Debtor's abrupt closure in July of last year, the Debtor has continued to "winddown" its operations outside of the supervision of any court.

3. As part of the winddown, the Debtor remitted approximately $2,000,000.00 in connection with its settlement of the pending FLSA Action.  The Trustee has made demand upon the settlement agent holding this property of the estate for its immediate turnover and expects to receive a response to his demand for turnover shortly.

4. Upon information and belief, the Debtor operated as a mortgage originator and servicer of non-qualifying loans and based upon a review of the various pleadings in the various actions against the Debtor and "affiliates" was able to conclude that the Debtor's business model was to comingle mortgagors' payments on outstanding loans in its general operating accounts and use the funds to support its operations.  In an action commenced by PNC Bank ("PNC"), it alleged that the Debtor acted as an interim servicer of certain loans and despite the fact that PNC directed and expected mortgagors' payments to be directed to a lockbox, the funds were directed to the Debtor and comingled in its general operating account.  PNC alleged that it never received the

funds paid to the Debtor despite the fact that it had become the owner of the mortgage obligations. Similar allegations were made by other banks against the Debtor.

## **BETH STRAUSS**

5. A review of documents attached to various pleadings and made publicly available were documents executed by Michael Strauss ("Strauss"), believed to be the chief executive officer of the Debtor, on behalf of Sprout Mortgage Corporation; Recovco Mortgage Management, LLC; Sprout Mortgage Asset Trust; Sprout Mortgage LLC, and Biscayne Mortgage, LLC d/b/a Clear Path Mortgage. It is unknown whether these entities operated as separate distinct entities or whether they were simply alter-egos of the Debtor. The Trustee's investigation is expected to uncover this information.

6. In an action pending in the Supreme Court of New York, County of New York, styled *Wall Street Mortgage Bankers, Ltd., d/b/a Power Express v. Sprout Mortgage Asset Trust,* bearing Index No. 652687/2022, which action seeks to recover substantial damages against Sprout Mortgage Asset Trust, not the Debtor, the Trustee is reviewing documents to determine whether Sprout Mortgage Asset Trust is simply an alter-ego of the Debtor. According to the pending complaint, Sprout Mortgage Asset Trust operated from the same office location as the Debtor.

7. After the abrupt closing of the Debtor, Elizabeth Strauss, a/k/a Beth Strauss ("Beth"), the wife of Michael Strauss, allegedly formed and created an entity known as Smart Rate Mortgage, LLC ("Smart Rate"). Smart Rate operates from an office located at 9424 Baymeadows Road, Suite 250, Jacksonville, Florida 32256. A review of the information contained on the Smart Rate website (https://www.smartratemortgage.com/about-us) provides an Illinois Residential Mortgage License number 6761790 and an NMLS number 2420605.

8. On February 1, 2023, the State of Illinois, Department of Financial and Professional Regulation, Division of Banking, issued an Administrative Order suspending the license of Smart Rate. In its Order suspending the license, the Department stated that it "became concerned that not all pertinent information had been provided regarding the owner's background in the industry, including but not limited to the owner's experience with real estate finance, as required by Section 2-2(a)(5) of the Act."

9. The Order continued, "[T]he Department, to obtain this pertinent information, sent to SMART RATE MORTGAGE, a request for information on January 12, 2023 ("RFI"). The RFI requested written responses from SMART RATE MORTGAGE regarding relevant work experience with real estate finance, related licenses, duties with the company, as well as relationships with employees and other affiliations. The response to the RFI was due to the Department on or before January 19, 2023. SMART RATE MORTGAGE failed to respond to the RFI by the January 19, 2023 due date. The Department subsequently issued a Rule to Show Cause to SMART RATE MORTGAGE on January 23, 2023 ("RTSC") giving it an opportunity to present proof that it was no longer in violation of section 4-1(h-2) of the Act, and to provide the Department a complete response to the RFI by January 30, 2023, or an Order of Suspension would be issued. As of January 31, 2023, the Department still had not received a response from SMART RATE MORTGAGE regarding the RFI or the RTSC." A copy of the Order is annexed hereto as Exhibit "A." Upon information and belief, the defaults have never been cured, however, Smart Rate continues to operate. A call placed to its toll-free number was in fact answered by Michael Strauss.

10. The Trustee's concerns are many as they relate to the Debtor and its "relationship" with Smart Rate, which was formed just after the abrupt closing or collapse of the Debtor. The

Trustee must determine if Smart Rate is nothing more than the continuation of the Debtor and whether the Debtor's asserts were simply transferred to Smart Rate without consideration.

## RELIEF REQUESTED

11.     By this Application, the Trustee seeks an Order of this Court, substantially in the form of the proposed Order annexed hereto compelling Beth Strauss to produce documents specified in Schedule "A".

12.     Bankruptcy Rule 2004 provides, in pertinent part, as follows:

(a) Examination on Motion.  On Motion of any party in interest, the court may order the examination of any entity.

(b) Scope of Examination.  The examination of any entity under this rule or of the debtor under §343 of the Code may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge . . . [T]he examination may also relate to the operation of any business and the desirability of its continuance, the source of any money or property acquired by the debtor for purposes of consummating a plan and the consideration given therefor, and any other matter relevant to the case or to the formulation of a plan.

(c) Compelling Attendance and Production of Documents.  The attendance of an entity for examination and for the production of documents, whether the examination is to be conducted within or without the district in which the case is pending, may be compelled as provided in Rule 9016 for the attendance of a witness at a hearing or trial.  As an officer of the court, an attorney may issue and sign a subpoena on behalf of the court for the district in which the examination is to be held if the attorney is admitted to practice in that court or in the court in which the case is pending.
Fed. R. Bankr. P. 2004(a), (c), (d).

13.     Examinations under Rule 2004 include within their scope, *inter alia,* any matter that may relate to the property and assets of the estate; the financial condition of the debtor; any matter that may affect the administration of a debtor's estate. Courts have consistently recognized that the scope of discovery under Bankruptcy Rule 2004 is extraordinarily broad. *See, e.g., In re Ionosphere Clubs, Inc.,* 156 B.R. 414, 432 (S.D.N.Y. 1993) (likening the scope of a Rule 2004 examination to a 'fishing expedition'); *In re Bakalis,* 199 B.R. 443, 447 (Bankr. E.D.N.Y. 1996);

*In re Bennett Funding Group, Inc.,* 203 B.R. 24, 28 (Bankr. N.D.N.Y. 1996) (holding that the scope of a Rule 2004 examination is "admittedly unfettered and broad". (citations omitted).

14. The discovery sought by this Application goes directly to the acts, conduct and administration of the Debtor's estate. Specifically, the Trustee seeks, *inter alia,* information relating to the Debtor's finances and debt. Accordingly, the requested discovery is directly related to the "acts, conduct or property or to the liabilities of the Debtor's estate" and is appropriate under Rule 2004.

**WHEREFORE,** the Trustee respectfully requests that this Court grant the Application in its entirety and enter an Order substantially in the form of the proposed Order annexed hereto and grant any such further relief as this Court deems just and proper under the facts and circumstances herein.

Dated: Smithtown, New York
   August 17, 2023

          The Kantrow Law Group, PLLC
          Proposed Attorneys for Allan B. Mendelsohn, Trustee

          BY: S/Fred S. Kantrow
              Fred S. Kantrow
              732 Smithtown Bypass, Suite 101
              Smithtown, New York 11787
              516 703 3672
              fkantrow@thekantrowlawgroup.com