KASOWITZ BENSON TORRES LLP
1633 Broadway
New York, New York 10019
Tel: (212) 506-1700
Matthew B. Stein
Katherine C. Boatman

*Attorneys for Michael Strauss*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

In re

       Sprout Mortgage LLC,

                              Debtor.

Case No. 23-72433-reg

Chapter 7

----------------------------------------------------------------x

### MICHAEL STRAUSS' OBJECTION TO TRUSTEE'S APPLICATION FOR ENTRY OF AN ORDER DIRECTING TURNOVER OF PROPERTY OF THE ESTATE

Michael Strauss ("Strauss"), the chief executive of the debtor in the above-captioned chapter 7 case (the "Bankruptcy Case"), by and through its undersigned attorneys, hereby objects to the *Trustee's Application Seeking Entry of an Order Scheduling a Hearing on an Expedited Basis to Consider Application for Entry of an Order Directing Turnover of Property of the Estate* [Dkt. No. 37] (the "Motion"), and respectfully states as follows:

### PRELIMINARY STATEMENT

1.      On August 21, 2023, Allan B Mendelsohn, the interim chapter 7 trustee (the "Trustee"), prematurely filed the Motion seeking the turnover of funds that even the barest of due diligence would have revealed do not constitute property of the estate.

2.      The funds, approximately $1.95 million, are held in an escrow account by a third-party administrator pursuant to a settlement agreement among Sprout Mortgage, LLC ("Sprout"), Strauss, and certain class action plaintiffs. Strauss is also a defendant in that action and a party to

the settlement at issue.  In addition, he is contributing substantial funds to the settlement.  As a result, he is an aggrieved party in interest in this matter and has standing to assert this Objection.

3.      Case law in this district and elsewhere is unequivocal that funds held in an escrow account do not constitute property of a bankruptcy estate and are not subject to turnover. Moreover, turnover is not in the best interest of the debtor's estate.  Consummation of the settlement agreement remains in the best interest of the estate, is consistent with a distribution of assets set forth in the Bankruptcy Code, and there is no risk that the funds are at risk of distribution beyond the reach of this Court.

4.      Accordingly, the Court should deny the Motion.

## BACKGROUND

A.    **The Involuntary Case**.

5.      On July 5, 2023 (the "Petition Date"), New Wave Lending Group, Inc. ("New Wave"), JMJ Financial Group ("JMJ") and EF Mortgage LLC ("EF", and together with New Wave and JMJ, the "Petitioning Creditors") filed an involuntary petition on Official Form 205 (the "Involuntary Petition") against Sprout [Docket No. 1] with this Court and commenced this Involuntary Case.

6.      On August 11, 2023, the Court entered an Order granting the Involuntary Petition (the "Order").  [Docket No. 14.]

B.    **The Class Action Settlement**.

7.      On or about June 1, 2023, plaintiffs in certain pending class action litigations, Nathaniel Agudelo, Helen Owens, Holly Keith, and Amanda Cooper (collectively, the "Class Action Plaintiffs"), individually and on behalf of themselves and all others similarly situated, and Sprout, Strauss, Recovco Mortgage Management LLC, Christopher Wright, and Elliot Salzman

(collectively, the "Class Action Defendants" and together with the Class Action Plaintiffs, the "Settlement Parties") entered into a global settlement (the "Settlement Agreement") of the Class Action Plaintiffs' and class members' claims, along with those of the plaintiffs and class members of three related California class actions, for three million five hundred thousand dollars ($3,500,000.00).  A copy of the Settlement Agreement is attached as Exhibit A.

8.      On or about the same day, the Class Action Plaintiffs moved the United States District Court for the Eastern District of New York, the court in which one of the pending class action cases was pending, for approval of the Settlement Agreement.  *See Nathaniel Agudelo et al. v. Recovco Mortgage Management LLC et al.*, Case No.: 2:22-cv-04004-JMA-LGD, Docket No. 201 (E.D.N.Y. June 1, 2023).

9.      In pertinent part, the Settlement Agreement provides that upon full execution of the Settlement Agreement among the Settlement Parties, Sprout and/or Strauss, on behalf of all Class Action Defendants, shall, in anticipation of approval of the Settlement Agreement, commence funding of a settlement fund (the "Settlement Fund") to be established by Settlement Services, Inc. ("SSI" or "Escrow Agent"), who shall serve as escrow agent.  (Ex. A ¶ 66.) Pursuant to this provision, Sprout deposited approximately $1,950,000 into the Settlement Fund prior to the Petition Date.

10.     The Settlement Agreement provides that Sprout and Strauss have limited recourse to demand that the Escrow Agent return the funds contributed to the Settlement Fund. Specifically, a return of the Settlement Funds is only available to the extent that the Settlement Agreement is not finally approved, is overturned, or is modified on appeal or as a result of further proceedings on remand of any appeal with respect to the Settlement Agreement, or if the Effective Date otherwise does not occur.  (*Id.* ¶ 67.)

11.     The Settlement Agreement further provides that the Settlement Parties and SSI agree to treat the Settlement Fund as a "qualified settlement fund" within the meaning of Treasury Regulation § 1.468B-1, and the Escrow Agent, as administrator of the Settlement Fund within the meaning of Treasury Regulation § 1.468B-2(k)(3), shall be responsible for filing tax returns for the Settlement Fund and paying from the Escrow Account the requisite taxes owed with respect to the Settlement Fund, to the extent necessary.  (*Id.* ¶ 68.)

**C.      The Trustee's Turnover Demand.**

12.     On August 16, 2023, the Trustee sent SSI a letter demanding that it turnover the Settlement Funds by August 21, 2023.  On August 21, 2023, prior to the expiration of its self-imposed deadline, the Trustee filed the Motion.

## OBJECTION

**A.      The Settlement Funds Are Not Property of the Estate Subject to Turnover.**

13.     It is black letter bankruptcy law that funds that a debtor puts into escrow pre-petition are not property of the estate prior to satisfaction of the conditions for release; rather, it is only the debtor's contingent interest in the funds that is considered property of the estate.

14.     "In determining whether assets purportedly held in escrow are property of the estate, many courts begin with the threshold analysis of whether the arrangement presented to the court is in fact a true escrow."  5 Collier on Bankruptcy ¶ 541.09 (Alan N. Resnick & Henry J. Sommers eds., 16th ed.).  Under New York law, an escrow transaction exists when there is (i) an agreement (formal or informal) covering the subject funds, (ii) a third-party depositary, (iii) delivery of the subject funds to a third party conditioned upon the performance of some act or the happening of the event, and (iv) relinquishment by the promisor.  *Nat'l Union Fire Ins. Co. Pittsburgh v. Proskauer Rose Goetz & Mendelsohn*, 634 N.Y.S.2d 609, 614 (Sup. Ct. N.Y. Cnty.

1994); *see also Shron v. M & G Promo Service, Ltd. (In re Anthony Sicari, Inc.)*, 144 B.R. 656, 660 (Bankr. S.D.N.Y. 1992) (holding that under New York law, no formal or written agreement is required to create an escrow, however, delivery and retention by a third party until the occurrence of a contingency or performance of a condition is necessary); *Hassett v. Blue Cross & Blue Shield of Greater N.Y. (In re O.P.M Leasing Srvs., Inc.)*, 46 B.R. 661 (Bankr. S.D.N.Y. 1985) ("[W]hile the property is in the hands of the depositary it must be beyond the possession and control of the grantor.").

15.    Here, the Trustee cannot credibly dispute (if it actually engaged in the barest of due diligence) that a valid escrow exists:  (i) the parties executed an agreement governing the deposit of the funds that sets forth the specific terms of their release; (ii) the parties agreed that the funds would be deposited with SSI, a third-party depository; and (iii) the funds at issue were deposited with SSI.  Indeed, the conditions for disbursement from escrow are objective and beyond the discretion of the debtor -- the debtor's reversionary interest in the funds were limited to the event where the settlement does not receive final approval by the district court where approval is currently sought.

16.    While the deposit of property placed in escrow creates in the grantee an equitable interest that vests upon the performance of a condition or event, the grantor may also retain an equitable interest.  *TTS, Inc. v. Citibank, N.A. (In re TTS, Inc.)*, 158 B.R. 583, 586 (D. Del. 1993); *Fisher v. New York City Dep't Of Hous. Pres. and Dev. (In re Pan Trading Corp.)*, 125 B.R. 869, 878 (Bankr. S.D.N.Y. 1991) (citing *Press v. Marvalan Indus. Inc.*, 422 F. Supp. 346, 349 (S.D.N.Y. 1976) ("The grantor retains a right to the funds and incidents of ownership until the conditions of the escrow agreement are fulfilled.")).  Accordingly, pursuant to state law, the debtor's interest in the escrow, at most, is limited to such contingent, reversionary interest.

17.    "After the debtor's property interest is determined under state law, federal bankruptcy law will dictate to what extent that interest is property of the estate." *In re Rosenshein,* 136 B.R. 368, 372 (Bankr. S.D.N.Y. 1992) (citing *In re N.S. Garrott & Sons*, 772 F.2d 462, 466 (8th Cir. 1985), *rehearing den.* (Oct. 14, 1985) (*en banc*).  Section 541(a) of the Bankruptcy Code defines property of the estate to include "property, wherever located and by whomever held" including "[a]ny interest in property that the estate acquires after the commencement of the case." 11 U.S.C. § 541(a)(7).

18.    The Second Circuit has recognized that "'every conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within the reach of § 541.' Contractual rights clearly fall within the reach of this section . . . ." *Chartschlaa v. Nationwide Mut. Ins. Co.*, 538 F.3d 116, 122 (2d Cir. 2008) (quoting *In re Yonikus*, 996 F.2d 866, 869 (7th Cir. 1993)).  Despite this broad language, in cases involving escrow funds, courts have generally held that "[f]unds that are deposited into an escrow account by a debtor, for the benefit of others, cannot be characterized as property of the estate." *Dzikowski v. NASD Regulation, Inc. (In re Scanlon)*, 239 F.3d 1195, 1198 (11th Cir. 2001) (internal citations and quotations omitted); *see also In re Carousel Int'l Corp.*, 89 F.3d 359, 361-62 (7th Cir. 1996); *Carlson v. Farmers Home Admin. (In re Newcomb)*, 744 F.2d 621, 626-27 (8th Cir. 1984).

19.    Further, Section 541(d) of the Bankruptcy Code explicitly provides that "[p]roperty in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest . . . becomes property of the estate . . . only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold." 11 U.S.C. §541(d); *see also Alarmex Holdings, LLC v. Gowan (In re Dreier LLP)*, 527 B.R. 126, 133-34 (S.D.N.Y. 2014).  Moreover, Section 541 does not expand

debtor's rights beyond those that were available to him upon the filing date of the petition, nor does it divest third parties of their rights and interests then in existence. *In re Gonzalez*, 559 B.R. 326, 329–30 (Bankr. E.D.N.Y. 2016) ("A trustee takes no greater rights than the debtor had on the date of filing the petition.).

20.     Accordingly, escrowed property is not subject to turnover. *In re Royal Bus. Sch., Inc.*, 157 B.R. 932, 942 (Bankr. E.D.N.Y. 1993) (denying trustee's turnover request where debtor had only a contingent interest in escrow account); *see also Scanlon*, 239 F.3d at 1199 (holding by the Eleventh Circuit that funds placed in escrow to pay victims of the debtor's securities violations were beyond the debtor's control, could only be paid to the debtor's victims, and not property of the estate); *In re DeFlora Lake Dev. Assocs., Inc.*, 628 B.R. 189, 203-05 (Bankr. S.D.N.Y. 2021) (holding that property subject to express conditions specifying how and when property deeds would be released were not property of the estate subject to turnover); *Clancy v. Goldberg*, 183 B.R. 672, 676 (N.D.N.Y. 1995) (holding that "because the funds . . . were to be held in escrow by law . . . the debtor had neither a legal nor an equitable interest, and so the funds are not part of the bankruptcy estate.").

21.     Therefore, the Settlement Funds are not property of the Debtor's estate and not subject to turnover.

**B.**     **Turnover Is Not in the Best Interest of the Debtor's Estate**.

22.     Even if the Settlement Funds did constitute property of the Debtor's estate, which it does not, the Court should not grant turnover as such relief is not in the best interest of the estate.

23.     First, the Motion is premature.  By the Trustee's own admission and the August 16, 2023 letter that it sent to SSI and attached to the Motion, the Trustee demanded that SSI

turnover the Settlement Funds by August 21, 2023 – a mere three business later.  Even if such time was sufficient for SSI to respond to the letter (it needed to consult with the parties to the Settlement Agreement), the Trustee filed the Motion prematurely before the expiration of its own self-imposed deadline.  The Court should not condone the Trustee's willingness to forego communication and cooperation between parties in interest prior to Court intervention.

24.     Moreover, the Motion is premature because it is evident that the Trustee has failed to engage in any due diligence regarding the Settlement Agreement or the Settlement Funds.  If he had, the Trustee would have learned that the Settlement Funds were held in an escrow account and therefore, as set forth above, not subject to turnover.  Here, the expenditure of such time was warranted especially because there is no risk to the dissipation of the funds as they are held in escrow pending approval of the Settlement Agreement.

25.     Second, turnover would (and likely was designed to) threaten the resolution of a wide-ranging dispute through the Settlement Agreement.  The Settlement Agreement was, and remains, in the best interest of the Debtor's estate and all parties in interest.  It resolves over $20 million of claims against Sprout and other parties in a comprehensive and detailed manner.  Moreover, the Settlement Agreement, and therefore, the Settlement Funds themselves, is subject to the jurisdiction of the United States District Court for the Eastern District of New York where the parties seek approval of the Settlement Agreement.  Additionally, there is a substantial likelihood that the beneficiaries of the Settlement Agreement – former employees of Sprout – are all priority creditors pursuant to Section 507(a)(4) of the Bankruptcy Code.  As a result, even if the Settlement Funds are turned over, they will be distributed to the same beneficiaries.  If this is borne out, then the only thing turnover achieves is a reduction of the proceeds available for distribution following a deduction of the Trustee's commission from the Settlement Funds.  As

such, the Court should view this as a mere land grab benefiting only the Trustee to the detriment of all parties in interest.

26.     The Settlement Funds are currently protected, held in an escrow account pursuant to a Settlement Agreement under review by the district court.  There simply is no need for turnover now.

27.     Moreover, the granting of this relief, would in effect, divest the District Court of the *res* of the Settlement.  This Court should take no action in this matter until that court has an opportunity to consider this matter.  A motion for reconsideration is being filed contemporaneously with this Opposition and any relief should await a determination of that motion.  Lastly, the Debtor retains the right to convert this case to one under chapter 11 and will decide whether or not to make that election once the motion for reconsideration is determined.

## CONCLUSION

28.     For the foregoing reasons, the Court should deny the Motion.


Dated: New York, New York
        August 22, 2023

                                KASOWITZ BENSON TORRES LLP

                                By:  */s/ Matthew B. Stein*
                                        Matthew B. Stein
                                        Katherine C. Boatman
                                1633 Broadway
                                New York, New York 10019
                                (212) 506-1700

                                *Attorneys for Michael Strauss*

## <u>CERTIFICATE OF SERVICE</u>

I, Matthew B. Stein, an attorney, hereby certify that on August 22, 2023, a copy of the foregoing document was duly served to all registered parties through the CM/ECF system for the United States Bankruptcy Court for the Eastern District of New York, and by email upon the certain parties entitled to receive email service.

*/s/ Matthew B. Stein*
Matthew B. Stein
