EXHIBIT A

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------X

NATHANIEL AGUDELO, HELEN OWENS,
HOLLY KEITH, and AMANDA COOPER, on
behalf of themselves and other similarly
situated,

      *Plaintiffs, and Lead Plaintiffs for*
      *the Proposed Class,*

      -v-

RECOVCO MORTGAGE MANAGEMENT
LLC, SPROUT MORTGAGE LLC,
MICHAEL STRAUSS, CHRISTOPHER
WRIGHT, and ELLIOT SALZMAN,

      *Defendants*.

-------------------------------------------------------------------X

Civil Case No.:  22-cv-4004

[*PROPOSED CAPTION*]

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF NEW YORK

```
--------------------------------------------------   x
NATHANIEL AGUDELO, HELEN              :   Civil Action No. 22-cv-4004
OWENS, HOLLY KEITH, AMANDA            :
COOPER, BLAKE BOYER, LORI             :
STEWARD, MIKE SHIRDEL, JARED          :
SAWYER, SCOTT HARVEY, and             :
KAREN KELLEY, on behalf of            :
themselves and others similarly situated  :
                                      :
        Plaintiffs, and Lead          :
        Plaintiffs for the            :
        Proposed Class,               :
 v.                                   :
                                      x
RECOVCO MORTGAGE
MANAGEMENT LLC, SPROUT
MORTGAGE LLC, MICHAEL
STRAUSS, CHRISTOPHER WRIGHT,
SHEA PALLANTE, and ELLIOT
SALZMAN
        Defendants
--------------------------------------------------
```

2

**CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE**

This Class Action Settlement Agreement and Release, including Exhibits A - G hereto ("Settlement Agreement" or "Agreement"), is made and entered into by, between, and among on the one hand the Plaintiffs in the *Agudelo*, *Boyer*, *Sawyer* and *Kelley* Actions (as defined below),[1] on behalf of themselves and the Settlement Class and Collective as defined below, and on the other hand Defendants Recovco Mortgage Management LLC ("Recovco"), Sprout Mortgage LLC ("Sprout"), Michael Strauss ("Strauss"), Christopher Wright, Elliot Salzman, and Shea Pallante (collectively, "Defendants"). Named Plaintiffs and Defendants (collectively, the "Parties") enter into this Agreement to effect a full and final settlement and dismissal with prejudice of all claims brought against Defendants in *Nathaniel Agudelo, Helen Owens, Holly Keith, and Amanda Cooper, on behalf of themselves and others similarly situated v. Recovco Mortgage Management LLC, Sprout Mortgage LLC, Michael Strauss, Christopher Wright, and Elliot Salzman* ("*Agudelo* Action"); *Blake Boyer, Lori Steward, and Mike Shirdel, individuals, on behalf of themselves, and on behalf of all persons similarly situated v. Sprout Mortgage, LLC, a Delaware limited liability company; Recovco Mortgage Management, LLC, a Delaware limited liability company, Michael Strauss, an individual; and Does 1-50, Inclusive* ("*Boyer* Action"); *Jared Sawyer and Scott Harvey, individually and on behalf of all others similarly situated and all aggrieved employees v. Sprout Mortgage, LLC, Recovco Mortgage Management LLC, Michael Strauss, Shea Pallante, Christopher Wright, Elliot Salzman, and Does 1 through 25* ("*Sawyer* Action"); and *Karen Kelley, individually and on behalf of all other persons similarly situated, and on behalf of the general public v. Sprout Mortgage, LLC, a Delaware limited liability company, and Does 1 through 50,*

---

[1] Nathaniel Agudelo, Helen Owens, Holly Keith, Amanda Cooper, Blake Boyer ("Boyer"), Lori Steward, Mike Shirdel, Jared Sawyer ("Sawyer"), Scott Harvey, and Karen Kelley ("Kelley") (collectively the "Named Plaintiffs").

*inclusive* ("*Kelley* Action"); including all amended pleadings therein (collectively referred to as the "Action"), and all claims based on or reasonably related thereto. This Agreement is intended to fully and finally compromise, resolve, discharge, and settle the Released Claims, as defined and on the terms set forth below, and to the full extent reflected herein, subject to the approval of the Court.

## I.    RECITALS

This Agreement is made in consideration of the following facts:

### A.    *Agudelo* Action:

WHEREAS, on July 8, 2022, *Agudelo* Named Plaintiffs filed a class action complaint in the United States District Court for the Eastern District of New York asserting various wage- and expense-related claims against Sprout *et al*. on behalf of themselves and a proposed putative collective action under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. ("FLSA") consisting of "all similarly situated persons who were employed by [Sprout and Recovco] at any point from June 16, 2022, through July 6, 2022, and who did not receive minimum wages for all hours worked" and a proposed class under Article 6 of the New York Labor Law, N.Y. Lab. Law § 190, *et seq*. ("NYLL"), the federal Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101 *et seq*. (the "Federal WARN Act"), and the New York Worker Adjustment and Retraining Act, N.Y. Labor Law § 860 *et seq*. (the "NY WARN ACT") on behalf of "all other similarly situated former employees of Defendants who were terminated on or about July 6, 2022," thereby initiating the *Agudelo* Action, *see Agudelo* Dkt. 1;

WHEREAS, on August 3, 2022, *Agudelo* Named Plaintiffs filed a first amended complaint naming Defendants Salzman and Wright and adding one count alleging class violations of the

Employee Retirement Income Security Act, 29 U.S.C. §§ 1132(a)(3) and 1132(c)(1) ("ERISA"), *see Agudelo* Dkt. 26;

WHEREAS, on October 24, 2022, *Agudelo* Named Plaintiffs, filed a second amended complaint adding one count alleging violations of Consolidated Omnibus Budget Reconciliation Act, 29 U.S.C. § 1166(a) ("COBRA"), Dkt. 92.

WHEREAS, no trial date is set in the *Agudelo* Action, and no motion for certification has been made;

**B.    *Kelley*, *Sawyer*, and *Boyer* Actions:**

WHEREAS, on February 22, 2022, the *Kelley* Named Plaintiff filed a class action complaint in the Superior Court of the State of California for the County of Santa Cruz, Northern District alleging that Sprout and DOES 1 through 50 violated numerous provisions of the California Labor Code ("Cal. Labor Code") including allegations that Sprout failed to: pay overtime wages in violation of Cal. Labor Code §§ 510, 1194, and 1198; keep adequate records under Cal. Labor Code §§ 226 and 1174(d); provide meal periods under Cal. Labor Code §§ 226.7, 512, the Industrial Welfare Commission Wage Order ("IWC Wage Order"), and 8 *Cal. Code Regs.*, Title 8, § 11040, *et seq.*; provide rest periods under Cal. Labor Code §§ 226.7 and 512 and IWC Wage Order No. 4-2001 § 12 and *8 Cal. C. Regs* § 11040, *et seq.*; to provide accurate wage statements under Cal. Labor Code § 226(a); and also seeking waiting time penalties under Cal. Labor Code § 201, 202, and 203.  Further, Plaintiff included allegations that Defendants failed to: make proper disclosure and obtain proper authorization in violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA") and in violation of California's Investigative Consumer Reporting Agencies Act § 1786, *et seq.* ("ICRAA"), and also that

Defendants violated California's Business and Professions Code § 17200, *et seq*., (also referred to as California's Unfair Competition Law "Cal. UCL") thereby initiating the *Kelley* Action;

WHEREAS, on June 7, 2022, the case was transferred to the Superior Court of the State of California for the County of Orange, Central District;

WHEREAS, on June 7, 2022, the *Kelley* Named Plaintiff filed a first amended complaint asserting additional claims, including the failure to pay minimum wages under Cal. Labor Code §§ 1194, *et seq*. and those under the Cal. Labor Code Private Attorneys General Act, Cal. Labor Code § 2698, *et seq*. ("PAGA") on behalf of herself and proposed classes consisting of all current and former employees of or applicants for employment with Sprout who worked in the State of California and who allegedly:

- were not paid for all hours worked at the correct regular rate of pay, including any overtime compensation owed for hours worked in excess of 8 hours each day or 40 hours in each week, as well as any double-time compensation owed for hours worked in excess of 12 hours each day, within four (4) years of the date of commencement of this action through the date of final disposition of this action;

- were denied lawful duty-free meal periods and who were not paid one additional hour of pay at the employee's regular rate for each day that a lawful duty-free meal period was not provided within four (4) years of the date of commencement of this action through the date of final disposition of this action;

- were not provided with duty-free rest periods and who were not paid one additional hour of pay at the employee's regular rate for each day that a rest period was not provided within four (4) years of the date of commencement of this action through the date of final disposition of this action;

- were not provided with accurate itemized wage statements within four (4) years of the date of commencement of this action through the date of final disposition of this action;

- were paid on a salary basis and were classified as "exempt", but were not paid at least the minimum wage for all hours worked due to Defendants' failure to compensate them a fixed annual salary that met the minimum exemption salary requirement within four (4) years of the date of commencement of this action through the date of final disposition of this action;

- did not receive a timely payment of wages due and owing upon separation of their employment within four (4) years of the date of commencement of this action through the date of final disposition of this action;

- applied for a job with Defendants in the State of California and did not receive a proper statutory disclosure and authorization prior to executing Defendants' standard "Background Check Disclosure" form within five (5) years of the date of commencement of this action through the date of final disposition of this action;

WHEREAS, on July 20, 2022, the *Sawyer* Named Plaintiff filed a Complaint in the Superior Court of the State of California, County of Orange alleging that Sprout, Recovco, Strauss, Shea Pallante, and DOES 1 through 25, failed to: pay the minimum wage for all wages worked under Cal. Labor Code §§ 1182.12, 1194, *et seq*.; pay overtime wages for all overtime hours worked in violation of Cal. Labor Code § 510; pay vacation wages upon termination under Cal. Labor Code § 227.3; pay all wages owed upon termination in violation of § 201, *et seq*.; provide wage statements in violation of § 226, *et seq*.; reimburse or indemnify all business

expenses Cal. Labor Code § 2802; and also asserted violations of the California WARN Act, Cal. Labor Code § 1400, *et seq*. (the "Cal. WARN Act"), and the Cal. UCL;

WHEREAS on August 22, 2022, the *Sawyer* Named Plaintiff filed a First Amended Complaint in the Supreme Court of the State of California, County of Orange, adding Scott Harvey as a Named Plaintiff and adding Christopher Wright and Elliot Salzman as Defendants, and asserting additional claims for failure to: provide complaint meal periods or pay premium wages in violation of Cal. Labor Code § 512 and 226.7 and to pay rest breaks and premium wages in violation of Cal. Labor Code § 226.7, Cal. IWO § 12.  Plaintiffs brought their claims on behalf of "all current and former exempt and non-exempt employees, and commission-eligible employees, who worked for Defendants in California during the relevant time period";

WHEREAS on July 22, 2022, the *Boyer* Named Plaintiff filed a class action complaint in the Superior Court of the State of California, in and for the County of San Diego, alleging that Sprout, Recovco, Strauss, and Does 1 – 50 violated the Cal. WARN Act; the Cal. UCL; and violated numerous provisions of the Cal. Labor Code including allegations unlawful deductions in violation of Cal. Labor Code § 221; failure to reimburse employees for required business expenses in violation of Cal. Labor Code § 2802; failure to provide wages when due in violation of Cal. Labor Code §§ 201, 202 and 203; and failure to pay vacation wages due under Cal. Labor Code § 227.3.  The *Boyer* Named Plaintiff asserted these claims individually and on behalf of a putative class, defined as "all of Defendant Sprout's and/or Defendant Recovco's California employees who were terminated on or around July 6, 2022 without being provided 60 days' written notice of mass layoff, relocation, or termination of business" and on behalf of a class defined as "all employees who are or previously were employed by Defendant Sprout and/or

Defendant Recovco in California at any time during the period beginning four (4) years prior to the filing of [the] Complaint and ending on the date as determined by the Court";

WHEREAS on September 27, 2022, the Named *Boyer* Plaintiff filed a First Amended Complaint in the Superior Court of the State of California, County of San Diego adding claims under PAGA;

WHEREAS, on February 15, 2023, Boyer filed a Second Amended Complaint adding Lori Steward and Mike Shirdel as Named Plaintiffs;

WHEREAS, no class has been certified and no trial date has been set in the *Boyer, Sawyer* or *Kelley* Actions;

### C.        General Recitals

WHEREAS, the Parties have engaged in extensive document production in the *Agudelo, Boyer, Sawyer, and Kelley* Actions, including the following: Named Plaintiffs propounded multiple sets of written requests for confidential business and personal records and reviewed voluminous documents provided by Defendants in response, including tax returns, bank statements, payroll reports, and paystubs, and also including retention by Plaintiffs of a forensic accountant who analyzed the confidential data made available by Defendants;

WHEREAS, the Named Plaintiffs allege generally that Defendants violated all above-referenced laws;

WHEREAS, Defendants generally deny the allegations in the *Agudelo, Boyer, Sawyer,* and *Kelley* Actions; deny that they have engaged in wrongdoing; deny that they violated the NYLL, including all provisions of Article 6; the federal WARN Act, the New York WARN Act; ERISA; COBRA; the Cal. Labor Code; the IWC Wage Order; 8 *Cal. Code Regs*. Title 8, § 11040, *et seq*.; FCRA; the ICRAA; Cal. UCL; PAGA; the California WARN Act; deny that the Named Plaintiffs'

allegations state valid claims; deny that any litigation class can be properly certified in the *Agudelo*, *Boyer*, *Sawyer*, and/or *Kelley* Actions; and state that they are entering into this Settlement Agreement solely to eliminate the uncertainties, burden, expense, and delay of further protracted litigation;

WHEREAS, a *bona fide* dispute exists as to whether any amount of wages are due from any Defendant to any putative Settlement Class or Collective Member;

WHEREAS, the Parties participated in an in-person mediation session on Thursday, March 16, 2023 before Mediator Martin F. Scheinman, Esq., who is a professional mediator, and conducted numerous discussions before and after, before agreeing to the terms of this arm's-length Settlement Agreement;

WHEREAS, this Settlement Agreement is intended to and shall fully and finally compromise, resolve, discharge, and settle all claims asserted against Defendants in the Action and all Released Claims, as defined and on the terms set forth below, to the full extent reflected herein, subject to the approval of the Court;

WHEREAS, upon execution of this Settlement Agreement, Class Counsel (as defined in Paragraph 6 below) will promptly submit to the Court in concurrence with a motion for preliminary approval of the Settlement an Amended Complaint for Settlement in the *Agudelo* Action, without material variation from Exhibit A, and Stipulations of Dismissal Without Prejudice in the *Boyer, Sawyer,* and *Kelley* Actions, without material variation from Exhibits B, C, and D, respectively, that will seek to dismiss the *Boyer*, *Sawyer*, and *Kelley* Actions pursuant to Paragraph 61 on the understanding that, in the event the Court (as defined below) finally approves the proposed Settlement, the *Boyer*, *Sawyer*, and *Kelley* Actions, respectively, shall be dismissed with prejudice

and that, in the event the Court does not finally approve the proposed Settlement, the Amended Complaint for Settlement, this Agreement, and the Settlement shall be void *ab initio;*

WHEREAS, the Parties will, for purposes of settlement only, seek to certify a settlement class in the *Agudelo*, *Boyer*, *Sawyer*, and *Kelley* Actions including a New York class consisting of all New York employees employed by Sprout Mortgage, LLC from June 6, 2022 through and including the date of Preliminary Approval of this Settlement Agreement, and a California class consisting of all employees who worked in California from February 25, 2017 to the date of Preliminary Approval of this Settlement Agreement, as well as the Settlement Collective, understanding that, in the event the Court does not finally approve the proposed Settlement, this Agreement, the Settlement, and any motions filed by either Party to certify a settlement class shall be void and treated as invalid from the outset;

WHEREAS, Defendants will not pay any amount over and above the Settlement Amount described below in Paragraph 65;

WHEREAS, the Parties further agree that the Settlement Agreement, the fact of the anticipated Settlement, any of the terms in the Agreement, and any documents filed in support of the Settlement shall not constitute, or be offered, received, claimed, construed, or deemed as, an admission, finding, or evidence of: (i) any wrongdoing, (ii) any violation of any statute or law, (iii) any liability on the claims or allegations in the *Agudelo*, *Boyer, Sawyer*, and/or *Kelley* Actions, or any other proceeding, (iv) the propriety of litigating as opposed to arbitrating the claims in these actions, (v) the propriety of certifying a litigation class in the *Agudelo*, *Boyer*, *Sawyer*, and/or *Kelley* Actions, or any other proceeding, and shall not be used by any Person (as defined in Paragraph 30 below) for any purpose whatsoever in any legal or administrative or tax proceeding,

including, but not limited to, arbitrations, other than by Named Plaintiffs in a proceeding to enforce the terms of the Settlement Agreement;

WHEREAS, there has been no final determination by any court as to the merits of any of the claims asserted by the Named Plaintiffs against Defendants;

WHEREAS, the Named Plaintiffs and Class Counsel believe that the Settlement provides a just, fair, reasonable, and favorable recovery for the Settlement Class and Settlement Collective as defined below, based on the claims asserted, the evidence developed, and the damages that might be proven against Defendants in the *Agudelo*, *Boyer*, *Sawyer*, and *Kelley* Actions; the Named Plaintiffs and Class Counsel further recognize and acknowledge the significant expense, length, difficulty, and uncertainty of continued proceedings necessary to prosecute the *Agudelo*, *Boyer*, *Sawyer*, and *Kelley* Actions against Defendants through trial and appeals; the Named Plaintiffs and Class Counsel have also considered the uncertain outcome and the risk of any litigation, especially in complex litigation such as the *Agudelo*, *Boyer*, *Sawyer*, and *Kelley* Actions, as well as the difficulties and delays inherent in any such litigation; the Named Plaintiffs and Class Counsel are also mindful of the inherent challenges of proof and the strength of the defenses to the alleged claims, and therefore believe that it is desirable that the Released Claims be fully and finally compromised, settled, and resolved with prejudice and enjoined as set forth herein;

WHEREAS, the Named Plaintiffs and Class Counsel, based on their own independent investigations and evaluations, have examined the benefits to be obtained under the terms of this Settlement Agreement, have considered the claims of the Named Plaintiffs, the claims of the average Settlement Class Member, the risks associated with the continued prosecution of the *Agudelo*, *Boyer*, *Sawyer*, and *Kelley* Actions, and the likelihood of success on the merits of the *Agudelo*, *Boyer*, *Sawyer*, and *Kelley* Actions, and believe that, after considering all the

12

circumstances, including the uncertainties surrounding the risk of further litigation and the defenses that Defendants have asserted and could assert, the proposed Settlement set forth in this Agreement is just, fair, reasonable, adequate, in the best interests of the Named Plaintiffs and the Settlement Class and Settlement Collective, and confers substantial benefits upon the Settlement Class and Settlement Collective;

WHEREAS, the Named Plaintiffs warrant and represent that they are effecting this Settlement and executing this Agreement after having received full legal advice as to their respective rights and having had the opportunity to obtain independent counsel to review this Agreement;

WHEREAS, Defendants dispute that certification is proper for the purposes of litigating the class claims proposed in or flowing from the operative complaints in the *Agudelo*, *Boyer*, *Sawyer*, and *Kelley* Actions;

WHEREAS, for settlement purposes only, Defendants will stipulate to the certification of all class claims that are subject to the certification requirements of Rule 23 in the *Agudelo*, *Boyer*, *Sawyer*, and *Kelley* Actions, with the understanding that, if the Settlement is not finally approved, this Agreement, the Settlement, and any class certified pursuant to the Settlement, are all void *ab initio*;

WHEREAS, for settlement purposes only, Defendants will stipulate to the certification of the Settlement Collective under 29 U.S.C. § 216(b) in the *Agudelo* Action, with the understanding that if the Settlement is not finally approved, this Agreement and the Settlement, as well as any claims certified pursuant to this Paragraph, are *void ab initio*;

NOW, THEREFORE, IT IS HEREBY STIPULATED, CONSENTED TO, AND AGREED, by the Named Plaintiffs, for themselves and on behalf of the Settlement Class and

Settlement Collective, and by Defendants that, subject to the approval of the Court, the Action shall be settled, compromised, and dismissed, on the merits and with prejudice, and the Released Claims shall be finally and fully compromised, settled, and dismissed as to the Released Parties, in the manner and upon the terms and conditions hereafter set forth in this Agreement.

## II.    DEFINITIONS

1.    In addition to the terms defined elsewhere in this Agreement, the following terms, used in this Settlement Agreement, shall have the meanings specified below:

2.    "Amended Complaint for Settlement" means the Amended Complaint for Settlement in the *Agudelo* Action, without material variation from Exhibit A, that Class Counsel shall seek to file pursuant to Paragraph 56 and shall file concurrently with the proposed Preliminary Approval Order.

3.    "Asserted Claims" means all claims asserted in the Amended Complaint for Settlement and their associated allegations and prayer for relief.

4.    "Attorneys' Fees and Expenses" or "Fee and Expense Award" means such funds as may be awarded by the Court to Class Counsel to compensate Class Counsel for fees, costs, and expenses in connection with the Action and the Settlement. Under the terms of Paragraph 77, the Fee and Expense Award is payable fourteen (14) days after the Effective Date.

5.    "California Labor Class" means all non-exempt employees of Sprout Mortgage who worked for Sprout Mortgage while residing in California between February 22, 2018, and July 6, 2022.

6.    "Class Counsel" means the law firms of:

- Menken Simpson & Rozger LLP;
- JCL Law Firm, APC;
- Zakay Law Group, APLC;
- Soderstrom Law PC;

- Forootan Law; and
- Nosrati Law.

7. "Collective Counsel" means the law firm of Menken Simpson & Rozger LLP.

8. "Court" means the United States District Court for the Eastern District of New York and the Judge assigned to the Action, to whose authority all parties hereby consent for the purposes of reviewing this Agreement and the accompanying Motions for Preliminary and Final Approval, the Honorable Joan Azrack.

9. "Defendants" means Recovco, Sprout, Strauss, Christopher Wright, Elliot Salzman, and Shea Pallante.

10. "Defense Counsel" means the law firm of Jackson Lewis, PC.

11. "Effective Date" means two (2) business days after both of the following events have occurred: (i) the Final Approval Order has been issued and (ii) the Final Approval Order and Final Judgment has become Final.

12. "Escrow Account" means the bank account maintained by the Escrow Agent into which the Settlement Fund shall be deposited, pursuant to the Escrow Agreement, which shall be agreed to by the Parties.

13. "Escrow Agent" means SSI, the Settlement Administrator mutually agreed upon by Defense Counsel and Class Counsel to maintain the Escrow Account, into which the Settlement Fund shall be deposited in accordance with the terms of this Agreement.

14. "Escrow Agreement" means the agreement, to be agreed upon by the Parties, entered into by and between the Parties and the Escrow Agent setting forth the Escrow Agent's responsibilities and duties.

15. "Exclusion/Objection Deadline" means the final date by which a Settlement Class Member may (i) object to any aspect of the Settlement (pursuant to the Preliminary Approval

Order and Paragraphs 130 – 136 below), or (ii) request to be excluded from the Settlement Class (pursuant to the Preliminary Approval Order and Paragraphs 123 – 129 below). The Exclusion/Objection Deadline shall be sixty (60) days after the Notice Date and shall be specifically identified and set forth in the Preliminary Approval Order and the Class Notice.

16.     "Fairness Hearing" means the hearing that is to take place after the entry of the Preliminary Approval Order and after the Notice Date for purposes of: (i) entering the Final Approval Order and Final Judgment and dismissing the Action with prejudice; (ii) determining whether the Settlement should be finally approved as fair, reasonable, and adequate; (iii) ruling upon an application for Service Payments by the Named Plaintiffs; (iv) ruling upon an application by Class Counsel for Attorneys' Fees and Expenses; and (v) entering any final order awarding Attorneys' Fees and Expenses and Service Payments. The Parties shall request that the Court schedule the Fairness Hearing for a date that is in compliance with the provisions of 28 U.S.C. § 1715(d).

17.     "FCRA Class" means all employees of Sprout Mortgage who worked for Sprout Mortgage while residing in California between February 22, 2017, and July 6, 2022.

18.     "Final," when referring to a judgment, means that (i) the judgment is a final, appealable judgment; and (ii) either (a) no appeal has been taken from the judgment as of the date on which all times to appeal therefrom have expired, or (b) an appeal or other review proceeding of the judgment having been commenced, such appeal or other review is finally concluded and no longer is subject to review by any court, whether by appeal, petitions for rehearing or re-argument, petitions for rehearing en banc, petitions for writ of certiorari, or otherwise, and such appeal or other review has been finally resolved in such manner that affirms the judgment in its entirety.

19.    "Final Approval Order" means the order that the Named Plaintiffs and Defendants will seek from the Court, to be agreed upon by the Parties. Entry of the Final Approval Order shall constitute the Court's final approval of the Settlement Agreement.

20.    "Final Judgment" means the order entering Judgment in this Action upon the Court's final approval of this Settlement that the Named Plaintiffs and Defendants will seek from the Court, to be agreed upon by the Parties.

21.    "Legally Authorized Representative" means an administrator/administratrix, personal representative, or executor/executrix of a deceased Settlement Class Member's or Collective Member's estate; guardian, conservator, or next friend of an incapacitated Settlement Class Member; or other legally appointed Person responsible for handling the business affairs of a Settlement Class or Collective Member; or any other adult person who the parties agree is appropriate to act on behalf of a deceased or incapacitated Settlement Class Member's or Collective Member's estate.

22.    "Named Plaintiffs" means Plaintiffs Nathaniel Agudelo, Helen Owens, Holly Keith, Amanda Cooper, Blake Boyer, Lori Steward, Mike Shirdel, Jared Sawyer, Scott Harvey, and Karen Kelley.

23.    "Named Plaintiffs' General Released Claims" (or "Named Plaintiff's General Released Claims") means any and all past, present, and future claims, actions, demands, causes of action, suits, debts, obligations, damages, rights or liabilities, of any nature and description whatsoever, known or unknown, existing or potential, recognized now or hereafter, expected or unexpected, pursuant to any theory of recovery (including, but not limited to, those based in contract or tort, common law or equity, federal, state, or local law, statute, ordinance, or regulation, and for claims for compensatory, consequential, punitive or exemplary damages, statutory

damages, penalties, interest, attorneys' fees, costs, or disbursements) by the Named Plaintiffs against the Released Parties (as defined below), including unknown claims covered by New York wage and hour laws, California wage and hour laws, as quoted below, from the beginning of time to the date on which the Court enters the Final Approval Order, for any type of relief that can be released as a matter of law, including, without limitation, claims for wages, damages, unpaid costs, penalties (including civil and waiting time penalties), liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, or equitable relief with the exception of any claims which cannot be released as a matter of law. The Named Plaintiffs will generally release all known and unknown claims against Defendants conditioned upon Court approval of Service Payments for them and waive the application of section 1542 of the California Civil Code by executing the Named Plaintiffs' General Release Form, which is attached hereto as Exhibit E, within seven (7) days of the date on which the Court enters the Final Approval Order. The claims released pursuant to this paragraph and described in the Named Plaintiffs' General Release Form include but are not limited to the Settlement Class Members' Released Claims, as well as any other claims under any provision of the FLSA, the California Labor Code (including sections 132a, 4553 *et seq.*) or any applicable California Industrial Welfare Commission Wage Orders, New York Labor Laws or any applicable New York Wage Orders, as well as claims under state or federal discrimination statutes, including, without limitation, the California Fair Employment and Housing Act, California Government Code section 12940 *et seq.*; the Unruh Civil Rights Act, California Civil Code section 51 *et seq.*; the California Constitution; the New York City Human Rights Law; the New York State Human Rights Law; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.*; the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*; the Age Discrimination in Employment Act of 1967, as amended; the Employee Retirement Income

Security Act of 1974, 29 U.S.C. § 1001 *et seq.*; and all of their implementing regulations and interpretive guidelines.

24.     "Named Plaintiffs' General Release Form" means the form as reflected without material variation in Exhibit E. Within seven (7) business days of the date on which the Court enters the Final Approval Order, the Named Plaintiffs shall each sign and execute a copy of the Named Plaintiffs' General Release Form without any deletion or amendment to any language in said form.

25.     "Net Settlement Fund" means the Settlement Fund less the Attorneys' Fees and Expenses, Service Payments, Settlement Fund Taxes, Settlement Fund Tax Expenses, PAGA Payment and other expenses (including, but not limited to, any estimated future costs and expenses approved by the Court) approved by the Court as further provided in this Agreement, and all other funds, payments, and amounts provided for in subparts (a) through (g) of Paragraph 106.

26.     "Notice Date" means the date of the initial distribution of the Notice of Settlement of Class Action to Settlement Class Members, as provided in Paragraph 88.

27.     "Notice of Settlement of Class Action" means the long-form Court-approved notice, without material variation from Exhibit F.

28.     "Opt-Out List" means the list of all Persons who timely and properly request exclusion from the Settlement Class, as further provided in Paragraph 129. The contents of the Opt-Out List shall be kept confidential and only be shared between counsel unless and until made public at or around the time the parties move for Final Approval of the Settlement.

29.     "Parties" means the Named Plaintiffs and Defendants, collectively, as each of those terms is defined in this Settlement Agreement.

30.     "Person" means any individual, corporation, partnership, association, affiliate, joint stock company, estate, trust, unincorporated association, entity, government and any political subdivision thereof, or any other type of business or legal entity.

31.     "Plaintiffs" means the Named Plaintiffs and Settlement Class and Collective Members.

32.     "Plan of Allocation" means the plan for allocating the Net Settlement Fund between and among Settlement Class and Collective Members as approved by the Court, as further set forth in Paragraphs 78 - 86.  Settlement Payments pursuant to the Plan of Allocation shall be considered 25% wage income for which IRS Form W-2s will be issued to recipients, and 75% non-wage income for which IRS Form 1099s will be issued to recipients if required.

33.     "Preliminary Approval Date" means the date on which the Court enters the Preliminary Approval Order and thus: (i) preliminarily approves the Settlement, including the Exhibits thereto, and (ii) enters an order providing for notice to the Settlement Class and Settlement Collective, an opportunity to opt out of the Settlement Class, an opportunity to submit timely objections to the Settlement, and setting a hearing on the fairness of the terms of the Settlement, including approval of attorneys' fees and costs.

34.     "Preliminary Approval Order" means the order that the Named Plaintiffs and Defendants will seek from the Court, without material variation from Exhibit G. Entry of the Preliminary Approval Order shall constitute preliminary approval of the Settlement Agreement.

35.     "Recovco" means (i) Recovco Mortgage Management, LLC and its past, present, and future parents, subsidiaries, affiliates, divisions, joint ventures, licensees, franchisees, and any other legal entities, whether foreign or domestic, that are owned or controlled by Recovco, and (ii) the past, present, and future shareholders, officers, directors, members, agents, employees,

independent contractors, consultants, representatives, fiduciaries, insurers, attorneys, legal representatives, predecessors, successors, and assigns of the entities in part (i) of this definition.

36.    "Release" means the release and waiver set forth in Paragraph 49 of this Settlement Agreement and in the Final Approval Order and Final Judgment.

37.    "Released Parties" means (i) Sprout; (ii) Recovco; and (iii) Michael Strauss and all other Defendants, as well as their past and present spouse(s), dependents, heirs, agents, executors, administrators, predecessors, successors, assigns, lien holders, creditors, debtors, fiduciaries, insurers, attorneys, and other representatives.

38.    "Released Claims" includes "Named Plaintiffs' General Released Claims," "Settlement Class Members' Released Claims," and "Settlement Collective Members' Released Claims." The release of claims under the FLSA contemplated by this Settlement shall be effectuated through a Settlement Collective Member's consent to join as party to the FLSA claims asserted in the Action pursuant to 29 U.S.C. § 216(b). "Released Claims" shall be construed as broadly as possible to effect complete finality over this litigation involving Defendants.

39.    "Releasing Parties" means Plaintiffs, and each of their heirs, guardians, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors-in-interest, and assigns.

40.    "Reserve Fund" means that part of the Net Settlement Fund to be used solely to resolve the claims of any Settlement Class Members who opt out and do not release or waive all claims against Defendants and Released Parties pursuant to this Agreement. For each Class Member who opts out, an amount equal to that Class Member's pro rata portion of the Net Settlement Fund based the Plan of Allocation set forth in Paragraphs 78 – 86 shall be deducted from the Net Settlement Fund and deposited in the Reserve Fund.  All monies in the Reserve Fund

shall be made available to counsel for Defendants by the Settlement Administrator to attempt to resolve the claims of Settlement Class Members who opt out (or the claims of individuals who, after final approval of the settlement, claim they were improperly excluded from the Settlement Class or Collective, in the sole discretion of Sprout and/or Strauss. Any balance remaining in the Reserve Fund after all opt out claims have been resolved shall be returned to the Net Settlement Fund and treated in conformity with the procedures outlined in Paragraph 86.

41.    "Service Payment" means the amount approved by the Court to be paid to a Named Plaintiff identified in Paragraph 22, in addition to their respective payments under the Plan of Allocation, and as further described in Paragraphs 64, 74, 75,  in recognition of his or her efforts in coming forward as a Named Plaintiff, and as consideration for a full, general, and comprehensive release of that Named Plaintiff's General Released Claims. The payment of a Service Payment (if any) to a Named Plaintiff is contingent upon his or her execution of the Named Plaintiffs' General Release Form in accordance with Paragraph 74.  Under the terms of Paragraph 75, Service Payments are payable fourteen (14) days after the Effective Date. Service Payments shall be considered non-wage income for which IRS Form 1099 will be issued to each of the Named Plaintiffs as identified in Paragraph 72.

42.    "Settlement" means the settlement of the Action between and among the Named Plaintiffs, the Settlement Class Members, and Defendants, as set forth in this Settlement Agreement, including all attached Exhibits, which are an integral part of this Settlement Agreement and are incorporated in their entirety by reference.

43.    "Settlement Administrator" means SSI, the neutral, third-party settlement administrator to be appointed by the Court.

44.     "Settlement Fund" means the account established by the Settlement Administrator to receive the Settlement Payment and to make authorized expenditures, including, but not limited to, administrative fees, notice costs and expenses, Attorneys' Fees and Expenses, Service Payments, Settlement Fund Taxes, Settlement Fund Tax Expenses, Reserve Fund payments and all other costs and expenses relating to the Settlement.

45.     "Settlement Class" means all members of the Shutdown Class, California Labor Class, and FCRA Class.

46.     "Settlement Class Member" means any member of the Settlement Class who does not elect exclusion or "opt out" from the Settlement Class pursuant to the terms and conditions for exclusion set forth in this Settlement Agreement.

47.     "Settlement Collective" means all Shutdown Class Members with respect to such Members' collective action claims under 29 U.S.C. § 216(b).

48.     "Settlement Collective Member" means the members of the Settlement Collective who have filed a consent to join pursuant to 29 U.S.C. § 216(b), as well as any Settlement Collective member who endorses a settlement check in conformity with Paragraph 82 below.

49.     "Settlement Class Members' Released Claims" means any and all past and present claims, actions, demands, causes of action, suits, debts, obligations, damages, rights or liabilities, of any nature and description whatsoever, known or unknown, existing or potential, recognized now or hereafter, expected or unexpected, pursuant to any theory of recovery (including, but not limited to, those based in contract or tort, common law or equity, federal, state, or local law, statute, ordinance, or regulation), and  claims for compensatory, consequential, punitive or exemplary damages, statutory damages, penalties, interest, attorneys' fees, costs, or disbursements (including, but not limited to, those incurred by Class Counsel or any other counsel representing the Named

Plaintiffs or any Settlement Class Members, other than those expressly awarded by the Court in the Fee and Expense Award authorized by this Agreement) that are based on or reasonably related to the claims asserted in the Action, including in the Amended Complaint for Settlement, and specifically including the following claims based on or reasonably relating to claims asserted or alleged in the Action, as set forth in the Recitals and referenced here:

a)      the NYLL, *et seq.*;

b)      the federal WARN Act;

c)      the New York WARN Act;

d)      the California WARN Act;

e)      ERISA;

f)      COBRA;

g)      The California Labor Code, *et seq.*;

h)      The IWC Wage Orders;

i)      8 Cal. Code Regs. Title 8, § 11040;

j)      The FCRA;

k)      The ICRAA;

l)      The California UCL;

m)      PAGA;

n)      claims for attorneys' fees and costs; and

o)      all claims, including common law claims, arising out of or related to the statutory causes of action described herein.

50.    "Settlement Collective Members' Released Claims" means Settlement Class Members' Released Clams as well as all claims pursuant to the FLSA.

51.  "Settlement Fund Taxes" means all taxes arising with respect to the income, if any, earned by the Settlement Fund (including any taxes that may be imposed upon Defendants with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes).

52.  "Settlement Fund Tax Expenses" means any expenses and costs incurred in connection with the payment of Settlement Fund Taxes (including, without limitation, expenses of tax attorneys and/or accountants and mailing, administration, and distribution costs and expenses relating to the filing or the failure to file all necessary or advisable tax returns).

53.  "Settlement Payment" means the payment to a Settlement Class and Collective Member calculated pursuant to the Plan of Allocation.

54.  "Shutdown Class" means all employees of Sprout Mortgage who were employed at any time between June 6, 2022 and July 7, 2022 and did not receive wages for work performed during that period.

55.  "Sprout" means (i) Sprout Mortgage, LLC and its past, present, and future parents, subsidiaries, affiliates, insurers, divisions, joint ventures, licensees, franchisees, and any other legal entities, whether foreign or domestic, that are owned or controlled by Sprout, and (ii) the past, present, and future shareholders, officers, directors, members, agents, employees, independent contractors, consultants, representatives, fiduciaries, insurers, attorneys, legal representatives, predecessors, successors, and assigns of the entities in Part (i) of this definition.

## III.  SUBMISSION OF THE SETTLEMENT AGREEMENT TO THE COURT FOR REVIEW AND APPROVAL

56.  Promptly upon execution of this Settlement Agreement, the Named Plaintiffs shall submit to the Court a motion for preliminary approval of the Settlement and shall concurrently

submit the Amended Complaint for Settlement (as reflected without material variation from Exhibit A). The motion for preliminary approval shall include a proposed plan for the sending of the Notice of Settlement of Class Action to Settlement Class Members and Settlement Collective Members within twenty-one (21) days after the Preliminary Approval Date and establishing a period of sixty (60) days from the Notice Date for the Exclusion/Objection Deadline. The motion for preliminary approval shall also request that the Fairness Hearing be set no earlier than twenty-one (21) days after the Exclusion/Objection Deadline; that Class Counsel shall file a petition for awards of attorneys' fees and costs and Service Payments at least thirty-five (35) days before the Exclusion/Objection Deadline; that the motion for final approval must be filed at least thirty-five (35) days before the Fairness Hearing; that any oppositions to such motions and petitions be filed at least twenty-one (21) days before the Fairness Hearing; and that any reply briefs on such motions and petitions be filed fourteen (14) days before the Fairness Hearing.

57. For purposes of this Settlement only, the Parties agree to seek provisional certification of the Settlement Class as a Rule 23 settlement class and the Settlement Collective as a collective action pursuant to 29 U.S.C. § 216(b). Each Party agrees that this stipulation shall not be used by any Person for any purpose whatsoever in any legal proceeding, including, but not limited to, arbitrations, other than a proceeding to enforce the terms of the Agreement, as further set forth in this Agreement.

58. Defendants do not consent to certification of any class or collective for any purpose other than to effectuate the Settlement of this Action. Defendants' agreement to conditional certification does not constitute an admission of wrongdoing, fault, liability, or damage of any kind to Plaintiffs or any of the putative class or collective members.

59.     The Parties and their counsel shall use their best efforts to obtain a Final Approval Order approving the Settlement.

60.     The Parties agree to submit to the Court for its consideration this Settlement Agreement, including all Exhibits: the Amended Complaint for Settlement in the *Agudelo* Action (Exhibit A); the Stipulations of Dismissal Without Prejudice in the *Boyer*, *Sawyer* and *Kelley* actions (Exhibits B, C and D); Named Plaintiffs' General Release Form (Exhibit E); Notice of Settlement of Class Action (Exhibit F); and Preliminary Approval Order (Exhibit G).

61.     Solely for purposes of implementing this Agreement and effectuating the proposed Settlement, the Parties agree and stipulate that:

a)      Named Plaintiffs shall seek the Court's permission to enter the Amended Complaint for Settlement, without material variation from Exhibit A, and Defendants shall consent to such amendment pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure. The Amended Complaint for Settlement shall be submitted concurrently with the submission of the motion for preliminary approval of the Settlement so that such complaint may be entered promptly upon approval of the Court. Obtaining the Court's approval to file the Amended Complaint for Settlement, and the subsequent prompt entry of the Amended Complaint for Settlement, are material conditions of this Settlement Agreement. The Parties agree that the filing of the Amended Complaint for Settlement will streamline the settlement process and ensure that more money can be paid to Settlement Class Members by saving the costs of multiple notice and approval processes. The Parties further agree and stipulate that Defendants may seek an order from the Court that the allegations in the Amended Complaint for Settlement are deemed controverted by the answers previously filed by Defendants in response to the currently operative complaints in the *Agudelo, Boyer, Sawyer and Kelley* Actions, such that no further responsive

pleadings from Defendants are required. If for any reason the Settlement does not become Final or the Effective Date does not occur, the Amended Complaint for Settlement shall be stricken from the record and the operative complaints in the *Agudelo*, *Boyer*, *Sawyer*, and *Kelley* Actions shall revert to the respective filed complaints that preceded the Amended Complaint for Settlement.

b) The Court may enter the Preliminary Approval Order, without material variation from Exhibit G, preliminarily approving the Settlement and this Agreement. Among other things, the Preliminary Approval Order shall grant leave to preliminarily certify the Shutdown Class, California Labor Class, and FCRA Class for settlement purposes only; approve the Named Plaintiffs as class representatives, appoint Class Counsel to represent the Settlement Class, and appoint the Settlement Administrator; approve the Notice of Settlement of Class Action, and the class notice plan embodied in the Settlement Agreement, and approve them as consistent with Rule 23 of the Federal Rules of Civil Procedure, 29 U.S.C. § 216(b) and due process; set out the requirements for objecting to the Settlement and excluding Settlement Class Members from the Settlement Class, all as provided in this Agreement; provide that certification and all actions associated with certification are undertaken on the condition that the certification and other actions shall be automatically vacated if this Agreement is terminated, as provided in this Agreement; preliminarily enjoin all Settlement Class Members and their Legally Authorized Representatives, unless and until they submit a timely request for exclusion pursuant to the Settlement Agreement, from filing or otherwise participating in any other suit or claim based on the Released Claims, or from attempting to effect an opt-out of a group, class, or subclass of individuals; and schedule the Fairness Hearing.

c)      Upon entry of the Preliminary Approval Order, without material variation from Exhibit G, the Parties shall promptly, but in no event less than five (5) business days of entry of the Preliminary Approval Order, file the Stipulations of Dismissal (Exhibits B, C and D) with the *Boyer*, *Sawyer* and *Kelley* courts.  Upon final approval of the settlement, and in no event later than ten (10) business days after the Effective Date, the Parties shall file Stipulations of Dismissal With Prejudice in the *Boyer*, *Sawyer* and *Kelley* actions.

62.      At the Fairness Hearing, the Named Plaintiffs shall request entry of a Final Approval Order and a Final Judgment, to be agreed upon by the Parties, the entry of which is a material condition of this Settlement Agreement, and that, among other things:

a)      finally approves the Settlement as fair, reasonable, and adequate, within the meaning of Rule 23 of the Federal Rules of Civil Procedure and due process, and directs its consummation pursuant to the terms of the Settlement Agreement;

b)      approves the Settlement as to the Settlement Collective as fair and reasonable under the FLSA and decisions interpreting same;

c)      finds that Class Counsel and the Named Plaintiffs adequately represented the Settlement Class and Settlement Collective for the purpose of entering into and implementing the Agreement;

d)      re-confirms the appointment of the Settlement Administrator and finds that the Settlement Administrator has fulfilled its duties under the Settlement;

e)      finds that the Class Notice (i) constituted the best practicable notice; (ii) constituted notice that was reasonably calculated, under the circumstances, to apprise Settlement Class and Settlement Collective Members of the pendency of the Action, and their right to exclude themselves from or object to the proposed Settlement (as applicable) and to appear at the Fairness

Hearing; (iii) was reasonable and constituted due, adequate, and sufficient notice to all Persons entitled to receive notice; and (iv) met all applicable requirements of Rule 23 of the Federal Rule of Civil Procedure, 29 U.S.C. § 216(b) and due process, and any other applicable rules or law;

f)        finds that the Class Action Fairness Act Notice sent by Defendants complied with 28 U.S.C. § 1715 and all other provisions of the Class Action Fairness Act of 2005;

g)        determines that the Opt-Out List is a complete list of all Settlement Class Members who have timely requested exclusion from the Settlement Class and, accordingly, shall neither share in nor be bound by the Final Approval Order and Final Judgment;

h)        dismisses the Action with prejudice, and without fees or costs except as provided in this Agreement;

i)        directs that the Final Approval Order and Judgment of dismissal shall be final and entered forthwith;

j)        without affecting the finality of the Final Approval Order and Final Judgment, reserves jurisdiction over the Named Plaintiffs, the Settlement Class, the Settlement Collective and Defendants as to all matters concerning the administration, consummation, and enforcement of this Settlement Agreement;

k)        adjudges that, as of the Effective Date, the Named Plaintiffs, all Settlement Class Members who have not been excluded from the Settlement Class as provided in the Opt-Out List approved by the Court, all Settlement Collective Members who have opted into the Settlement Collective their respective heirs, estates, trustees, executors, administrators, principals, beneficiaries, representatives, agents, assigns, and successors, and/or anyone claiming through them or acting or purporting to act for them or on their behalf, regardless of whether they have received actual notice of the proposed Settlement, have conclusively compromised, settled,

discharged, and released (as applicable): the Named Plaintiffs' General Released Claims (in the case of the Named Plaintiffs), Settlement Class Members' Released Claims (in the case of the Settlement Class Members), and Settlement Collective Members' Released Claims against Defendants and the Released Parties, and are bound by the provisions of this Agreement;

l)      declares this Agreement and the Final Approval Order and Final Judgment to be binding on, and have *res judicata* and preclusive effect in, all pending and future lawsuits or other proceedings: (i) that encompass the Named Plaintiffs' General Released Claims and that are maintained by or on behalf of the Named Plaintiffs and/or their heirs, estates, trustees, executors, administrators, principals, beneficiaries, representatives, agents, assigns, and successors, and/or anyone claiming through them or acting or purporting to act for them or on their behalf, and (ii) that encompass the Settlement Class Members' Released Claims, the Settlement Collective Members' Released Claims and that are maintained by or on behalf of any Settlement Class Member who has not been excluded from the Settlement Class as provided in the Opt-Out List approved by the Court, any Settlement Collective Member who has been included in the Settlement Class, and/or his or her heirs, estates, trustees, executors, administrators, principals, beneficiaries, representatives, agents, assigns, and successors, and/or anyone claiming through them or acting or purporting to act for them or on their behalf, regardless of whether the Settlement Class or Collective Member previously initiated or subsequently initiates individual litigation or other proceedings encompassed by the Settlement Class and Collective Members' Released Claims, and even if such Settlement Class or Collective Member never received actual notice of the Action or this proposed Settlement;

m)      permanently bars and enjoins the Named Plaintiffs, and all other Settlement Class Members who have not been excluded from the Settlement Class as provided in

the Opt-Out List approved by the Court or, as relevant, have not opted out of the settlement, from

(i) filing, commencing, prosecuting, intervening in, or participating (as class or collective members

or otherwise) in any other lawsuit or administrative, regulatory, arbitration, or other proceeding in

any jurisdiction based on the Named Plaintiffs' General Released Claims (in the case of the Named

Plaintiffs), and Settlement Class Members' Released Claims (in the case of the Settlement Class

Members), and (ii) organizing Settlement Class Members into a separate group, class, or subclass

for purposes of pursuing as a purported class action any lawsuit or administrative, regulatory,

arbitration, or other proceeding (including by seeking to amend a pending complaint to include

class allegations, or seeking class certification in a pending action) based on the Settlement Class

Members' Released Claims;

        n)      determines that the Agreement and the Settlement provided for herein, and

any proceedings taken pursuant thereto, are not, and should not in any event be, offered, received,

or construed as evidence of, a presumption, concession, or an admission by any Party of liability

or non-liability or of the certifiability or non-certifiability of a litigation class or collective, or of

any misrepresentation or omission in any statement or written document approved or made by any

Party; provided, however, that reference may be made to this Agreement and the Settlement

provided for herein in such proceedings as may be necessary to effectuate the provisions of this

Agreement, as further set forth in this Agreement;

        o)      orders that the certification of the Settlement Class and Settlement

Collective and final approval of the proposed Settlement, and all actions associated with them, are

undertaken on the condition that they shall be vacated if the Settlement Agreement is terminated

or disapproved in whole or in part by the Court, or any appellate court and/or other court of review,

or if Defendants invoke the right to withdraw from the Settlement as provided in Paragraphs 116

– 120 in which event the Agreement and the fact that it was entered into shall not be offered, received, or construed as an admission or as evidence for any purpose, including, but not limited to, an admission by any Party of liability or non-liability or of any misrepresentation or omission in any statement or written document approved or made by any Party, or of the certifiability of a litigation class or collective, as further provided in Paragraph 122;

> p)        authorizes the Parties, without further approval from the Court, to agree to and adopt such amendments, modifications, and expansions of this Agreement, including all Exhibits hereto, as (i) shall be consistent in all material respects with the Final Approval Order and (ii) do not limit the rights of Settlement Class Members or Settlement Collective Members; and

> q)        contains such other and further provisions consistent with the terms of this Settlement Agreement to which the Parties expressly consent in writing.

63.        At the Fairness Hearing and as a part of the final approval of this Settlement, Class and Collective Counsel will also request approval of the Plan of Allocation set forth in Paragraphs 78 - 86.  Any non-material modification to the Plan of Allocation ordered by the Court shall not (i) affect the enforceability of the Settlement Agreement, (ii) provide any of the Parties with the right to terminate the Settlement Agreement, or (iii) impose any obligation on Defendants to increase the consideration paid in connection with the Settlement.

64.        At the Fairness Hearing, Class and Collective Counsel may also request entry of an order approving their application for an award of attorneys' fees and expenses and for Service Payments to the Named Plaintiffs. Any such Fee and Expense Award or Service Payments shall be paid exclusively from the Settlement Fund. In no event shall Defendants otherwise be obligated to pay for any attorneys' fees and expenses or Service Payments. The disposition of Class and Collective Counsel's application for a Fee and Expense Award and for Service Payments is within

the sound discretion of the Court and is not a material term of this Settlement Agreement, and it is not a condition of this Settlement Agreement that such application be granted. Any disapproval or modification of such application by the Court shall not (i) affect the enforceability of the Settlement Agreement, (ii) provide any of the Parties with the right to terminate the Settlement Agreement, or (iii) impose any obligation on Defendants to increase the consideration paid in connection with the Settlement. Class and Collective Counsel retain the right to appeal the Court's award on Fees and Expenses and for Service Payments.

## IV.    SETTLEMENT CONSIDERATION

65.    The total monetary component of the Settlement, to be paid by Sprout and Strauss on behalf of all Defendants as set forth herein, is the Settlement Amount of Three Million Five Hundred Thousand Dollars and No Cents ($3,500,000.00). The Settlement Amount is an "all in" number that includes, without limitation, all monetary benefits and payments to the Settlement Class, Service Payments, Fee and Expense Award, escrow fees, Settlement Fund Taxes and Settlement Fund Tax Expenses, any and all applicable payroll taxes associated with the Settlement Payment (including employer payroll taxes) and all other costs and expenses relating to the Settlement (including, but not limited to, administration costs and expenses, notice costs and expenses, and settlement costs and expenses). Under no circumstances shall Defendants be required to pay anything more than the Settlement Amount. In no event shall Defendants be liable for making any payments under this Settlement, or for providing any relief to Settlement Class and Collective Members, before the deadlines set forth in this Agreement. All liabilities, payments or withholdings for which Defendants are or will be responsible, including but not limited to Settlement Fund Taxes, and Settlement Fund Tax Expenses, shall be satisfied only from the Settlement Fund.

66.      Upon full execution of the Settlement Agreement among the Parties, Sprout

and/or Strauss, on behalf of all Defendants, shall, in anticipation of approval of this Settlement

Agreement by the Court, commence funding of the Settlement Fund to be established by

Settlement Services, Inc., the Settlement Administrator selected by Plaintiffs' counsel, or a

mutually agreeable alternative, according to the following schedule:

- Sprout will deposit $1,950,000 in the Settlement Fund on or before June 5, 2023.

- Sprout will deposit an additional $300,000 in the Settlement Fund on or before June
  15, 2023.

- Strauss will deposit $1,250,000 within 14 calendar days of the closing of the sale of his
  apartment in New York City located at 610 Park Ave., Apt. 16E, New York, NY 10065
  ("Property") or, if the Property is not sold such that closing occurs before June 30,
  2023, Strauss will promptly and  with due speed cooperatively transfer a secured
  interest in the proceeds of such a sale in the same amount (*i.e.*, $1,250,000) in lieu of
  such cash payment.  This payment shall be Strauss' only obligation under the
  Settlement Agreement.  Strauss shall not be obligated to guarantee the aforementioned
  $1,950,000 and $300,000 payments of Sprout.

67.      The obligations of Sprout and Strauss to make the payments set forth herein are

contingent on such assets remaining available and unencumbered at the time they become due.  If

other creditors of Sprout or Strauss take action that impedes or precludes the transfer of such assets

(including but not limited to by filing liens, restraining notices or orders of attachment), then

Plaintiffs, Sprout and Strauss shall have the right to revoke the Settlement Agreement.  In the event

any of these Parties exercises the right to revoke, the Parties shall return to their positions prior to

the execution of the Settlement Memorandum of Understanding ("MOU") executed on April 10,

2023 and all amounts or assets transferred to the Settlement Administrator shall be returned to the Party from which they originated. In the event of revocation, any costs of the Settlement Administrator shall be borne by the Party exercising the right of revocation, except that if Plaintiffs revoke because Defendants did not comply with the payment obligations set forth herein, any costs of the Settlement Administrator will be deducted from the amount deposited with the Settlement Administrator.

68.     The Settlement Fund shall be deposited, at the times specified in Paragraph 66, into an account backed by the full faith and credit of the United States government or an agency thereof, such as an account insured by the Federal Deposit Insurance Corporation ("FDIC") pass-through insurance program. The Parties and the Escrow Agent agree to treat the Settlement Fund as a "qualified settlement fund" within the meaning of Treasury Regulation § 1.468B-1, and the Escrow Agent, as administrator of the Escrow Account within the meaning of Treasury Regulation § 1.468B-2(k)(3), shall be responsible for filing tax returns for the Escrow Account and paying from the Escrow Account the Settlement Fund Taxes owed with respect to the Escrow Account, to the extent necessary. In addition, the Escrow Agent shall timely make such elections as necessary or advisable to carry out the provisions of this Paragraph, including, if necessary, the "relation-back election" (as defined in Treas. Reg. § 1.468B-1) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Escrow Agent to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur. All Settlement Fund Taxes arising with respect to the income, if any, earned by the Settlement Fund (including any Settlement Fund Taxes that may be imposed upon Defendants with respect to any income earned by the Settlement Fund for any period during

which the Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes), and any Settlement Fund Tax Expenses, shall be paid out of the Settlement Fund. Defendants shall not have any liability or responsibility for the Settlement Fund Taxes or the Settlement Fund Tax Expenses. The Escrow Agent shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Settlement Fund and the distributions and payments therefrom, including, without limitation, the tax returns described in Treas. Reg. § 1.468B-2(k), and to the extent applicable, Treas. Reg. § 1.468B-2(1). Such tax returns shall be consistent with the terms herein, and in all events shall reflect that all Settlement Fund Taxes on the income earned by the Settlement Fund shall be paid out of the Settlement Fund. The Escrow Agent shall also timely pay Settlement Fund Taxes and Settlement Fund Tax Expenses out of the Settlement Fund to the extent necessary and is authorized to withdraw from the Escrow Account amounts necessary to pay Settlement Fund Taxes and Settlement Fund Tax Expenses. The Parties hereto agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this Settlement Agreement. Neither the Parties nor their counsel shall have any responsibility or liability for the acts or omissions of the Escrow Agent.

69.     The Parties agree that a *bona fide* dispute exists as to whether any amount of wages are due to any Settlement Class or Collective Member.

70.     For tax purposes, all funds will be treated by the Parties as additional, non-wage income, not subject to payroll withholdings, and shall be reported on an IRS Form 1099, except that 25% of each payment to a Settlement Class Member or Settlement Collective Member shall be considered wage income for which an IRS Form W-2 will be issued.

71.      Neither this Settlement Agreement, nor any of its attachments, should be interpreted to contain or constitute representations or advice regarding any U.S. Federal or State tax issue.

72.      The Settlement Administrator shall provide each eligible Class Member or Collective Member who is entitled to a Settlement Payment with a Form W-2 and/or a Form 1099 (if the issuance of such a form is required).

73.      The Named Plaintiffs and all Settlement Class and Collective Members who receive a payment of any kind from the Settlement Fund (including, in the case of the Named Plaintiffs, Service Payments) expressly acknowledge that such payments shall be considered non-wage income for which an IRS Form 1099 will be issued, if required, except for the portion that is wage income as described above. The amounts of the respective portions shall be calculated according to the terms described in Paragraph 32. The Named Plaintiffs and Class and Collective Members shall be solely and exclusively responsible for remitting to state and/or federal taxing authorities any applicable other taxes due and shall hold Released Parties, Class Counsel, the Escrow Agent, and the Settlement Administrator harmless for any taxes, penalties, interest, liabilities, costs and expenses caused by any such taxing authority relating in any way to the tax treatment of payments to the Named Plaintiffs and all Class and Collective Members pursuant to this Settlement Agreement or failure to timely or properly pay any taxes owed on their respective Settlement Payments.

74.      The Named Plaintiffs may apply for a Service Payment from the Settlement Fund of up to Two Thousand Five Hundred Dollars ($2,500) each, and Defendants shall not oppose any applications for such a Service Payment.  The Named Plaintiffs understand and agree that they each must execute a Named Plaintiffs' General Release Form without any deletion or amendment

to any language in said form within seven (7) days of the date on which the Court enters the Final Approval Order in order to receive their Service Payment.

75.    The agreement of the Named Plaintiffs to the Settlement is not conditioned on the amount of Service Payments the Court approves. Any Service Payments, as awarded by the Court, shall be payable from the Settlement Fund contained in the Escrow Account, as ordered, fourteen (14) days after the Effective Date, provided the Named Plaintiff executes a Named Plaintiffs' General Release Form as explained more fully above.

76.    Class Counsel may jointly apply for a payment from the Settlement Fund for PAGA penalties in the amount of Twenty-Five Thousand Dollars ($25,000.00), with 75% to be paid to the LWDA ("PAGA Payment") and 25% to be paid to the relevant members of California Settlement Class in conformity with the Plan of Allocation. Any PAGA penalty, as awarded by the Court, shall be payable from the Settlement Fund contained in the Escrow Account, as ordered, fourteen (14) days after the Effective Date.

77.    Class and Collective Counsel agree to apply jointly for a Fee and Expense Award from the Court that will not exceed thirty-three and one-third percent (33.33%) of the Settlement Fund. Defendants shall not oppose the application of Class and Collective Counsel consistent herewith.  Any Fee and Expense Award, as awarded by the Court, shall be payable from the Settlement Fund contained in the Escrow Account, as ordered, fourteen (14) days after the Effective Date. Subject to approval by the Court, that amount shall be the only compensation paid by Defendants or the Released Parties for attorneys' fees and costs associated with the prosecution and administration of this action. Class Counsel, Collective Counsel, Named Plaintiffs, and any Settlement Class or Collective Member will not apply to the Court for any payment of attorneys' fees or costs that are in addition to the foregoing or that exceed the Settlement Fund. The Parties

agree that, separate and apart from the Court-approved Fee and Expense Award, each of the Parties, including all Settlement Class Members and Collective Members, shall bear their own fees and costs, including, but not limited to, those relative to the investigation, filing, prosecution or settlement of this Action; the negotiation, execution, or implementation of this Settlement Agreement; and/or the process of obtaining, administering or challenging a certification order and/or final approval. If Class Counsel appeals the Court's ruling on their application for a Fee and Expense Award, the ruling of the appellate court (regardless of its substance) shall not constitute a material alteration of a term of this Settlement Agreement. All claims for attorneys' fees and costs or expenses that Class Counsel, Collective Counsel, Named Plaintiffs, and the Settlement Class Members may possess against Defendants or the Released Parties have been compromised and resolved in this Settlement Agreement and shall not be affected by any appeal that Class or Collective Counsel may file.

## V.    PLAN OF ALLOCATION AND DISBURSEMENT OF SETTLEMENT PAYMENTS

78.    To receive a Settlement Payment from the Settlement Fund, a Settlement Class Member or his or her Legally Authorized Representative must not have submitted a request for exclusion, and must be eligible for a payment under the Plan of Allocation in Paragraphs 78 – 86.

79.    Settlement payments will be made in the form of a check delivered via mail. Settlement checks shall be delivered to the last known mailing address from Sprout's personnel records for each respective Settlement Class or Settlement Collective Member, or, if a Settlement Class or Settlement Collective Member has provided an updated address to Class or Collective Counsel or the Settlement Administrator, the check will be delivered via mail to the updated address.

80.     Settlement Payments shall be calculated as follows, taking as a starting point the Net Settlement Fund, which is estimated for purposes of this calculation to be approximately $2.1 million.

- In the Parties' estimation, approximately $306,000 to California Labor Class members, to be distributed as follows: each class member will be paid for one hour of overtime per week worked based on the employee's regular rate of pay, up to a cap of $1,000.

- In the Parties' estimation, approximately $14,000 to FCRA Class members with claims under California's FCRA and ICRAA, distributed at the rate of $30 for each Class member.

- The remainder, estimated to be approximately $1.78 million for purposes of this calculation, to be distributed on a *pro rata* basis to each Shutdown Class Member based on his or her share of the wages and commissions due to them under the Sprout payrolls of July 7 and 22, 2022.

81.     The Settlement Administrator shall use reasonable efforts to disburse Settlement Payments to all Class Members who have not timely opted out and all Settlement Collective Members within thirty (30) days after the Effective Date. Such disbursements shall be made by check via first-class mail. For Settlement Payments which are returned as undeliverable, the Settlement Administrator shall make a diligent effort to obtain updated mailing addresses and attempt a second mailing if the Settlement Payment is greater than Two Hundred Dollars and Zero Cents ($200).

82.     Settlement checks issued hereunder will include the following language (or words to comparable effect):  *By endorsing, depositing, cashing, or negotiating this check, I consent to join the FLSA collective action against Defendants styled Agudelo et al. v. Sprout Mortgage, LLC*

*et al., 22 Civ. 4004, and release Defendants from all wage and hour claims under the Fair Labor*

*Standards Act which have been brought in the Litigation or that are based on the same facts and*

*circumstances as the claims in the Litigation, including but not limited to overtime wage claims*

*for all time periods through [TO BE INSERTED: the date on which the Court grants preliminary*

*approval], and expressly release any such claims.* The Claims Administrator will provide

Defendants with a photocopy of the front and back of each endorsed check, which Defendants will

then file with the Court, thereby releasing any FLSA claims of Settlement Collective Members

who have not already consented to join this action.

83.    The Settlement Administrator shall send with each Settlement Payment

disbursement an explanation (in an enclosed letter with the check) of how the Settlement Payment

was calculated and how the recipient may challenge that calculation (as set forth in Paragraph 84).

84.    If a Settlement Class Member disagrees with the calculation of his or her

Settlement Payment, he or she may challenge the calculation. The Settlement Class Member must

send the challenge, along with any supporting documentation, to the Settlement Administrator

such that it is postmarked no later than twenty-one (21) days from the date of the initial

disbursement of Settlement Payments. The Settlement Administrator shall resolve the challenge

based on funds available and input from Class Counsel, Collective Counsel and Defendants, who

shall cooperate in good faith to assist the Settlement Administrator.  Class Counsel, Collective

Counsel and Defendants acknowledge in this regard that, as provided for by Paragraph 161, they

remain subject to the jurisdiction of the United States District Court for the Eastern District of New

York for all purposes related to this Settlement Agreement.  In the event that the Settlement

Administrator resolves the challenge in favor of the Settlement Class Member, the Settlement

Administrator shall provide the Settlement Class Member with a disbursement prior to the final distribution from any amounts remaining in the Net Settlement Fund.

85.     As provided in Paragraph 73, Settlement Class Members shall be solely responsible for the timely payment in full of all federal, state, and municipal income taxes owed on the Settlement Payments, except for the payment of employee and employer taxes related to payments reported on Form W-2, which shall be the responsibility of the Settlement Administrator. Neither Party has made any representation to the other Party as to the taxability or tax implications of any Settlement Payments or other payments pursuant to this Agreement.

86.     Any checks issued to Settlement Class Members shall remain valid and negotiable for sixty (60) days from the date of their mailing. Within seven (7) business days of the conclusion of the 60-day check cashing period, the Settlement Administrator shall inform the Parties regarding the status of any uncashed checks, including the amount, and the identity of the corresponding Settlement Class Members with an uncashed check. The Settlement Administrator will make reasonable attempts to notify Settlement Class who have not cashed their checks by that date and encourage them to cash them. If any Settlement Class Member does not cash his or her settlement check within another thirty (30) days after notice, then ten (10) business days later, the Settlement Administrator shall void the check and remit the funds to the Net Settlement Fund as described above for redistribution to Settlement Class Members who did receive initial settlement shares (but only those for whom the residual payment would be at least $100). This second distribution shall take place approximately one hundred and twenty (120) days after the initial distribution. If, following the second distribution, there are any remaining funds that have not been distributed, such funds will be distributed to the parties' agreed upon *cy pres* beneficiary, to be agreed upon by the parties and set forth in the Final Approval motion papers.

## VI.    DISSEMINATION OF CLASS AND COLLECTIVE NOTICE

87.    Within fourteen (14) days of the Preliminary Approval Order, but subject to the Settlement Administrator providing adequate and contractual assurances with respect to confidentiality and data security, Defendants will provide the Settlement Administrator the names and last-known street and electronic mail addresses of potential Settlement Class and Collective Members that it is able to identify following a good-faith inquiry (the "Class List" also referred to as the "list of potential Settlement Class Members"). The data provided to the Settlement Administrator will remain confidential and will not be disclosed to anyone, except as required by applicable tax authorities, pursuant to the express written consent of Defendants, or by order of the Court. The data provided under this Paragraph shall be used only for the purpose of administering this Settlement.

88.    The Settlement Administrator shall send a copy of the Notice of Settlement of Class Action by electronic mail to each potential Settlement Class Member.  If any Notice of Settlement of Class Action sent via electronic mail to any potential Settlement Class Member in accordance with Paragraph 98 is undeliverable, the Settlement Administrator will promptly log the names of each such Settlement Class or Collective Member and provide copies of the log to Class Counsel, Collective Counsel, and Defense Counsel, as requested. The Settlement Administrator shall then send the Notice of Settlement of Class Action to the potential Settlement Class Member's postal mailing address on file with Defendants or any updated address that such Settlement Class or Collective Member has provided to Class Counsel or the Settlement Administrator via first-class mail. If any Notice of Settlement of Class Action sent to any potential Settlement Class Member via first-class mail is returned to the Settlement Administrator as undeliverable, the Settlement Administrator will promptly log the names of each such Settlement Class Member and provide copies of the log to Class Counsel, Collective Counsel, and Defense

Counsel, as requested. If the postal mailing is returned with a forwarding address, the Settlement Administrator shall forward the postal mailing to that address. For any remaining returned postal mailings, the Settlement Administrator shall make a good-faith search of an appropriate database, and postal mailings shall be forwarded to any new postal mail address obtained through such a search. In the event that any Notice of Settlement of Class Action is returned as undeliverable a second time, no further postal mailing shall be required.

89.    To the extent that sending the Notice of Settlement of Class Action via postal mail is necessary under the terms of Paragraph 88, before any mailing, the Settlement Administrator shall make a good-faith attempt to obtain the most-current names and postal mail addresses for all potential Settlement Class Members to receive such postal mail, including cross-checking the names and/or postal mail addresses it received from Defendants, as well as any other sources, with appropriate databases (*e.g.*, the National Change of Address Database) and performing further reasonable searches (*e.g.*, through Lexis/Nexis or other similar databases) for more-current names and/or postal mail addresses for potential Settlement Class and Collective Members. All potential Settlement Class Members' names and postal mail addresses obtained through these sources shall be protected as confidential and not used for purposes other than the notice and administration of this Settlement.

90.    The Parties agree that the procedures set forth in this Paragraphs 87 – 89 constitute reasonable and the best practicable notice under the circumstances and an appropriate and sufficient effort to locate current addresses for Settlement Class Members such that no additional efforts to do so shall be required.

91.    The Settlement Administrator will provide the Class Notice, without material variation from the Class List, at a minimum, via (i) electronic mail (ii) if necessary in accordance

with Paragraph 89, first-class mail (where available); and (iii) a content-neutral settlement website managed by the Settlement Administrator, and approved by counsel for the Parties, which will contain further information about the Settlement process, including relevant pleadings. The Class Notice shall comply with Rule 23 of the Federal Rules of Civil Procedure and due process.

92.      The Class Notice shall inform potential Settlement Class Members that Settlement Payments will be made by check via first-class mail. The Settlement Administrator shall provide an opportunity for potential Settlement Class Members to submit updated postal mailing addresses.

93.      At least twenty-one (21) days before the Fairness Hearing, the Settlement Administrator shall prepare a declaration of due diligence and proof of dissemination with regard to the mailing of the Notice of Settlement, and any attempts by the Settlement Administrator to locate Settlement Class Members, its receipt of valid requests for exclusion, the filing of valid opt-ins, and its inability to deliver the Notice of Settlement to Settlement Class Members due to invalid addresses ("Due Diligence Declaration"), to Class Counsel, Collective Counsel, and Defense Counsel for presentation to the Court. Class Counsel shall be responsible for filing the Due Diligence Declaration with the Court.

94.      If the Settlement is not finally approved, is overturned, or is modified on appeal or as a result of further proceedings on remand of any appeal with respect to the Settlement, or if the Effective Date otherwise does not occur, the balance of the Settlement Fund, including all earned or accrued interest, shall be returned to Sprout and Strauss within five (5) days, or as soon as practicable, as set forth in this Agreement and in accordance with the Escrow Agreement.

95.      If any individual whose name does not appear on the list of potential Settlement Class Members that Defendants provide the Settlement Administrator pursuant to Paragraph 87 (and who has not previously opted out of the Settlement Class), believes that he or she is a

Settlement Class Member, he or she must notify the Settlement Administrator prior to the filing of

the motion for final approval of the settlement. The Parties will meet and confer regarding any

such individuals in an attempt to reach an agreement as to whether any such individual should be

regarded as a Settlement Class Member. If the Parties so agree, the Settlement Administrator will

mail a Notice of Settlement of Class Action to the individual and treat the individual as a

Settlement Class Member for all other purposes. Such an individual will have all of the same rights

as any other Settlement Class Member under this Agreement, without any change to the

consideration to be paid hereunder.

## VII.    RELEASES

96.    The Released Claims against each and all of the Released Parties shall be released

and dismissed with prejudice and on the merits (without an award of fees or costs to any party

other than as provided in this Agreement) upon entry of the Final Approval Order and Final

Judgment, provided that the Named Plaintiffs' General Released Claims shall be released upon the

execution of the Named Plaintiffs' General Release Form, and provided that a Settlement

Collective Member's FLSA claims shall be released and dismissed with prejudice on the merits

(without an award of fees or costs to any party other than as provided in this Agreement).

97.    As of the Effective Date, the Named Plaintiffs, all Settlement Class Members who

have not been excluded from the Settlement Class as provided in the Opt-Out List, and all

Settlement Collective Members who have opted into the Settlement Collective, individually and

on behalf of their heirs, estates, trustees, executors, administrators, representatives, agents,

successors, and assigns, and anyone claiming through them or acting or purporting to act on their

behalf, agree to forever release, discharge, hold harmless, and covenant not to sue each and all of

the Released Parties from each and all of the Named Plaintiffs' General Released Claims (in the

case of the Named Plaintiffs), the Settlement Class Members' Released Claims (in the case of the

Settlement Class Members), and the Settlement Collective Members' Released Claims (in the case of the Settlement Collective Members), and by operation of the Final Judgment shall have fully and finally released, relinquished, and discharged all such claims against each and all of the Released Parties; and they further agree that they shall not now or hereafter initiate, maintain, or assert any Named Plaintiffs' General Released Claims (in the case of the Named Plaintiffs), any Settlement Class Members' Released Claims (in the case of the Settlement Class Members), and any Settlement Collective Members' Released Claims (in the case of the Settlement Collective Members), against the Released Parties in any other court action or before any administrative body, tribunal, arbitration panel, or other adjudicating body. Without in any way limiting the scope of the release described in Paragraph 49 or in the remainder of these Paragraphs, this release covers, without limitation, any and all claims for attorneys' fees, costs, or disbursements incurred by Class or Collective Counsel or any other counsel representing the Named Plaintiffs, Settlement Class Members, or Settlement Collective Members, or by the Named Plaintiffs, Settlement Class Members, or Settlement Collective Members, or any of them, in connection with or related in any manner to the Action, the Settlement of the Action, the administration of such Settlement, and/or the Released Claims, except to the extent otherwise specified in the Agreement, including without limitation fees, costs and disbursements awarded to any objector's counsel in this Action.

98.    As of the Effective Date, the Named Plaintiffs, all Settlement Class Members who have not been excluded from the Settlement Class as provided in the Opt-Out List, and all Settlement Collective Members who have opted into the Settlement Collective, shall be permanently barred and enjoined from initiating, asserting, or prosecuting against the Released Parties in any federal or state court, tribunal or administrative agency any and all Named Plaintiffs' General Released Claims (in the case of the Named Plaintiffs), any Settlement Class Members'

Released Claims (in the case of the Settlement Class Members), and any Settlement Collective Members' Released Claims (in the case of the Settlement Collective Members), as further provided in Paragraph 62.

99.     The Named Plaintiffs expressly acknowledge that they are familiar with principles of law such as Section 1542 of the California Civil Code, which provides:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

100.    With respect to the Settlement Class Members' Released Claims and Settlement Collective Members' Released Claims, as described in Paragraph 49, each Settlement Class and Collective Member shall be deemed to have expressly, knowingly, and voluntarily waived and relinquished, to the fullest extent permitted by law, the provisions, rights, and benefits he or she may otherwise have had pursuant to Section 1542 of the California Civil Code and all similar federal or state laws, rights, rules, or legal principles of any other jurisdiction that may be applicable herein (and to the extent applicable). In connection with the release, the Settlement Class and Collective Members acknowledge that they are aware that they may hereafter discover claims presently unknown and unsuspected or facts in addition to or different from those which they now know or believe to be true with respect to matters released herein. Nevertheless, the Settlement Class and Collective Members acknowledge that a portion of the consideration received herein is for a release with respect to unknown damages and complaints, whether resulting from known injuries and consequences or from unknown injuries or unknown consequences of known or unknown injuries, and state that it is the intention of the Settlement Class and Collective Members in agreeing to this release fully, finally, and forever to settle and release all matters and

all claims that exist, hereafter may exist, or might have existed (whether or not previously or currently asserted in any action), constituting Settlement Class Members' Released Claims and Settlement Collective Members' Released Claims.

101.    With respect to the Named Plaintiffs' General Released Claims, each Named Plaintiff shall be deemed to have expressly, knowingly, and voluntarily waived and relinquished, to the fullest extent permitted by law, the provisions, rights, and benefits he or she may otherwise have had pursuant to Section 1542 of the California Civil Code and all similar federal or state laws, rights, rules, or legal principles of any other jurisdiction that may be applicable herein (and to the extent applicable). In connection with the release, the Named Plaintiffs acknowledge that they are aware that they may hereafter discover claims presently unknown and unsuspected or facts in addition to or different from those which they now know or believe to be true with respect to matters released herein. Nevertheless, the Named Plaintiffs acknowledge that a portion of the consideration received herein is for a release with respect to unknown damages and complaints, whether resulting from known injuries and consequences or from unknown injuries or unknown consequences of known or unknown injuries, and state that it is the intention of the Named Plaintiffs in agreeing to this release fully, finally, and forever to settle and release all matters and all claims that exist, hereafter may exist, or might have existed (whether or not previously or currently asserted in any action), constituting Named Plaintiffs' General Released Claims.

102.    Each Named Plaintiff further acknowledges, agrees, and understands that: (i) he or she has read and understands the terms of this Agreement; (ii) he or she has been advised in writing to consult with an attorney before executing this Agreement; (iii) he or she has obtained and considered such legal counsel as he or she deems necessary; and (iv) he or she has been given

twenty-one (21) days to consider whether or not to enter into this Agreement (although he or she may elect not to use the full 21-day period at his/her option).

103.    Each Named Plaintiff further acknowledges, agrees, and understands that he or she is expressly, knowingly, and voluntarily waiving and relinquishing, to the fullest extent permitted by law, all rights or claims arising under the Age Discrimination in Employment Act of 1967. Each Named Plaintiff may revoke his or her acceptance of their Service Payment in consideration for the Named Plaintiffs' General Released Claims within seven (7) days after the date he or she signs the Named Plaintiffs' General Release Form, without impacting the balance of this Agreement (i.e., that individual shall receive no Service Payment, and shall release only Settlement Class and Collective Member Released Claims). Any revocation must be in writing and received by counsel for Defendants within the seven-day period.

104.    Subject to Court approval, the Named Plaintiffs, all Settlement Class Members who have not been excluded from the Settlement Class as provided in the Opt-Out List, and all Settlement Collective Members who opt in to the Settlement Collective, shall be bound by this Settlement Agreement, and all of their claims shall be dismissed with prejudice and released, even if they never received actual notice of the Action or this Settlement.

## VIII.    ADMINISTRATION OF THE SETTLEMENT

105.    The Settlement Administrator or its authorized agents in consultation with the Parties and subject to the supervision, direction, and approval of the Court, shall administer and identify covered Settlement Class Members, and shall calculate the allocation of and oversee the distribution of the Settlement Fund to authorized recipients.

106.    The Settlement Fund shall be applied as follows:

a)    to pay the costs and expenses incurred in connection with providing Class Notice to Settlement Class Members and, as allowed by the Court, locating Settlement Class

Members' last-known postal mail addresses, processing any objections, challenges, and requests for exclusion, administering and distributing the Settlement Fund to the Settlement Class, and escrow fees and costs;

   b)  subject to the approval and further order(s) of the Court, and according to the terms provided in Paragraph 41, 74, 75 to pay Service Payments;

   c)  subject to the approval and further order(s) of the Court, and according to the terms of Paragraph 77, to pay the Fee and Expense Award as ordered by the Court;

   d)  to pay Settlement Fund Taxes and Settlement Fund Tax Expenses owed by the Settlement Fund, according to the terms in Paragraphs 65, 68;

   e)  to pay any costs and expenses incurred in connection with the services provided by the Settlement Administrator and Escrow Agent;

   f)  after the Effective Date and subject to the approval and further order(s) of the Court, to distribute the Net Settlement Fund for the benefit of the Settlement Class pursuant to the Plan of Allocation (including withholding of the Reserve Fund as set forth herein), or as otherwise ordered by the Court, provided that no funds from the Net Settlement Fund shall be disbursed until after the Effective Date; and

   g)  if necessary, to make further distributions according to the terms of Paragraph 86.

107.  One hundred eighty (180) days after the distribution of the balance of the Net Settlement Fund for the benefit of the Settlement Class, should any amount remain in the Net Settlement Fund, the Settlement Administrator shall disburse from such amounts, pursuant to the Plan of Allocation, Settlement Payments to those authorized recipients who received and cashed an initial Settlement Payment and whose residual share would likely be at least One Hundred

Dollars and Zero Cents ($100). If any funds are not successfully disbursed through this further distribution (for example, if checks are not cashed or returned as undeliverable), the Settlement Administrator shall direct such unclaimed funds to a *cy pres* recipient to be agreed on by the parties and named in the Plaintiffs' Final Approval papers.

108.     Settlement Class Members who are not on the Opt-Out List approved by the Court, and Settlement Collective Members who Opt-In, shall be subject to and bound by the provisions of the Settlement Agreement, the releases contained herein, and the Final Judgment with respect to all Settlement Class/Collective Members' Released Claims, regardless of whether they seek or obtain any distribution from the Settlement Fund.

109.     Other than the funding obligations of Sprout and Strauss hereunder, Defendants shall bear no responsibility for the costs, fees, or expenses related to the administration and distribution of the Settlement Fund. Neither Defendants nor their counsel shall have any responsibility for, interest in, or liability whatsoever with respect to the Settlement Fund, any Plan of Allocation, the calculations or disbursement of Settlement Payments, the payment or withholding of Settlement Fund Taxes (and any Settlement Fund Tax Expenses), the distribution of the Net Settlement Fund, or any losses incurred in connection with any such matters.

110.     The Settlement Administrator shall be responsible for issuing copies of IRS Forms 1099 and W-2 for the Named Plaintiffs and for all Settlement Class and Collective Members who receive a payment of any kind from the Settlement Fund (including, in the case of the Named Plaintiffs, Service Payments) and for whom such form is required.

111.     The Settlement Administrator shall be responsible for reporting payment of Settlement Payments to all required taxing and other authorities, taking appropriate withholding from the Settlement Payments, and remitting all other required payments to the proper authorities.

112.     Neither the Parties nor their counsel shall have any liability concerning the appointment of the Settlement Administrator and any actions taken by it.

113.     Payment from the Settlement Fund and Net Settlement Fund made pursuant to and in the manner set forth herein shall be deemed conclusive of compliance with this Settlement Agreement as to all Settlement Class and Collective Members.

114.     No Settlement Class or Collective Member shall have any claim against the Named Plaintiffs, Class Counsel, Collective Counsel, or the Settlement Administrator based on distributions made substantially in accordance with this Settlement Agreement and/or orders of the Court. No Settlement Class or Collective Member shall have any claim against Defendants or their counsel relating to distributions made under this Settlement.

## IX.    EFFECT OF DISAPPROVAL, CANCELLATION, OR TERMINATION OF SETTLEMENT AGREEMENT

115.     If the Court does not approve the Settlement as set forth in this Settlement Agreement, or does not enter the Final Approval Order and Final Judgment, or if the Court approves the Settlement and enters the Judgment and appellate review is sought, and on such review, the entry of Judgment is vacated, modified in any way, or reversed, or if the Final Approval Order does not otherwise become Final, then this Settlement Agreement shall be cancelled and terminated and the Parties are released from their obligations under the Agreement, unless all Parties, each in their sole respective discretion within thirty (30) days from the date of such ruling, provide written notice to all other Parties hereto of their intent to proceed with the Settlement under the terms of the Settlement as it may be modified by the Court or any appellate court.

116.     Defendants shall have the right to withdraw from the Settlement if leave to file the Amended Complaint for Settlement is not granted on the Preliminary Approval Date or if the Amended Complaint for Settlement does not become the operative complaint in the Action

promptly thereafter. If Defendants choose, pursuant to their sole and absolute discretion, to exercise this right, they must do so within thirty (30) days of the Preliminary Approval Date, by providing written notice to Class and Collective Counsel.

117.    Defendants shall also have the right to withdraw from the Settlement if 5% or more of the Class Members file opt out exclusion forms prior to the Exclusion/Objection Deadline. Class Members who are exclusively in the FCRA Class and no other class are excluded from this calculation. However, if 20% of the Class Members who are exclusively in the FCRA class and no other class file opt out exclusion forms before the Exclusion/Objection Deadline, Defendants shall have the right to withdraw from the settlement.  If Defendants choose, pursuant to their sole and absolute discretion, to exercise this right, they must do so within twenty-one (21) days of receipt of the Settlement Administrator's opt-out list as provided in Paragraph 129, by providing written notice to Class and Collective Counsel.

118.    Prior to Defendants revoking the Settlement Agreement, the Parties agree to convene a session with Mediator Martin Scheinman (or another mutually agreeable neutral), who will have authority to make a recommendation regarding the final settlement amount, which could include reductions of the claims, attorneys' fees, or other allocated amounts.  The scheduling and convening of such session shall toll the deadline set forth in Paragraph 117 above, pending such session.  Any additional fees owed to the Mediator shall be paid from the Gross Settlement Fund, with the Mediator to address this additional cost in his recommendation.

119.    Following the pre-revocation session with Mr. Scheinman, if the Parties do not accept the recommendation to preserve the Settlement Agreement, Defendants may revoke the final settlement upon notice to Class Counsel, Collective Counsel, the Settlement Administrator, and the Court in writing.

120.    Any expenses incurred by the Settlement Administrator prior to or in connection with this revocation shall be borne by Defendant Sprout. In the event of revocation, the entire Settlement Fund less the Settlement Administrator's expenses shall be returned to the Party from which the funds or assets originated.

121.    In the event that (i) the Settlement is not approved, is overturned, or is materially modified by the Court or on appeal, (ii) the Judgment does not become Final, or (iii) this Settlement Agreement is terminated, cancelled, or fails to become effective for any reason, then within five (5) business days after written notice is sent by Class/Collective Counsel or Defense Counsel to all Parties hereto, the Settlement Fund, and any other cash deposited by Defendants into the Escrow Account pursuant to this Agreement shall be refunded to Sprout and Strauss, including interest earned or accrued.

122.    In the event that: (i) the Settlement is not approved, is overturned, or is materially modified by the Court or on appeal, (ii) the Judgment does not become Final, or (iii) this Settlement Agreement is terminated, cancelled, or fails to become effective for any reason, then: (a) the Settlement shall be without force and effect upon the rights of the Parties hereto, and none of its terms shall be effective or enforceable, with the exception of those provisions (such as this Paragraph) that address the effect and implementation in the event the Settlement does not consummate, which shall remain effective and enforceable; (b) the Parties shall be deemed to have reverted *nunc pro tunc* to their respective status as of the effective date of the Settlement Memorandum of Understanding, *i.e.* April 10, 2023; (c) Sprout and Strauss shall be refunded the amounts paid pursuant to this Agreement (other than any costs of administration as set forth herein); (d) all orders entered in connection with the Settlement, including the certification of the Settlement Class/Collective and the approval for filing of the Amended Complaint for Settlement, shall be

vacated without prejudice to any Party's position on the issues of class or collective certification, the issue of amending the complaint, or any other issue, in this Action or any other action, and the Parties shall be restored to their litigation positions existing on the date of execution of the Settlement Memorandum of Understanding; and (e) the Parties shall proceed in all respects as if the Settlement Agreement and related documentation and orders had not been executed, and without prejudice in any way from the negotiation or fact of the Settlement or the terms of the Settlement Agreement. The Settlement Agreement, the Settlement, all documents, orders, and other evidence relating to the Settlement, the fact of their existence, any of their terms, any negotiations, proceedings, acts performed, or documents executed pursuant to or in furtherance of the Settlement Agreement or the Settlement shall not be offered, received, or construed as evidence of a presumption, concession, or an admission of liability, of the certifiability of a litigation class, or of any misrepresentation or omission in any statement or written document approved or made, or otherwise used by any Person for any purpose whatsoever, in any trial of this Action or any other action or proceedings. For the purposes of this and the preceding paragraph, "material modifications" to the Settlement include but are not limited to any modifications to the definitions of the Settlement Class, Settlement Collective, Settlement Class Members, Settlement Collective Members, or Released Claims, and/or any modifications to the terms of the settlement consideration described in Paragraphs 65 - 77. However, decisions by the Court to (i) award a Service Payment to an eligible Person below the maximum amount set forth in this Settlement, (ii) decline to award a Service Payment to an eligible Person entirely, or (iii) award Class Counsel fees and costs below the requested amounts for the same, shall not be considered "material modifications."

## X.    PROCEDURES FOR REQUESTS FOR EXCLUSION

123.    Settlement Class Members may exclude themselves from the Settlement. Those who wish to exclude themselves (or "opt-out") from the Settlement Class must submit timely, written requests for exclusion. To be effective, such a request must include the Settlement Class Member's name, address, and telephone number; a clear and unequivocal statement that the Settlement Class Member wishes to be excluded from the Settlement Class; and the signature of the Settlement Class Member or the Legally Authorized Representative of the Settlement Class Member. The request must be mailed or emailed to the Settlement Administrator at the address provided in the Notice of Settlement of Class Action and must be postmarked or emailed no later than the Exclusion/Objection Deadline. The date of the postmark shall be the exclusive means used to determine whether a request for exclusion has been timely submitted. Requests for exclusion must be exercised individually by the Settlement Class Member, not as or on behalf of a group, class, or subclass, except that such individual exclusion requests may be submitted by a Settlement Class Member's Legally Authorized Representative. All requests for exclusion must be submitted by the requesting Settlement Class Member (or his or her Legally Authorized Representative), even if the Settlement Class Member is represented by counsel.  Any Settlement Class Member who opts-out pursuant to this paragraph shall be deemed to have excluded himself or herself from the Settlement Collective, and any consent to join filed with respect to that individual pursuant to the FLSA deemed revoked.

124.    The Settlement Administrator shall promptly log each request for exclusion that it receives and provide copies of the log and all such requests for exclusion to Class Counsel and Defense Counsel, as requested.

125.     The Settlement Administrator shall prepare a list of all Persons who timely and properly requested exclusion from the Settlement Class and shall, before the Fairness Hearing, submit an affidavit to the Court attesting to the accuracy of the list.

126.     All Settlement Class Members who are not included in the Opt-Out List approved by the Court shall be bound by this Agreement, and all their claims shall be dismissed with prejudice and released as provided for herein, even if they never received actual notice of the Action or this proposed Settlement.

127.     The Settlement Administrator, in its sole discretion, shall determine whether a request for exclusion was timely submitted. The Settlement Administrator's decision shall be final, binding, and non-appealable.

128.     Settlement Class Members may object to or opt out of the Settlement, but may not do both. Any Settlement Class Member who submits a timely request for exclusion may not file an objection to the Settlement or receive a Settlement Payment and shall be deemed to have waived any rights or benefits under the Settlement Agreement.

129.     No later than five (5) business days after the Exclusion/Objection Deadline, the Settlement Administrator shall provide to Class Counsel and Defense Counsel a complete opt-out list together with copies of the opt-out requests. Notwithstanding any other provision of this Settlement Agreement, if 5% or more of the Class Members file opt out exclusion forms before the Exclusion/Objection Deadline (excluding Class Members who are solely in the FRCA Class, and are not part of either of the classes), or if 20% of the Class Members who are exclusively in the FCRA class and no other class file opt out exclusion forms before the Exclusion/Objection Deadline, Defendants at their sole and exclusive option may elect to rescind and revoke the entire Settlement Agreement, thereby rendering the Settlement null and void in its entirety, by sending written notice

that they revoke the Settlement pursuant to this Paragraph to Class Counsel and Collective Counsel within twenty-one (21) days following receipt of the Settlement Administrator's opt-out list.

## XI.    PROCEDURES FOR OBJECTIONS

130.    Any Settlement Class or Collective Member who wishes to object to the fairness, reasonableness, or adequacy of this Agreement or the proposed Settlement must submit to the Settlement Administrator a timely statement of the objection, as set forth below.

131.    To be timely, the objection must be postmarked and mailed to the Settlement Administrator, no later than the Exclusion/Objection Deadline. The date of the postmark on the return-mailing envelope shall be the exclusive means used to determine whether objection has been timely submitted.

132.    The objection must contain at least the following: (i) the objector's full name, address, telephone, and signature; (ii) a clear reference to the Action; (iii) a statement of the specific legal and factual basis for each objection argument; and (iv) a statement whether the objecting person or entity intends to appear at the Fairness Hearing, either in person or through counsel and, if through counsel, a statement identifying that counsel by name, bar number, address, and telephone number. All objections shall be signed by the objecting Settlement Class or Collective Member (or his or her Legally Authorized Representative), even if the Settlement Class or Collective Member is represented by counsel.

133.    Any Settlement Class Member (and/or his or her attorney), or any attorney working for a governmental entity, who wishes to appear in the Action to object to the Settlement or who is representing or assisting a Settlement Class Member in connection with any objection to the Settlement (including, but not limited to, by drafting or preparing papers for an objection on behalf of a Settlement Class Member) must submit to or file with the Clerk of the Court a notice of appearance no later than the Exclusion/Objection Deadline.

134.    The right to object to the proposed Settlement must be exercised individually by a Settlement Class Member or his or her attorney, and not as a member of a group, class, or subclass, except that such individual objections may be submitted by a Settlement Class Member's Legally Authorized Representative.

135.    Any Settlement Class Member who does not file a timely notice of intent to object in accordance with this Paragraph shall waive the right to object or to be heard at the Fairness Hearing and shall be forever barred from making any objection to the proposed Settlement, the Plan of Allocation, the Fee and Expense Award, and the Service Payments. Settlement Class and Collective Members who object to the proposed Settlement shall remain Settlement Class and Collective Members and shall be deemed to have voluntarily waived their right to pursue an independent remedy against Defendants and the Released Parties. To the extent any Settlement Class or Collective Member objects to the proposed Settlement, and such objection is overruled in whole or in part, such Settlement Class or Collective Member will be forever bound by the Final Approval Order and Final Judgment.

136.    In the event that any Person objects to or opposes this proposed Settlement or attempts to intervene in or otherwise enter the Action, the Parties agree to use their best efforts to cooperate in the defense of the Settlement.

## XII.    MISCELLANEOUS PROVISIONS

137.    In the event that one or more of the Parties to this Settlement Agreement institutes any legal action, arbitration, or other proceeding against any other Party to enforce the provisions of this Settlement Agreement or to declare rights and/or obligations under this Settlement Agreement, the successful Party shall be entitled to recover from the unsuccessful Party reasonable attorneys' fees and costs, including expert witness fees incurred in connection with any enforcement actions.

138.    Unless otherwise specifically provided herein, all notices, demands, or other communications given hereunder shall be in writing and shall be deemed to have been duly given as of the third business day after mailing by United States registered or certified mail, return receipt requested, addressed as follows:

To Plaintiffs and the Settlement Class:


To Defendants:


139.    All of the Exhibits to this Agreement are an integral part of the Settlement and are incorporated by reference as though fully set forth herein.

140.    The Parties agree that the recitals are contractual in nature and form a material part of this Settlement Agreement.

141.    This Settlement Agreement, including its accompanying Exhibits, sets forth the entire understanding of the Parties. No change or termination of this Settlement Agreement shall be effective unless in writing and signed by Class Counsel, Collective Counsel, and Defense Counsel. No extrinsic evidence or parol evidence shall be used to interpret this Agreement.

142.    This Settlement Agreement supersedes all prior negotiations and agreements and may be amended or modified only by a written instrument signed by counsel for all Parties or the Parties' successors-in-interest.

143.    Any and all previous agreements and understandings between or among the Parties regarding the subject matter of this Settlement Agreement, whether written or oral, are superseded and hereby revoked by this Settlement Agreement. The Parties expressly agree that the

terms and conditions of this Settlement Agreement will control over any other written or oral agreements.

144.    The Named Plaintiffs and Class Counsel acknowledge that an adequate factual record has been established that supports the Settlement and, apart from the limited discovery described in the next sentence, hereby waive any right to conduct further discovery to assess or confirm the Settlement.

145.    Unless otherwise noted, all references to "days" in this Agreement shall be to calendar days. In the event any date or deadline set forth in this Agreement falls on a weekend or federal legal holiday, such date or deadline shall be on the first business day thereafter.

146.    The Parties reserve the right, subject to the Court's approval, to make any reasonable extensions of time that might be necessary to carry out any of the provisions of this Agreement. Such extensions must be in writing to be enforceable.

147.    The Settlement Agreement, the Settlement, the fact of the Settlement's existence, any terms of the Settlement Agreement, and/or any negotiations, proceedings, acts performed, or documents executed pursuant to or in furtherance of the Settlement Agreement or the Settlement: (i) may not be deemed to be, may not be used as, and do not constitute an admission or evidence of the validity of any Released Claims or of any liability, culpability, negligence or wrongdoing on the part of the Released Parties; and (ii) may not be deemed to be, may not be used as, and do not constitute an admission or evidence of any fault, wrongdoing, or omission by the Released Parties in any trial, civil, criminal, or administrative proceeding of the Action or any other action or proceedings in any court, administrative agency, or other tribunal.

148.    The Released Parties shall have the right to file the Settlement Agreement, the Final Approval Order and Judgment, and any other documents or evidence relating to the

Settlement in any action that may be brought against them in order to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release, good-faith settlement, judgment bar, reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

149.    The Settlement Amount and the other terms of the Settlement were negotiated at arm's length and in good faith by the Parties, resulted from at least one arm's-length mediation session before mediator Martin F. Scheinman, and reflect a settlement that was reached voluntarily based upon adequate information and sufficient discovery and after consultation with experienced legal counsel.

150.    The Named Plaintiffs and Class/Collective Counsel have concluded that the Settlement set forth herein constitutes a fair, reasonable, and adequate resolution of the claims that the Named Plaintiffs asserted against Defendants, including the claims on behalf of the Settlement Class/Collective, and that it promotes the best interests of the Settlement Class/Collective.

151.    To the extent permitted by law, all agreements made, and orders entered, during the course of the Action relating to the confidentiality of information shall survive this Settlement Agreement.

152.    The Parties agree that the Plaintiffs and Class/Collective Counsel are not required to return any documents produced by Defendants until the final resolution of the Action. Within sixty (60) days following the Effective Date, Class/Collective Counsel shall return to Defendants all documents produced in the Action or confirm in writing that all such documents have been destroyed, in a manner consistent with the terms of any applicable Protective Order in the Action, and to the extent practicable.

153.    The waiver by one Party of any breach of this Settlement Agreement by any other Party shall not be deemed a waiver of any other prior or subsequent breach of this Settlement Agreement.

154.    This Settlement Agreement, including its Exhibits, constitutes the entire agreement among the Parties, and no representations, warranties, or inducements have been made to any Party concerning this Settlement Agreement or its Exhibits, other than the representations, warranties, and covenants contained and memorialized in this Settlement Agreement and its Exhibits.

155.    This Settlement Agreement may be executed in counterparts, each of which shall be deemed an original and all of which, when taken together, shall constitute one and the same instrument. The date of execution shall be the latest date on which any Party signs this Settlement Agreement.

156.    This Settlement Agreement may be signed with a facsimile or scanned signature and in counterparts, each of which shall constitute a duplicate original.

157.    The Parties hereto and their respective counsel agree that they will use their best efforts to obtain all necessary approvals of the Court (and any other court, including but not limited to in the *Boyer*, *Sawyer* and *Kelley* Actions) required by this Settlement Agreement.

158.    This Settlement Agreement shall be binding upon and shall inure to the benefit of the successors and assigns of the Parties hereto, including any and all Released Parties and any corporation, partnership, or other entity into or with which any Party hereto may merge, consolidate, or reorganize, each of which is entitled to enforce this Settlement Agreement.

159.    This Settlement Agreement has been negotiated among and drafted by Class Counsel, Collective Counsel, and Defense Counsel. Named Plaintiffs, Settlement Class Members,

Settlement Collective Members, and Defendants shall not be deemed to be the drafters of this Settlement Agreement or of any particular provision, nor shall they argue that any particular provision should be construed against its drafter or otherwise resort to the *contra proferentem* canon of construction. Accordingly, this Settlement Agreement should not be construed in favor of or against one Party as to the drafter, and the Parties agree that the common law principles of construing ambiguities against the drafter shall have no application. All Parties agree that counsel for the Parties drafted this Settlement Agreement during extensive arm's-length negotiations. No parol or other evidence may be offered to explain, construe, contradict, or clarify its terms, the intent of the Parties or their counsel, or the circumstances under which this Settlement Agreement was made or executed.

160.    Except where this Settlement Agreement itself provides otherwise, all terms, conditions, and Exhibits are material and necessary to this Settlement Agreement and have been relied upon by the Parties in entering into this Settlement Agreement.

161.    This Settlement Agreement shall be governed by federal law. To the extent that federal law does not apply, this Settlement Agreement shall be governed by and construed in accordance with the laws of the State of New York, without regard to choice of law principles. Any action based on this Settlement Agreement, or to enforce any of its terms, shall be venued in the United States District Court for the Eastern District of New York, which shall retain jurisdiction over all such disputes. All Parties to this Settlement Agreement shall be subject to the exclusive jurisdiction of the United States District Court for the Eastern District of New York for all purposes related to this Settlement Agreement, except that any disputes falling within the scope of arbitration agreements are subject to arbitration. This Paragraph relates solely to the law governing this Settlement Agreement and any action based thereon, and nothing in this Paragraph shall be

construed as an admission or finding that New York law applies to the Released Claims of any Named Plaintiffs, Settlement Class Members, or Settlement Collective Members who reside outside of the state.

162.    The Court shall retain continuing and exclusive jurisdiction over the Parties to this Settlement Agreement for the purpose of the administration and enforcement of this Settlement Agreement.

163.    The headings used in this Settlement Agreement are inserted merely for the convenience of the reader and shall not affect the meaning or interpretation of this Settlement Agreement.

164.    In construing this Settlement Agreement, the use of the singular includes the plural (and vice-versa) and the use of the masculine includes the feminine (and vice-versa).

165.    All of the Parties warrant and represent that they are agreeing to the terms of this Settlement Agreement based upon the legal advice of their respective attorneys, that they have been afforded the opportunity to discuss the contents of this Settlement Agreement with their attorneys and that the terms and conditions of this document are fully understood and voluntarily accepted.

166.    Each Party to this Settlement Agreement warrants that he, she, or it is acting upon his, her, or its independent judgment and upon the advice of his, her, or its counsel, and not in reliance upon any warranty or representation, express or implied, of any nature or any kind by any other Party, other than the warranties and representations expressly made in this Settlement Agreement.

167.    Signatory counsel warrant that they are fully authorized to execute this Agreement on behalf of their respective co-counsel listed below. Each counsel signing this Settlement

Agreement on behalf of his/her clients who are unable to sign the Agreement on the date that it is executed by other Parties represents that such counsel is fully authorized to sign this Settlement Agreement on behalf of his/her clients; provided, however, that all Parties who have not executed this Agreement on the date that it is executed by the other Parties shall promptly thereafter execute this Agreement, and in any event no later than 21 days after the Agreement has been executed by counsel.

168.    The Parties believe that this Settlement Agreement is a fair, adequate, and reasonable settlement of the Action, and they have arrived at this Settlement through arm's-length negotiations, taking into account all relevant factors, present and potential.

IN WITNESS WHEREOF, the Parties hereto, by and through their respective attorneys, and intending to be legally bound hereby, have duly executed this Settlement Agreement as of the date set forth below.

**APPROVED AS TO FORM AND CONTENT**

| For Plaintiffs Nathaniel Agudelo, Helen Owens, Holly Keith and Amanda Cooper | For Defendants Recovco Mortgage Management LLC, Sprout Mortgage LLC, Michael Strauss, Christopher Wright, Shea Pallante and Elliot Salzman |
|---|---|
| Brenna Rabinowitz, Esq. Bruce Menken, Esq. Scott Simpson, Esq. Menken Simpson & Rozger LLP 80 Pine Street, 33rd Floor New York, New York 10005 (212) 509-1616 brabinowitz@nyemployeelaw.com bmenken@nyemployeelaw.com ssimpson@nyemployeelaw.com | Marc S. Wenger, Esq. Diane Krebs, Esq. Elyse Patterson, Esq. Jackson Lewis P.C. 58 South Service Road, Ste. 250 Melville, New York 11747 (631) 247-0404 marc.wenger@jacksonlewis.com diane.krebs@jacksonlewis.com |

For Plaintiffs Blake Boyer, Lori Steward and Mike Shirdel

_____
Jean-Claude Lapuyade, Esq. (Bar No. 248676)
Sydney Castillo-Johnson, Esq. (Bar No. 343881)
JCL Law Firm, APC
5440 Morehouse Drive, Ste. 3600
San Diego, California  92121
(619) 599-8292
jlapuyade@jcl-lawfirm.com
scastillo@jcl-lawfirm.com

_____
Shani O. Zakay, Esq. (Bar No. 277924)
Jackland K. Hom, Esq. (Bar No. 327243)
Zakay Law Group, APLC
5440 Morehouse Drive, Ste. 2600
San Diego, California  92121
(619) 255-9047
shani@zakaylaw.com
jackland@zakaylaw.com
julieann@zakaylaw.com

For Plaintiffs and the Proposed Class Jared Sawyer and Scott Harvey

_____
Jamin S. Soderstrom, Esq. (Bar No. 261054)
Soderstrom Law PC
1 Park Plaza, Ste. 600
Irvine, California  92614
(949) 667-4700
jamin@soderstromlawfirm.com

_____
Shi_____ sq. (Bar No. 260390)
Forootan Law
3334 East Coast Highway, No. 307
Corona del Mar, California  92625
(949) 610-9878
shirin@forootanlaw.com

For Plaintiffs Blake Boyer, Lori Steward and
Mike Shirdel

_____
Jean-Claude Lapuyade, Esq. (Bar No. 248676)
Sydney Castillo-Johnson, Esq. (Bar No. 343881)
JCL Law Firm, APC
5440 Morehouse Drive, Ste. 3600
San Diego, California  92121
(619) 599-8292
jlapuyade@jcl-lawfirm.com
scastillo@jcl-lawfirm.com

_____
Shani O. Zakay, Esq. (Bar No. 277924)
Jackland K. Hom, Esq. (Bar No. 327243)
Zakay Law Group, APLC
5440 Morehouse Drive, Ste. 2600
San Diego, California  92121
(619) 255-9047
shani@zakaylaw.com
jackland@zakaylaw.com
julieann@zakaylaw.com

For Plaintiffs and the Proposed Class Jared
Sawyer and Scott Harvey

_____( 261054)
1 Park Plaza, Ste. 600
Irvine, California  92614
(949) 667-4700
jamin@soderstromlawfirm.com

_____
Shirin Forootan, Esq. (Bar No. 260390)
Forootan Law
3334 East Coast Highway, No. 307
Corona del Mar, California  92625
(949) 610-9878
shirin@forootanlaw.com

For Plaintiff Karen Kelley, individually and on behalf of all other persons similarly situated

_____
Omid Nosrati, Esq. (Bar No. 216350)
Amiel Azizollahi, Esq. (Bar No. 3355319)
1801 Century Park East, Ste. 840
Los Angeles, California  90067
(310) 553-5630
omid@nosratilaw.com
amiel@nosratilaw.com

4857-6087-7671, v. 1

# EXHIBIT

# A

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

------------------------------------------------- x

NATHANIEL AGUDELO, HELEN     :
OWENS, HOLLY KEITH, AMANDA     :
COOPER, BLAKE BOYER, LORI     :
STEWARD, MIKE SHIRDEL, JARED     :
SAWYER, SCOTT HARVEY, and     :
KAREN KELLEY, on behalf of     :
themselves and others similarly situated     :
    :
    *Plaintiffs, and Lead*     :
    *Plaintiffs for the*     :
    *Proposed Class,*     :
v.     :
    x

RECOVCO MORTGAGE
MANAGEMENT LLC, SPROUT
MORTGAGE LLC, MICHAEL
STRAUSS, CHRISTOPHER WRIGHT,
SHEA PALLANTE, and ELLIOT
SALZMAN

    *Defendants*

------------------------------------------------- 

Civil Action No. 22-cv-4004


**THIRD AMENDED CLASS AND**
**COLLECTIVE ACTION COMPLAINT**


**Jury Trial Demanded**

"Plaintiffs" Nathaniel Agudelo, Helen Owens, Holly Keith, Amanda Cooper, Blake Boyer,

Lori Steward, Mike Shirdel, Jared Sawyer, Scott Harvey, and Karen Kelley, individually and on

behalf of themselves and all others similarly situated, allege as follows:

## NATURE OF THE ACTION

1.    This is a class action by Plaintiffs and other similarly situated employees of the

Defendants, Recovco Mortgage Management LLC ("Recovco"), Sprout Mortgage LLC ("Sprout")

(together, "Corporate Defendants"), and Michael Strauss, Christopher Wright, and Elliot Salzman

(collectively, "Individual Defendants"),[1] for recovery of damages by reason of:

---

[1] References to "Defendants" include all Defendants, both Corporate and Individual.

a. **all Defendants' violation of** the Fair Labor Standards Act, 29 U.S.C.A. § 201 *et seq.* ("FLSA"); Fair Credit Reporting Act ("FCRA"), Article 6 of the New York Labor Law, N.Y. Lab. Law § 190 *et seq.* ("NYLL"); California WARN Act, Cal. Lab. Code § 1400 *et seq.*; Cal. Lab. Code §§ 1182.12, 1184, and 1197 (Failure to Pay Minimum Wages); Cal. Lab. Code §§ 510, 1194, 1198 (Failure to Pay Overtime Wages); Cal. Bus. and Prof. Code §§ 17200, et seq. (Unlawful Business Practices), Cal. Lab. Code §§ 221 and 223 (Unlawful Deductions); Cal. Lab. Code §§ 2802 (Failure to Reimburse); Cal. Lab. Code §§ 201, 202, 203 (Failure to Pay Wages When Due); Cal. Lab. Code § 227.3 (Failure to Pay Vacation Wages); Cal. Lab. Code § 512 (Failure to Provide Compliant Meal Periods or Pay Premium Wages); Cal. Lab. Code § 226.7 (Failure to Provide Compliant Rest Breaks or Pay Premium Wages); Cal. Lab. Code § 226(a) (Failure to Provide Timely and Accurate Wage Statements); Cal. Lab. Code § 204 (Failure to Properly Attribute Wages); Cal. Lab. Code §§ 432.5, 432.6, and 925 (Unlawful Contract Provisions); Cal. Lab. Code § 2751 (Unlawful Business Practices Relating to Commissions); Private Attorneys General Act ("PAGA"), Cal. Lab. Code §§ 2698 *et seq.*; Fair Credit Reporting Act; and Investigative Consumer Reporting Agencies Act; and

b. **Corporate Defendants' violation of** the Plaintiffs' rights under the federal Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101 *et seq.* (the "WARN Act"); and the New York Worker Adjustment and Retraining Notification Act (the "NY WARN Act"), N.Y. Labor Law § 860 *et seq.* (together, the "WARN Acts"); and

2

     **c.** **Corporate Defendants' and Strauss' (the "ERISA Defendants") violation of** their fiduciary duties pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1132(a)(3) and 1132(c)(1), and the Consolidated Omnibus Budget Reconciliation Act ("COBRA"), 29 U.S.C. § 1166(a).

2.     Plaintiffs Nathaniel Agudelo, Helen Owens, Holly Keith, Amanda Cooper, Blake Boyer, Lori Steward, Mike Shirdel, Jared Sawyer, and Scott Harvey (the "Nationwide Shutdown Plaintiffs"), on behalf of themselves and the "Nationwide Shutdown Class," defined as "All employees of Sprout Mortgage whose employment was terminated on or about July 6, 2022," bring this action pursuant to (a) the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* and specifically the collective action provision of the FLSA, 20 U.S.C. § 216(b), to remedy violations of the wage and hour provisions of the FLSA by all Defendants that have deprived Plaintiffs and others similarly situated of their lawful wages; and (b) Fed. R. Civ. P. 23, for Corporate Defendants' violations of the federal WARN Act, 29 U.S.C. § 2101 *et seq.*; and ERISA Defendants' violations of ERISA, 29 U.S.C. §§ 1132(a)(3) and 1132(c)(1), and COBRA, 29 U.S.C. § 1166(a).

3.     Plaintiffs Nathaniel Agudelo and Holly Keith (the "New York Shutdown Plaintiffs") bring this action on behalf of themselves and the "New York Shutdown Class," defined as "All employees of Sprout Mortgage who worked between June 16, 2022, and July 6, 2022, whose employment was terminated on July 6, 2022, and who were residents of New York on July 6, 2022," pursuant to Fed. R. Civ. P. 23, for all Defendants' violations of the NY WARN Act, N.Y. Labor Law § 860 *et seq.*; and New York Labor Law ("NYLL") § 190 *et seq.*

4.     Plaintiffs Blake Boyer, Lori Steward, Mike Shirdel, Jared Sawyer, and Scott Harvey (the "California Shutdown Plaintiffs")[2] also bring this action on behalf of themselves and the "California Shutdown Class," defined as "All employees of Sprout Mortgage whose employment was terminated on or about July 6, 2022, and who were residents of California on July 6, 2022," pursuant to Fed. R. Civ. P. 23, for all Defendants' violations of the California WARN Act, Cal. Lab. Code § 1400 *et seq.*; Cal. Bus. and Prof. Code §§ 17200, et seq. (Unlawful Business Practices); Cal. Lab. Code §§ 221 and 223 (Unlawful Deductions); Cal. Lab. Code §§ 2802 (Failure to Reimburse); Cal. Lab. Code § 227.3 (Failure to Pay Vacation Wages); Cal. Lab. Code § 204 (Failure to Properly Attribute Wages); and Cal. Lab. Code §§ 201, 202, 203 (Failure to Pay Wages When Due).

5.     Plaintiffs Blake Boyer, Lori Steward, Mike Shirdel, Jared Sawyer, Scott Harvey, and Karen Kelley (the "California Labor Plaintiffs") also bring this action on behalf of themselves and the "California Labor Class," defined as "All employees of Sprout Mortgage who worked for Sprout Mortgage while residing in California between February 22, 2016, and July 6, 2022," pursuant to Fed. R. Civ. P. 23, for violations of Cal. Lab. Code §§ 1182.12, 1184, and 1197 (Failure to Pay Minimum Wages); Cal. Lab. Code §§ 510, 1194, 1198 (Failure to Pay Overtime Wages); Cal. Bus. and Prof. Code §§ 17200, et seq. (Unlawful Business Practices); Cal. Lab. Code §203 (Waiting Time Penalties); Cal. Lab. Code § 512 (Failure to Provide Compliant Meal Periods or Pay Premium Wages); Cal. Lab. Code § 226.7 (Failure to Provide Compliant Rest Breaks or Pay Premium Wages); Cal. Lab. Code § 226(a) (Failure to Provide Timely and Accurate Wage Statements); Cal. Lab. Code §§ 432.5, 432.6, and 925 (Unlawful Contract Provisions); Cal. Lab.

---

[2] The "Shutdown Plaintiffs" refers collectively to the Nationwide Shutdown Plaintiffs, New York Shutdown Plaintiffs, and California Shutdown Plaintiffs. The "Shutdown Employees" or the "Shutdown Class" refers collectively to Similarly Situated Employees in the Nationwide Shutdown Class, New York Shutdown Class, and California Shutdown Class.

Code § 2751 (Unlawful Business Practices Relating to Commissions); Private Attorneys General Act ("PAGA"), Cal. Lab. Code §§ 2698 *et seq.*; California Fair Credit Reporting Act; and California Investigative Consumer Reporting Agencies Act.

6.      This Third Amended Complaint is filed with the consent of all Defendants pursuant to Fed. R. Civ. P. Rule 15(a).

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 as this action arises in part under 29 U.S.C. § 201 *et seq*.

8.      This Court also has subject matter jurisdiction pursuant to 29 U.S.C. § 2104(a)(5).

9.      This Court also has personal jurisdiction over the ERISA Defendants pursuant to 29 U.S.C. § 1132(e)(2).

10.      The Court's supplemental jurisdiction over Plaintiffs' state law claims is invoked pursuant to 28 U.S.C. § 1367, which confers supplemental jurisdiction over all non-federal claims arising from a common nucleus of operative facts.

11.      Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b), as a substantial part of the actions comprising the claims for relief occurred within this judicial district.

12.      Venue is further proper in this District because Defendants Sprout, Recovco, Strauss, and Wright are New York residents and reside in this district.

13.      This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## PARTIES

14.    Plaintiff Nathaniel Agudelo is an adult individual who, at all times relevant to this Complaint, has been a resident of South Floral Park, New York.

15.    At all relevant times, Agudelo was employed as a Closing Disclosure Specialist at Sprout Mortgage.

16.    Plaintiff Helen Owens is an adult individual residing in New Jersey who worked remotely, reporting to Defendants' New York Office located in East Meadow, New York.

17.    At all relevant times, Owens was employed as a Closing Disclosure Specialist at Sprout Mortgage.

18.    Plaintiff Holly Keith is an adult individual residing in Texas who commuted weekly to Defendants' New York Office located in East Meadow, New York.

19.    At all relevant times, Keith was employed as Senior Vice President of Secondary Due Diligence.

20.    Plaintiff Amanda Cooper is an adult individual residing in Pennsylvania who worked remotely, reporting to Defendants' New York Office located in East Meadow, New York.

21.    At all relevant times, Cooper was employed as Vice President of Credit at Sprout Mortgage.

22.    Plaintiff Blake Boyer was employed by Defendant in California from August of 2021 to July 6, 2022, and worked for Defendant in San Diego, California.

23.    Plaintiff Lori Steward was employed by Defendant in California from June of 2020 to July 6, 2022, and worked for Defendant in San Diego, California.

24.    Plaintiff Mike Shirdel was employed by Defendant in California from June of 2019 to July 6, 2022, and worked for Defendant in Anaheim, California.

25.     Plaintiff Sawyer is a resident of California. Sawyer worked for Defendants in California from approximately October 2021 until July 2022. He was assigned to Defendants' Irvine office. During his employment, he held the positions of Branch Manager and Vice President of Distributive Retail. He was a commission-eligible employee who earned and was paid commissions based on a calendar month.

26.     Plaintiff Harvey is a resident of California. Harvey worked for Defendants in California from approximately March 2022 until July 2022. He was assigned to Defendants' Irvine office. During his employment, he held the position of Senior Mortgage Loan Officer and was classified as a non-exempt employee. He was also a commission-eligible employee who earned and was paid commissions based on a calendar month.

27.     Plaintiff Karen Kelley, at all relevant times, has been a resident of the State of California and worked for Defendants from California.

28.     At all times relevant to this Complaint, Plaintiffs were employees of Defendants within the meaning of the FLSA, 29 USC § 203(e), NYLL § 190(2).

29.     Written consent forms for Plaintiffs to bring this action as a collective action under the FLSA have been previously filed, or are filed contemporaneously with this Third Amended Complaint.

30.     Defendant Recovco Mortgage Management LLC ("Recovco") is a foreign Limited Liability Company incorporated in Delaware and registered in the State of New York, with offices located at 90 Merrick Avenue, East Meadow, NY 11554.

31.     Defendant Sprout Mortgage LLC ("Sprout") is a foreign Limited Liability Company incorporated in Delaware and not registered in the State of New York, with offices located at 90 Merrick Avenue, East Meadow, NY 11554

32.    Upon information and belief, at all relevant times, Corporate Defendants operated as a single integrated enterprise and held themselves out as Recovco and Sprout interchangeably.

33.    For example, upon information and belief, employees of Corporate Defendants received paychecks and offer letters purporting to be from Sprout, but employees' ADP benefits accounts are affiliated with Recovco.

34.    Further, a filing with the Rhode Island Secretary of State indicates that Recovco Mortgage LLC used the fictitious name of "Sprout Mortgage" in that state from September 2018 to April 2020.

35.    Further, while no entity named "Sprout Mortgage LLC" is registered with the New York Secretary of State, "Recovco Mortgage LLC" is registered in New York as a foreign LLC incorporated in Delaware with the same address as Sprout Mortgage.

36.    Sprout and Recovco shared centralized corporate functions, including having the same Director of Human Resources at both companies.

37.    Sprout and Recovco also shared a centralized benefits structure. For example, although, upon information and belief, Sprout technically shut down on July 6, 2022, and Recovco did not, Recovco employees' health insurance benefits were suddenly terminated at the same time as Sprout employees' benefits because all employees of both companies were covered under the same health insurance plan.

38.    Moreover, upon information and belief, after Sprout shut down on July 6, 2022, the few former Sprout employees who remained to "wind down" the business were transferred to being nominal employees of Recovco without signing any additional offer letter or other paperwork formalizing the transfer.

39.    Corporate Defendants employed, jointly or as a single integrated enterprise, over 100 employees through their office in East Meadow, NY (the "NY Office").

40.    According to its website, "Recovco is an industry leader in both quality and operational excellence and has proven results of serving clients with due diligence, valuations, quality control, underwriting, and auditing services for banks, mortgage companies, and other market participants.  Recovco ensures that the loans of today and the past are pristine and free of possible unforeseen risks and in compliance with all laws and regulations." *See* https://www.recovcomortgage.com/about. Recovco's website also indicates it has over 160 full time employees. *Id.*

41.    At all relevant times, Corporate Defendants employed more than 100 employees who in the aggregate worked at least 4,000 hours per week exclusive of hours of overtime within the United States.

42.    Individual Defendant Michael Strauss is an adult individual who at all relevant times was and is the CEO of Sprout. Upon information and belief, Strauss directed various other individuals not to pay the outstanding wages owed to the terminated employees.

43.    Upon information and belief, Strauss resides in New York and has a residence in the Hamptons.

44.    Upon information and belief, Strauss directed the closure of Defendants' business and the non-payment of all employees' paychecks from New York.

45.    As the CEO of Sprout, who worked out of the company's New York office, Strauss had the authority to hire and fire employees and to set their rate of pay and other conditions of employment.

46.     Strauss also exercised authority and control over employees' health insurance plans, including by instructing that the plans be canceled retroactively to May 1, 2022.

47.     Individual Defendant Christopher Wright is an adult individual who at all relevant times was Sprout's Chief Financial Officer ("CFO").

48.     Upon information and belief, as CFO, Wright exercised authority and control over employees' rates of pay and conditions of employment because his approval was required for raises and promotions.

49.     Further, upon information and belief, Wright was responsible for hiring employees who worked under him in the company's financial department.

50.     Individual Defendant Shea Pallante is an adult individual who at all relevant times was Sprout's President and Chief Production Officer.

51.     Upon information and belief, Defendant Pallante resided in California for part of the relevant time period, and in Tennessee for part of the relevant time period.

52.     Upon information and belief, Pallante acted as a managing agent, officer, director, and/or employee of the Corporate Defendants, and caused and directed the activities alleged in this action.

53.     Individual Defendant Elliot Salzman is an adult individual who at all relevant times was Sprout's Executive Vice President and Chief Credit Officer.

54.     Upon information and belief, Salzman resides in Long Beach, New York, and at all relevant times worked from Defendants' New York office.

55.     Salzman had the authority to hire and fire employees and to set their rate of pay and other conditions of employment.

56.    For example, Plaintiff Amanda Cooper was promoted twice, with attendant pay raises, while working for Defendants. Each time she received an offer letter confirming her new position and pay, it was signed by Defendant Salzman.

57.    Until their termination by Defendants, the New York Shutdown Plaintiffs and other similarly situated persons were employees of Defendants who resided in New York and/or worked at Defendants' East Meadow, NY office (the "NY Office") and who were terminated as part of or as a reasonably foreseeable result of the office shutdown ("plant closing") ordered and carried out by the Defendants on or about July 6, 2022.

58.    On or about July 6, 2022, Defendants ordered the termination of the Shutdown Plaintiffs' employment together with the termination of all other Shutdown Employees as part of plant closings as defined by the WARN Act, NY WARN Act, and California WARN Act, for which the terminated employees were entitled to receive 60 days' notice under the WARN Act and California WARN Act, and 90 days' notice under the NY WARN Act.

59.    Upon information and belief, at or about the time that the Shutdown Plaintiffs were discharged on or about July 6, 2022, Defendants discharged over 500 other employees without cause on the part of the employees.

60.    Upon information and belief, Defendant Strauss instructed other individuals not to issue the paychecks that were due to be sent out to all Sprout employees on July 7, 2022, and July 22, 2022.

61.    Consequently, the Plaintiffs, along with the Shutdown Employees, did not receive their paychecks on July 7, 2022, which would have paid them for their work for Corporate Defendants from June 16, 2022, through June 30, 2022.

62.     The Shutdown Plaintiffs and the Shutdown Employees also did not receive their paychecks on July 22, 2022, which would have paid them for their work from July 1, 2022, through their termination on July 6, 2022.

## FLSA COLLECTIVE ACTION ALLEGATIONS

63.     The Shutdown Plaintiffs bring their FLSA claims on behalf of themselves and all similarly situated persons who were employed by Corporate Defendants at any point from June 16, 2022, through July 6, 2022, and who did not receive minimum wages for all hours worked (the "Collective Class Members").

64.     Corporate Defendants are liable under the FLSA for, *inter alia*, failing to properly compensate the Shutdown Plaintiffs, and as such, notice should be sent to all others similarly situated. There are numerous similarly situated former employees of Corporate Defendants who have been similarly underpaid in violation of the FLSA and who would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join.

65.     The Shutdown Plaintiffs have spoken to dozens of other employees who were terminated around the country, and who have confirmed they have not been paid.

66.     Over 300 former employees of Defendants have contacted Plaintiffs' counsel expressing interest in joining the instant lawsuit.

67.     To date, approximately 120 former employees of Defendants have filed opt-in forms consenting to become collective members in this lawsuit.

68.     Multiple news articles have also reported that Corporate Defendants withheld the paychecks that were supposed to be sent out to all employees on July 7, 2022. *See*

https://nationalmortgageprofessional.com/news/sprout-mortgage-shuts-down;

https://www.housingwire.com/articles/sprout-mortgage-to-shutter/.

69.     The majority of the FLSA Collective Class members are unknown, and information regarding the precise number of Collective Class members is in the sole control of Defendants. Upon information and belief, there are at least 100 FLSA Collective Class members, and could be significantly more.

## CLASS ACTION ALLEGATIONS – ALL CLASSES

70.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation, where an individual plaintiff lacks the financial resources to vigorously prosecute a lawsuit in federal court against corporate Defendants.

71.     Defendants have acted on grounds generally applicable to the Class, thereby making relief, including declaratory and/or injunctive relief, appropriate for the Class.

72.     Concentrating all the potential litigation concerning the rights of the Class members in this Court will avoid a multiplicity of suits (and resolve the issues created by the filing of multiple lawsuits arising from the facts of this case), will conserve judicial resources and the resources of the parties and is the most efficient means of resolving the claims of all the Class members under the WARN Acts, ERISA, COBRA, FLSA, NYLL, and California Labor Code, PAGA, ICRAA, and FCRA.

73.     On information and belief, the identity of the Class members is contained in the books and records of Defendants.

74.     On information and belief, a recent residential address of each of the Class members is contained in the books and records of Defendants.

75.     On information and belief, the rate of pay and benefits, including health insurance benefits, that was being paid by Defendants to each Class member at the time of his/her termination are contained in the books and records of Defendants

## CLASS ACTION ALLEGATIONS – SHUTDOWN CLASS

76.     The Shutdown Plaintiffs sue on their own behalf and on behalf of a class and several sub-classes of persons under Fed. R. Civ. P. 23(a), (b)(3): the Nationwide Shutdown Class, New York Shutdown Class, and California Shutdown Class (collectively, the "Shutdown Class"). As noted above, the persons in the Shutdown Class are so numerous that joinder of all members is impracticable. Upon information and belief there are over 540 Class Members.

77.     There are questions of law and fact common to the Shutdown Class Members that predominate over any questions affecting only individual members, including:

a.   Whether Defendants employed and/or jointly employed Plaintiffs and putative Shutdown Class Members under New York law and California law;

b.   Whether Defendants paid Shutdown Class Members lawful wages, benefits, commissions, and reimbursements under the NYLL and California Labor Code;

c.   Whether Defendants accurately recorded and paid non-exempt employees for all working hours;

d.   Whether Defendants provided timely and complete wage statements that accurately itemized all required information, including but not limited to final wage statements;

e.   Whether Corporate Defendants discharged Shutdown Class Members without cause on their part or as the reasonably foreseeable consequence of the plant closing or mass layoff ordered by Defendants at the NY Office on or about July 6, 2022,

and whether the Shutdown Class Members are therefore "affected employees" within the meaning of the federal, New York, and California WARN Acts;

f.    Whether all Shutdown Class members enjoyed the protection of the WARN Acts;

g.    Whether Defendants violated their fiduciary duties towards Shutdown Plaintiffs under ERISA;

h.    Whether Defendants' failure to timely pay all wages owed upon termination of employment was willful;

i.    Whether Defendants violated the notice requirements of COBRA.

78. The Shutdown Plaintiffs' claims are typical of the claims of the Shutdown Class.

79.    The Shutdown Plaintiffs and their counsel will fairly and adequately protect the interests of the Shutdown Class.

80.    Shutdown Plaintiffs bring claims under the WARN Acts, FLSA, ERISA, COBRA, NYLL, and California Labor Code on behalf of themselves and all similarly situated persons ("Class Members") formerly employed by Defendants.

81.    The Shutdown Plaintiffs and each person they seek to represent herein were discharged without cause on their part or as the reasonably foreseeable consequence of the plant closing or mass layoff[3] ordered by Defendants on or about July 6, 2022, and are "affected employees" within the meaning of 29 U.S.C. § 2101 (a)(5), N.Y.L.L. § 860-a(1), and Cal. Lab. Code § 1400.

82.    The Shutdown Plaintiffs bring this action on their own behalf and, pursuant to the WARN Acts, ERISA, COBRA, the NYLL, the California Labor Code, and Rules 23(a) and (b) of

---

[3] Although Shutdown Plaintiffs were told on July 6, 2022, that Sprout was "closing its doors," suggesting the mass termination was a "Plant Closing," Plaintiffs' investigation has revealed there may still be a handful of employees who remain employed by Sprout. The exact nature of the shutdown remains known only to Defendants. Therefore, Plaintiffs alternatively allege that the closure constituted a "Mass Layoff."

the Federal Rules of Civil Procedure, on behalf of all other similarly situated former employees of Defendants who were terminated on or about July 6, 2022.

83.    The California WARN Act, Cal. Labor Code § 1400, *et seq*. requires employers at a "covered establishment" (75 or more employees) to give 60 days' notice before a mass layoff (of 50 or more employees), a relocation, or a cessation of doing business.  Employers must give notice not only to employees, but also to the relevant California government agency, the Employment Development Department.  *See* Cal. Labor Code § 1401(a).

84.    Employers are excused from providing notice of a mass layoff only if there is a "physical calamity" (such as an earthquake) or "act of war." Cal. Labor Code § 1401(c).

85.    If an employer fails to give notice of a mass layoff, relocation, or cessation of business, its employees are entitled to recover: up to 60 days of wages (at their regular rate of pay), and the value of any employment benefits that the employee would have received during that time (such as payment of medical expenses under a health insurance plan, or matching contributions to a 401(k) retirement plan). *See* Cal. Labor Code § 1402.

86.    Plaintiffs allege, upon information and belief, Defendants did not file a WARN notice with the California Employment Development Department.

87.    On or about July 6, 2022, Defendants terminated the Shutdown Plaintiffs' employment as part of a Plant Closing or Mass Layoff as defined by 29 U.S.C. § 2101(a)(2), (3); N.Y.L.L. § 860-a(6); and Cal. Lab. Code § 1400, for which they were entitled to receive sixty (60) days' advance written notice under the WARN Act and California WARN Act, and ninety (90) days' advance written notice under the NY WARN Act.

88.    Defendants failed to give Shutdown Plaintiffs the statutorily required advance written notice of the Plant Closing or Mass Layoff in violation of the WARN Acts.

89.     The need for notice to Shutdown Plaintiffs under the NY WARN Act was foreseeable on April 7, 2022, 90 days before Shutdown Plaintiffs' employment was terminated, due to industry conditions known to Defendants' executives.

90.     The need for notice to Shutdown Plaintiffs was foreseeable under the WARN Act and California WARN Act on May 7, 2022, 60 days before Shutdown Plaintiffs' employment was terminated, due to industry conditions known to Defendants' executives.

91.     The need for notice to Shutdown Plaintiffs under the WARN Acts was foreseeable by Defendants because, upon information and belief, Sprout missed payments to multiple vendors for several months prior to July 6, 2022.

92.     Upon information and belief, Sprout also failed to pay millions of dollars in payroll taxes and Strauss was in the process of working out a payment plan with the IRS prior to the July 6, 2022, shutdown.

93.     Upon information and belief, at or about the time the Shutdown Plaintiffs were discharged on or about July 6, 2022, Defendants discharged approximately 548 Similarly Situated Employees without cause on their part.

94.     Pursuant to Fed. R. Civ. P. 23 and the WARN Act, 29 U.S.C. § 2104(a)(5), the Shutdown Plaintiffs maintain this claim on behalf of themselves and each of the other Similarly Situated Employees.

95.     Each of the other Similarly Situated Employees is similarly situated to the Shutdown Plaintiffs in respect to his or her rights under the WARN Acts, the NYLL, and the California Labor Code.

96.     The Shutdown Plaintiffs and other Similarly Situated Employees were discharged by Defendants without cause on their part.

97.    The Defendants failed to pay the Shutdown Plaintiffs and other Similarly Situated Employees their respective wages, salary, commissions, bonuses, accrued holiday pay and accrued vacation for sixty (60) calendar days following their respective terminations and failed to provide employee benefits under ERISA in respect to them for sixty (60) calendar days from and after the dates of their respective terminations.

98.    At all relevant times, Defendants had the right to control, and did in fact control, the hours, hourly pay, assignments and schedules of the named Shutdown Plaintiffs and all Similarly Situated Employees.

99.    As described above, Defendants failed to pay the Shutdown Plaintiffs and Class Members minimum wages, as required by law, when they failed to pay Plaintiffs any wages at all for work performed during the period of June 16, 2022, through July 6, 2022.

100.    Corporate Defendants and Strauss also violated their fiduciary duty under ERISA by continuing to make routine deductions for health insurance premiums from employees' paychecks while failing to pay the company's insurance carrier for coverage, then ordering the termination of employees' coverage retroactive to May 1, 2022.

101.    Corporate Defendants and Strauss further violated their fiduciary duty under ERISA, 29 U.S.C. § 1132(c)(1), by failing to comply with the notice requirements of COBRA, 29 U.S.C. § 1166(a).

## CLASS ACTION ALLEGATIONS – CALIFORNIA LABOR CLASS

The California Labor Class Plaintiffs sue on their own behalf and on behalf of a class of persons under Fed. R. Civ. P. 23(a), (b)(3), the "California Labor Class." As noted above, the persons in the California Labor Class are so numerous that joinder of all members is impracticable. Upon information and belief there are at least 460 Class Members.

A.    **Unreimbursed Business Expenses**

102.    Defendant as a matter of corporate policy, practice, and procedure, intentionally, knowingly, and systematically failed to reimburse and indemnify the California Labor Class Members for required business expenses incurred by the California Labor Class Members in direct consequence of discharging their duties on behalf of Defendant.

103.    Under California Labor Code Section 2802, employers are required to indemnify employees for all expenses incurred in the course and scope of their employment. Cal. Lab. Code § 2802 expressly states that "an employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful."

104.    In the course of their employment, Defendant required California Labor Class Members to use their personal cell phones as a result of and in furtherance of their job duties. Specifically, California Labor Class Members were required to use their personal cell phones and personal home internet in order to perform work related tasks.

105.    Further, California Labor Class Members were also required to incur personal expenses for travel, meals, and payments to various business vendors on behalf of and in furtherance of their job duties for Defendant.

106.    However, Defendant unlawfully failed to reimburse California Labor Class Members for the use of their personal cell phones, personal home internet, and personal expenses for travel, meals and payments to various business vendors. As a result, in the course of their employment with Defendant, the California Labor Class Members incurred unreimbursed business expenses that included, but were not limited to, costs related to the use of their personal cell phones,

personal home internet, and personal expenses for travel, meals and payments to various business vendors, all on behalf of and for the benefit of Defendant.

**B. Unlawful Deductions**

107.   Defendant, from time-to-time unlawfully deducted wages from certain California Labor Class Members' pay without explanations and without authorization to do so or notice to California Labor Class Members.  Such unlawful deductions include, but are not limited to, health insurance premiums despite Defendant failing to provide health coverage to the California Labor Class Members since May 1, 2022.  Further, Defendant from time to time unlawfully deducted wages from California Labor Class Members' pay for life insurance premiums, short and/or long term disability insurance premiums, and 401(k) contributions despite failing to ensure those deductions were properly allocated to said life insurance, short and/or long term disability insurance, and 401(k) policies. As a result, Defendant violated Labor Code § 221.

108.   Specifically, as to certain California Labor Plaintiffs, Defendant unlawfully deducted wages for health insurance premiums despite failing to provide health insurance coverage from May 1, 2022 until the shutdown of Sprout Mortgage on July 6, 2022.

109.   Defendant also failed to reimburse Plaintiffs for required business expenses related to the personal expenses incurred for the use of their personal cell phones, personal home internet, and personal computers, on behalf of and in furtherance of their employment with Defendant.

110.   To date, Defendant has not fully paid Plaintiffs all compensation still owed to them or any penalty wages owed to them under Cal. Lab. Code § 203.

**C. Failure to Pay Vested, Unused Vacation Wages**

111.   Further, upon California Labor Class Members' separation of employment, they had not used all of their vested vacation and thus their unused, vested vacation was required to

have been paid at their final rate upon separation of employment. Defendant, however failed to pay the vested vacation time, and when it did, it paid it at the wrong rate. As a result, Defendant violated Labor Code §227.3.

### D. Violations of FCRA and ICRAA

112.    For at least five years prior to the filing of this action and through to the present, Defendants unlawfully conducted credit and/or background checks of job applicants including the California Labor Class Members in violation of federal and state law.

113.    Defendants willfully violated the Fair Credit Reporting Act ("FCRA") and California Investigative Consumer Reporting Agencies Act ("ICRAA") by not providing a disclosure and authorization that was in a stand-alone document and with a notice that was clear and conspicuous prior to conducting a background check.

114.    This action seeks recovery of statutory damages and penalties, penalties under California Private Attorneys General Act of 2004 ("PAGA"), and punitive damages on behalf of Plaintiff and the Class for the maximum period allowed.

### SHUTDOWN CLASS INDIVIDUAL FACTUAL ALLEGATIONS

115.    Plaintiff Nathaniel Agudelo worked for Defendants as a Closing Disclosure Specialist from approximately November 1, 2020, until he was terminated without cause on July 6, 2022.

116.    Plaintiff Helen Owens worked for Defendants as a Closing Disclosure Specialist from approximately December 1, 2020, until she was terminated without cause on July 6, 2022.

117.    Plaintiff Holly Keith worked for Defendants as Senior Vice President of Secondary Due Diligence from approximately April 1, 2021, until she was terminated without cause on July 6, 2022.

118.    Plaintiff Amanda Cooper worked for Defendants as Vice President of Credit from approximately March 2020 until she was terminated without cause on July 6, 2022.

119.    Plaintiff Blake Boyer was employed by Defendant as Vice President of Marketing from August of 2021 to July 6, 2022.

120.    Plaintiff Lori Steward was employed by Defendant as an Account Manager from June of 2020 to July 6, 2022.

121.    Plaintiff Mike Shirdel was employed by Defendant as a Digital Marketing Manager from June of 2019 to July 6, 2022.

122.    Plaintiff Sawyer worked for Defendants from approximately October 2021 until July 2022. During his employment, he held the positions of Branch Manager and Vice President of Distributive Retail.

123.    Plaintiff Harvey worked for Defendants as a Senior Mortgage Loan Officer from approximately March 2022 until July 2022.

124.    On the afternoon of July 6, 2022, all employees of Defendants received an invitation to a videoconference.

125.    Upon information and belief, over 300 employees, at least one-third of which were employed through the NY Office, joined the videoconference. *See* https://nationalmortgageprofessional.com/news/sprout-mortgage-faucet-just-got-turned.

126.    When the employees joined the videoconference, they were told by Shea Pallante who was at all relevant times the President of Sprout Mortgage, that the company would be shut down, everyone's employment was terminated immediately, and they should not return to work tomorrow.

127.    Pallante indicated that employees' health benefits would continue through the end of the month, but upon information and belief refused to confirm whether employees would receive their paychecks the next day.

128.    Employees did not receive their paychecks as scheduled on July 7, 2022, and have not received them to date.

129.    The paychecks due to be distributed on July 7, 2022, would have covered the pay period of June 16, 2022, through June 30, 2022.

130.    Many employees also worked during the period from July 1, 2022, through July 6, 2022, and are owed all of their wages for their work during that time period.

131.    Moreover, in the weeks following the videoconference, numerous employees, including Plaintiffs, learned that their health insurance premiums had not been paid by the company in months.

132.    When Plaintiff Holly Keith called her insurance carrier, she was informed that Sprout had requested that employees' health insurance coverage be terminated retroactive to May 1, 2022.

133.    Employees of Sprout had payments deducted from their paychecks for health insurance throughout the months of May and June, creating the material misrepresentation that the employees continued to have health coverage through their employer.

134.    Upon information and belief, Individual Defendant Strauss instructed Sprout employees to instruct the insurance carrier to retroactively terminate the coverage.

135.    Plaintiff Holly Keith underwent medical procedures in or about May 2022 for which she now owes over **$50,000** due to the retroactive cancelation of her coverage.

136.     Upon information and belief, numerous other employees are now receiving bills for medical procedures they believed were covered by their health insurance, due to the company's retroactive termination of their benefits.

137.     For some employees, these bills are financially catastrophic. Upon information and belief, at least two employees were undergoing cancer treatment and have discovered they had no health insurance to cover exorbitantly expensive medical procedures undergone in May, June, and/or July 2022.

138.     Upon information and belief, Corporate Defendants and Strauss failed to provide notice to any employee of their right to continued health insurance coverage under COBRA.

### FIRST CAUSE OF ACTION: FLSA MINIMUM WAGE
### Alleged by Shutdown Plaintiffs against All Defendants

139.     Plaintiffs allege and incorporate by reference the allegations contained in all preceding paragraphs.

140.     Defendants have engaged in a widespread pattern and practice of violating the FLSA, as detailed in this Complaint.

141.     Plaintiffs consent to be parties to this action, pursuant to 29 U.S.C § 216(b).

142.     At all times relevant to this action, Plaintiffs and Class Members were employed by Defendants within the meaning of the FLSA, 29 U.S.C. § 203(d).

143.     At all times relevant to this action, Plaintiffs and Class Members were engaged in commerce and the Corporate Defendants were enterprises engaged in commerce within the meaning of 29 U.S.C. § § 206(A) and 207(a).

144.     Defendants violated the rights of Shutdown Plaintiffs and Class Members by failing to pay them the minimum wage for each hour worked in each discrete work week, in violation of the FLSA, 29 U.S.C § 206(a)(1).

145.    Defendants' failure to pay Shutdown Plaintiffs and Class Members the minimum wage was willful within the meaning of the FLSA, 29 U.S.C. § 255.

146.    Defendants are liable to Shutdown Plaintiffs and Class Members for their unpaid minimum wages, plus an additional equal amount as liquidated damages, reasonable attorney's fees and costs, and any other appropriate relief pursuant to 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION: NYLL MINIMUM WAGE
### Alleged by New York Shutdown Plaintiffs Against all Defendants

147.    Plaintiffs allege and incorporate by reference the allegations contained in the preceding paragraphs.

148.    Defendants violated the rights of New York Shutdown Plaintiffs and Class Members by failing to pay them the minimum wage for each hour worked in violation of the NYLL.

149.    At all times relevant to this action, Plaintiffs and Class Members were employed by Defendants within the meaning of the NYLL.

150.    As a result of Defendants' violation of the NYLL, Plaintiff and Class Members are entitled to the minimum rate of pay that they were legally due under the NYLL's minimum wage provisions as well as liquidated damages, interest, attorney's fees.

## THIRD CAUSE OF ACTION: UNLAWFUL WITHHOLDING OF WAGES UNDER NYLL § 193
### Alleged by New York Shutdown Plaintiffs Against all Defendants

151.    Plaintiffs allege and incorporate by reference the allegations contained in the preceding paragraphs.

152.    Defendants violated the rights of Plaintiffs and Class Members by unlawfully withholding their regular wages in violation of the NYLL.

153.    At all times relevant to this action, Plaintiffs and Class Members were employed by Defendants within the meaning of the NYLL.

154.    As a result of Defendants' violation of the NYLL, Plaintiff and Class Members are entitled to recover their withheld wages as well as liquidated damages, interest, attorney's fees.

## FOURTH CAUSE OF ACTION: FEDERAL WARN ACT
### Alleged by Shutdown Plaintiffs against Corporate Defendants

155.    Plaintiffs allege and incorporate by reference the allegations contained in the preceding paragraphs.

156.    At all relevant times, Corporate Defendants employed more than 100 employees who in the aggregate worked at least 4,000 hours per week exclusive of hours of overtime within the United States.

157.    At all relevant times, each Corporate Defendant was an "employer" as that term is defined in 29 U.S.C. § 2101(a)(1), 20 C.F.R. § 639(a) and continued to operate as a business until it ordered a plant closing or mass layoff at the NY Office.

158.    The Corporate Defendants constituted a "single employer" of the Plaintiffs and Class members under the WARN Act.

159.    On or about July 6, 2022, the Corporate Defendants as a single employer ordered a Plant Closing or Mass Layoff.

160.    The Plant Closing or Mass Layoff resulted in "employment losses," as that term is defined by 29 U.S.C. § 2101(a)(2), (3), for at least fifty (50) of Defendants' employees at the NY Office as well as at least 33% of Defendants' workforce at the NY Office, excluding "part-time employees," as that term is defined by the WARN Act, 29 U.S.C. § 2101(a)(8).

161.    The Shutdown Plaintiffs and each of the other members of the Shutdown Class were discharged by Defendants without cause on their part, as part of or as the reasonably foreseeable result of the Plant Closing or Mass Layoff ordered by Defendants at the NY Office.

162.    The Shutdown Plaintiffs and each of the other members of the Shutdown Class are "affected employees" of Defendants within the meaning of 29 U.S.C. § 2101(a)(5).

163.    The Defendants were required by the WARN Act to give the Shutdown Plaintiffs and each of the other members of the Class at least 60 days' advance written notice of their termination.

164.    The Defendants failed to give the Shutdown Plaintiffs and other members of the Class written notice that complied with the requirements of the WARN Act.

165.    Each Shutdown Plaintiff, and each of the other members of the Class, are an "aggrieved employee" of the Defendants as that term is defined in 29 U.S.C. § 2104(a)(7).

166.    The Defendants failed to pay the Shutdown Plaintiffs and each of the other members of the Class their respective wages, salary, commissions, bonuses, accrued holiday pay and accrued vacation for 60 days following their respective terminations and failed to provide employee benefits under ERISA, for 60 days from and after the dates of their respective terminations.

## FIFTH CAUSE OF ACTION: NY WARN ACT
### Alleged by New York Shutdown Plaintiffs against Corporate Defendants

167.    Plaintiffs allege and incorporate by reference the allegations contained in all preceding paragraphs.

168.    At all relevant times, Corporate Defendants employed more than 50 full-time employees.

169.    At all relevant times, each Corporate Defendant was an "employer" as that term is defined in NYLL § 860-a(3) and continued to operate as a business until it ordered a plant closing and terminations at the NY Office.

170.    On or about July 6, 2022, the Corporate Defendants as a single employer ordered a "Mass Layoff" or "Plant Closing" of the NY Office as defined under NYLL § 860-a(4), (6).

171.    The Mass Layoff or Plant Closing resulted in "employment losses," as that term is defined by NYLL § 860-a(2) for at least twenty five (25) of Defendants' employees at the NY Office as well as at least 33% of Defendants' workforce at the NY Office, excluding "part-time employees," as that term is defined by the NY WARN Act, NYLL § 860-a(5).

172.    The New York Shutdown Plaintiffs and each of the other members of the Class were discharged by Defendants without cause on their part, as part of or as the reasonably foreseeable result of the Mass Layoff Plant Closing ordered by Defendants at the NY Office.

173.    The Defendants were required by the NY WARN Act to give the New York Shutdown Plaintiffs and each of the other members of the Class at least 90 days' advance written notice of their termination.

174.    The Defendants failed to give the New York Shutdown Plaintiffs and other members of the Class written notice that complied with the requirements of the NY WARN Act.

175.    Each New York Shutdown Plaintiff, and each of the other members of the Class, are an "affected employee" of the Defendants as that term is defined in NYLL § 860-a(1)

176.    The Defendants failed to pay the New York Shutdown Plaintiffs and each of the other members of the Class their respective wages, salary, commissions, bonuses, accrued holiday pay and accrued vacation for 60 days following their respective terminations and failed to provide

employee benefits under ERISA, for 60 days from and after the dates of their respective terminations.

**SIXTH CAUSE OF ACTION: VIOLATION OF ERISA FIDUCIARY DUTY UNDER  29 U.S.C. § 1132(a)(3)**
**Alleged by Shutdown Plaintiffs against Corporate Defendants and Individual Defendant Strauss**

177.    Plaintiffs allege and incorporate by reference the allegations contained in all preceding paragraphs.

178.    Corporate Defendants and Individual Defendant Strauss were fiduciaries with respect to employees' health insurance plans as defined in 29 U.S.C. § 1002(21)(A).

179.    Corporate Defendants and Individual Defendant Strauss deducted payments for health insurance premiums from employees' paychecks throughout May and June 2022, causing employees to believe their medical expenses would be covered under the plan.

180.    Despite deducting payments from employees' paychecks, Corporate Defendants and Individual Defendant Strauss failed to pay the premiums required to continue employees' insurance coverage.

181.    In or about July 2022, Corporate Defendants and Individual Defendant Strauss instructed the companies' health insurance carrier to cancel health insurance coverage retroactively to May 1, 2022.

182.    The actions of Corporate Defendants and Individual Defendant Strauss violated their duty of care and loyalty as fiduciaries to act in the interest of plan participants and beneficiaries pursuant to 29 U.S.C. § 1104(a)(1).

183.    Therefore, Shutdown Plaintiffs are entitled to relief pursuant to 29 U.S.C. § 1132(a)(3), placing them in the position they would have been in if Corporate Defendants and Individual Defendant Strauss had not breached their fiduciary duties.

**SEVENTH CAUSE OF ACTION: VIOLATION OF ERISA FIDUCIARY DUTY
UNDER 29 U.S.C. § 1132 (c)(1)
Alleged by Shutdown Plaintiffs against Corporate Defendants and Individual
Defendant Strauss**

184.     Plaintiffs allege and incorporate by reference the allegations contained in all

preceding paragraphs.

185.     Corporate Defendants and Individual Defendant Strauss were fiduciaries with

respect to employees' health insurance plans as defined in 29 U.S.C. § 1002(21)(A).

186.     Corporate Defendants and Individual Defendant Strauss violated their fiduciary

duties under ERISA, 29 U.S.C. § 1132(c)(1), by failing to comply with the notice

requirements of COBRA, 29 U.S.C. § 1166(a).

187.     The actions of Corporate Defendants and Individual Defendant Strauss violated

their duty of care and loyalty as fiduciaries to act in the interest of plan participants and

beneficiaries pursuant to 29 U.S.C. § 1104(a)(1).

188.     Therefore, Shutdown Plaintiffs are entitled to relief pursuant to 29 U.S.C. §

1132(c)(1), placing them in the position they would have been in if Corporate Defendants

and Individual Defendant Strauss had not breached their fiduciary duties.

**EIGHTH CAUSE OF ACTION
VIOLATION OF CALIFORNIA WARN ACT, CAL. LAB. CODE § 1400 *et seq.*
Alleged by California Shutdown Plaintiffs against all Defendants**

189.     Plaintiffs allege and incorporate by reference the allegations contained in all

preceding paragraphs.

190.     Defendants are an "employer" that operates a "covered establishment" under the

California WARN Act, Cal. Labor Code § 1400 *et seq.*, because Defendants ran a business

enterprise that employed 75 or more employees.

191.     Defendants engaged in a "mass layoff" by terminating 50 or more employees within a 30-day period.

192.     None of the exemptions to the notice requirements of the California WARN Act applies.

193.     Defendants willfully violated the California WARN Act by failing to provide the required notice.

194.     California Shutdown Plaintiffs and all California Shutdown Class Members have been damaged by Defendants' conduct constituting violations of the California WARN Act and are entitled to damages for their back pay and associated benefits for each day of the violation.

195.     Defendants have not acted in good faith nor with reasonable grounds to believe their acts or omissions were not in violation of the California WARN Act.

**NINTH CAUSE OF ACTION**
**Unlawful Business Practices (Cal. Bus. And Prof. Code §§ 17200, *et seq.*)**
**Alleged by California Labor Class Plaintiffs against all Defendants**

196.     Plaintiffs allege and incorporate by reference the allegations contained in all preceding paragraphs.

197.     Each of the Defendants is a "person" as that term is defined under Cal. Bus. And Prof. Code § 17021.

198.     California Business & Professions Code §§ 17200, *et seq.* (the "UCL") defines unfair competition as any unlawful, unfair, or fraudulent business act or practice. Section 17203 authorizes injunctive, declaratory, and/or other equitable relief with respect to unfair competition as follows:

> Any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction. The court may make such orders or judgments, including the appointment of a receiver, as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition, as defined in this chapter, or as may be necessary to restore to any person in interest any

money or property, real or personal, which may have been acquired by means of such unfair competition. (Cal. Bus. & Prof. Code § 17203).

199.    By the conduct alleged herein, Defendants have engaged and continue to engage in a business practice which violates California law, including but not limited to, the applicable Wage Order(s), the California Code of Regulations and the California Labor Code including Sections 201, 202, 203, 221, 227.3, 1400 *et seq.*, and 2802, for which this Court should issue declaratory and other equitable relief pursuant to Cal. Bus. & Prof. Code § 17203 as may be necessary to prevent and remedy the conduct held to constitute unfair competition, including restitution of wages wrongfully withheld.

200.    By the conduct alleged herein, Defendants' practices were unlawful and unfair in that these practices violated public policy, were immoral, unethical, oppressive unscrupulous or substantially injurious to employees, and were without valid justification or utility for which this Court should issue equitable and injunctive relief pursuant to Section 17203 of the California Business & Professions Code, including restitution of wages wrongfully withheld.

201.    Therefore, Plaintiffs demand on behalf of themselves and on behalf of each California Labor Class member, (1) all back pay and associated benefits for each day of the California WARN Act violation, (2) all unlawfully deducted wages, (3) all vested, but unused vacation pay, and (4) all unreimbursed business expenses.

202.    By and through the unlawful and unfair business practices described herein, Defendants have obtained valuable property, money and services from California Labor Plaintiffs and the other members of the California Labor Class, including earned wages for all time worked, and has deprived them of valuable rights and benefits guaranteed by law and contract, all to the detriment of these employees and to the benefit of Defendants so as to allow Defendants to unfairly compete against competitors who comply with the law.

203.    All the acts described herein as violations of, among other things, the Industrial Welfare Commission Wage Orders, the California Code of Regulations, and the California Labor Code, were unlawful and in violation of public policy, were immoral, unethical, oppressive, and unscrupulous, were deceptive, and thereby constitute unlawful, unfair, and deceptive business practices in violation of Cal. Bus. & Prof. Code §§ 17200, *et seq.*

204.    California Labor Plaintiffs and the other members of the California Labor Class are entitled to, and do, seek such relief as may be necessary to restore to them the money and property which Defendants have acquired, or of which the California Labor Plaintiffs and the other members of the California Labor Class have been deprived, by means of the above described unlawful and unfair business practices, including earned but unpaid wages for all time worked.

205.    Plaintiffs and the other members of the California Labor Class are further entitled to, and do, seek a declaration that the described business practices are unlawful, unfair, and deceptive, and that injunctive relief should be issued restraining Defendants from engaging in any unlawful and unfair business practices in the future.

206.    Plaintiffs and the other members of the California Labor Class have no plain, speedy and/or adequate remedy at law that will end the unlawful and unfair business practices of Defendants. Further, the practices herein alleged presently continue to occur unabated. As a result of the unlawful and unfair business practices described herein, Plaintiffs and the other members of the California Labor Class have suffered and will continue to suffer irreparable legal and economic harm unless Defendants are restrained from continuing to engage in these unlawful and unfair business practices.

### TENTH CAUSE OF ACTION
### Unlawful Deductions from PLAINTIFFS' and CLASS MEMBERS' Paychecks (Cal. Labor Code §§ 221 and 223)
### Alleged by California Labor Plaintiffs Against all Defendants

207.    Plaintiffs allege and incorporate by reference the allegations contained in all preceding paragraphs.

208.    During the Class Period, Defendants regularly and consistently maintained corporate policies and procedures designed to reduce labor costs by reducing or minimizing the amount of compensation paid to its employees, especially overtime compensation.

209.    Defendants made deductions from California Labor Plaintiffs' and the other California Labor Class Members' paychecks including but limited to amounts for health insurance earned by Plaintiffs and the other Class Members during various pay periods.  Further, such unlawful deductions include, but are not limited to, health insurance premiums despite Defendants failing to provide health coverage to Plaintiffs and the California Labor Class Members since May 1, 2022.  Further, Defendants from time to time unlawfully deducted wages from Plaintiffs' and California Labor Class Members' pay for life insurance premiums, short and/or long term disability insurance premiums, and 401(k) contributions despite failing to ensure those deductions were properly allocated to said life insurance, short and/or long term disability insurance, and 401(k) policies.

210.    Cal. Lab. Code § 221 provides it is unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by employer to employee.

211.    Cal. Lab. Code § 223 provides that where any statute or contract requires an employer to maintain the designated wage scale, it shall be unlawful to secretly pay a lower wage while purporting to pay the wage designated by statute or by contract. Cal. Lab. Code section 225 further provides that the violation of any provision of Cal. Lab. Code §§ 221 and 223 is a misdemeanor.

212.    As a result of the conduct alleged above, Defendants unlawfully collected or

received from California Labor Plaintiffs' and the other California Labor Class Members' part of the wages paid to their employees.

213.    Wherefore, California Labor Plaintiffs and the other California Labor Class Members demand the return of all wages unlawfully deducted from the paychecks, including interest thereon, penalties, reasonable attorneys' fees, and costs of suit pursuant to Labor Code §§ 225.5 and 1194.

### ELEVENTH CAUSE OF ACTION
### Failure To Reimburse or Indemnify Employees for Required Expenses
### (Cal. Lab. Code § 2802)
### Alleged by California Labor Plaintiffs against all Defendants

214.    Plaintiffs allege and incorporate by reference the allegations contained in all preceding paragraphs.

215.    Cal. Lab. Code § 2802 provides, in relevant part, that:

An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful.

216.    From time to time during the Class Period, Defendant violated Cal. Lab. Code § 2802, by failing to indemnify and reimburse California Labor Plaintiffs and the California Labor Class members for required expenses incurred in the discharge of their job duties for Defendant's benefit. Defendant failed to reimburse California Labor Plaintiffs and the California Labor Class members for expenses which included, but were not limited to, personal expenses incurred for the use of personal cell phones, personal home internet, and personal computers all on behalf of and for the benefit of Defendant.

217.    Specifically, Plaintiffs and other California Labor Class Members were required by Defendant to use their own personal cell phones and personal home internet to execute their essential job duties on behalf of Defendants.

218.    Further, Plaintiffs and other California Labor Class Members were also required to incur personal expenses for travel, meals, and payments to various business vendors on behalf of and in furtherance of their job duties for Defendants.

219.    Defendants' uniform policy, practice and procedure was to not reimburse Plaintiffs and the California Labor Class members for expenses resulting from the use of personal cell phones, personal home internet, and personal expenses for travel, meals, and payments to various business vendors for Defendants within the course and scope of their employment for Defendants. These expenses were necessary to complete their principal job duties.

220.    Defendants are estopped by Defendants' conduct to assert any waiver of this expectation.

221.    Although these expenses were necessary expenses incurred by California Labor Plaintiffs and the California Labor Class members, Defendants failed to indemnify and reimburse California Labor Plaintiffs and the California Labor Class members for these expenses as an employer is required to do under the laws and regulations of California.

222.    California Labor Plaintiffs therefore demand reimbursement for expenditures or losses incurred by them and the California Labor Class members in the discharge of their job duties for Defendants, or their obedience to the directions of Defendants, with interest at the statutory rate and costs under Cal. Lab. Code § 2802.

## TWELFTH CAUSE OF ACTION
### Failure To Pay Wages When Due (Cal. Lab. Code §§ 201, 202, 203)
### Alleged by California Shutdown Plaintiffs against all Defendants

223.    California Shutdown Plaintiffs allege and incorporate by reference the allegations contained in all preceding paragraphs.

224.    Cal. Lab. Code § 200 provides that:

As used in this article:

(d)    "Wages" includes all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, Commission basis, or other method of calculation."

(e)    "Labor" includes labor, work, or service whether rendered or performed under contract, subcontract, partnership, station plan, or other agreement if the to be paid for is performed personally by the person demanding payment.

225.    Cal. Lab. Code § 201 provides, in relevant part, that "If an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately."

226.    Cal. Lab. Code § 202 provides, in relevant part, that:

If an employee not having a written contract for a definite period quits his or her employment, his or her wages shall become due and payable not later than 72 hours thereafter, unless the employee has given 72 hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting. Notwithstanding any other provision of law, an employee who quits without providing a 72-hour notice shall be entitled to receive payment by mail if he or she so requests and designates a mailing address. The date of the mailing shall constitute the date of payment for purposes of the requirement to provide payment within 72 hours of the notice of quitting.

227.    There was no definite term in California Shutdown Plaintiffs' or any California Shutdown Class Members' employment contract.

228.    Cal. Lab. Code § 203 provides:

If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.5, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days.

229.    The employment of California Shutdown Plaintiffs and many California Shutdown Class Members terminated, and Defendants have not tendered payment of wages to these employees, as required by law.

230.    Therefore, as provided by Cal Lab. Code § 203, on behalf of themselves and the members of the California Shutdown Class, California Shutdown Plaintiffs demand up to thirty (30) days of pay as penalty for not paying all wages due at time of termination for all employees who terminated employment during the Class Period and demand an accounting and payment of all wages due, plus interest and statutory costs as allowed by law.

## THIRTEENTH CAUSE OF ACTION
### For Failure to Pay Vacation Wages
### Alleged by California Labor Class Members Against all Defendants

231.    Plaintiffs allege and incorporate by reference the allegations contained in all preceding paragraphs.

232.    At all relevant times, California Labor Code §227.3 provides for the following:

Unless otherwise Unless otherwise provided by a collective-bargaining agreement, whenever a contract of employment or employer policy provides for paid vacations, and an employee is terminated without having taken off his vested vacation time, all vested vacation shall be paid to him as wages at his final rate in accordance with such contract of employment or employer policy respecting eligibility or time served; provided, however, that an employment contract or employer policy shall not provide for forfeiture of vested vacation time upon termination.  The Labor Commissioner or a designated representative, in the resolution of any dispute with regard to vested vacation time, shall apply the principles of equity and fairness.

233.    At all times relevant, California Labor Class Plaintiffs and, upon information and belief, and California Labor Class Members were subject to an employer policy and/or contract of employment that provided for paid vacations not otherwise provided by a collective-bargaining agreement.  Upon California Labor Plaintiffs' and California Labor Class Members' separation of employment, they had not used all of their vested vacation and thus their unused, vested vacation

was required to have been paid at their final rate upon separation of employment. As a result of the miscalculation, Defendants violated Labor Code §227.3.

234.    California Labor Plaintiffs seek, on behalf of themselves and the California Labor Class, all damages and remedies available under California Labor Code §227.3, including payment of the vacation wages at the final rate.

### FOURTEENTH CAUSE OF ACTION
### Private Attorneys General Act
### Alleged by California Labor Class Plaintiffs Against Defendants

235.    Plaintiffs allege and incorporate by reference the allegations contained in all preceding paragraphs.

236.    PAGA is a mechanism by which the State of California itself can enforce state labor laws through the employee suing under the PAGA as the proxy or agent of the state's labor law enforcement agencies. An action to recover civil penalties under PAGA is fundamentally a law enforcement action designed to protect the public and not to benefit private parties. The purpose of the PAGA is not to recover damages or restitution, but to create a means of "deputizing" citizens as private attorneys general to enforce the Labor Code. In enacting PAGA, the California Legislature specified that "it was... in the public interest to allow aggrieved employees, acting as private attorneys general to recover civil penalties for Labor Code violation..." (Stats. 2003, ch. 906, § 1).  Accordingly, PAGA claims cannot be subject to arbitration.

237.    California Labor Plaintiffs, and such persons that may be added from time to time who satisfy the requirements and exhaust the administrative procedures under the Private Attorney General Act, bring this Representative Action on behalf of the State of California with respect to themselves and all individuals who are or previously were employed by Defendants and classified as non-exempt employees in California during the time period of July 22, 2021 until the present (the "Aggrieved Employees").

238.    On July 22, 2022, Plaintiff Boyer gave written notice by certified mail to the Labor and Workforce Development Agency (the "Agency") and the employer of the specific provisions of this code alleged to have been violated as required by Labor Code § 2699.3 The statutory waiting period for Plaintiff to add these allegations to the Second Amended Complaint has expired.  As a result, pursuant to Section 2699.3, Plaintiff may now commence a representative civil action under PAGA pursuant to Section 2699 as the proxy of the State of California with respect to all Aggrieved Employees as herein defined.

239.    The policies, acts and practices heretofore described were and are an unlawful business act or practice because Defendants (a) failed to properly record and pay Plaintiffs and the other Aggrieved Employees for all of the hours they worked, including overtime hours in violation of the Wage Order, (b) failed to provide accurate itemized wage statements, (c) failed to provide mandatory meal breaks and rest breaks, (d) failed to pay meal and rest break premiums, and (e) failed to timely pay wages at the correct rate, all in violation of the applicable Labor Code sections listed in Labor Code §2699.5, including but not limited to Labor Code §§ 201, 201.3, 202, 203, 204, 210, 218.5, 218.6, 221, 223, 225, 225.5,  226, 226.2, 226.3, 226.7, 246, 510, 512, 558, 1174(d), 1174.5, 1194, 1197, 1197.1, 1197.14, 1198, 1199, 2802, 2804, and the applicable Industrial Wage Order(s), and thereby gives rise to statutory penalties as a result of such conduct. Plaintiffs hereby seek recovery of civil penalties as prescribed by the Labor Code Private Attorney General Act of 2004 as the representative of the State of California for the illegal conduct perpetrated on Plaintiffs and the other Aggrieved Employees.

**FIFTEENTH CAUSE OF ACTION**
**Failure To Pay California Minimum Wage**
**Alleged by California Labor Plaintiffs Against all Defendants**

240.    Plaintiffs allege and incorporate by reference the allegations contained in all preceding paragraphs.

241.    Labor Code sections 1182.12, 1194, and 1197 require employers to pay at least the legal minimum wage for all hours worked by employees in California.

242.    Defendants failed to pay Plaintiffs and other employees at least the required legal minimum wage for all hours worked.

243.    Specifically, but without limitation, Defendants failed to pay Plaintiffs and other employees any wages for hours worked between June 15, 2022, and July 6, 2022. Defendants also failed to pay the California Labor Plaintiffs and other employees they classified as non-exempt any wages for hours worked over 8 in a day or 40 in a week, including for the time they spent logging into the timekeeping system, working during what should have been an off-duty meal period, and for other off-the-clock work. Harvey regularly worked over 8 hours in a day, but he was not paid wages for such work. As a result, Defendants did not pay Plaintiffs and other employees at least minimum wage for all hours worked.

244.    Plaintiffs and other employees were deprived of the legal minimum wage they were owed as a direct result of Defendants' unlawful actions. Defendants violated Labor Code sections 1182.12, 1194, and 1197, and, under Labor Code sections 1194 and 1194.2, Plaintiffs and similarly situated employees are entitled to recover the unpaid legal minimum wage for all hours worked, liquidated damages, interest, costs, and reasonable attorneys' fees. The Individual Defendants are personally liable for such amounts under Sections 558, 558.1, and/or 1197.1.

**FIFTEENTH CAUSE OF ACTION**
**Failure To Pay Overtime Wages**
**Alleged by California Labor Plaintiffs Against Defendants**

245.    Plaintiffs allege and incorporate by reference the allegations contained in all preceding paragraphs.

246.    Labor Code section 510 requires employers to compensate all employees at least 1.5 times their regular hourly rate for all hours worked over 8 hours in a day and over 40 hours in a week, and two times their regular hourly rate for all hours worked over 12 hours in a day or over 8 hours on the seventh day of the week.

247.    California Labor Plaintiffs and other employees worked over 8 hours in a day and 40 hours in a week, but Defendants failed to pay California Labor Plaintiffs and other employees overtime wages for all hours worked over 8 in a day and 40 in a week. Specifically, but without limitation, Defendants failed to pay California Labor Plaintiffs and other employees any wages for overtime hours that they worked between June 15, 2022, and July 6, 2022. And Defendants failed to pay the California Labor Plaintiffs and other employees they classified as non-exempt any wages for hours worked over 8 in a day or 40 in a week, including for the time employees spent logging into the timekeeping system, working during what should have been an off-duty meal period, and for other off-the-clock work.

248.    Plaintiff Harvey regularly worked over 8 hours in a day, but he was not paid overtime wages for such overtime work. To the extent Harvey's time records showed more than 8 hours of work in a day, his wage statements did not reflect such hours of work or overtime pay. As a result, California Labor Plaintiffs and other employees were not paid at least the minimum overtime wage for all hours worked over 8 in a day and 40 in a week.

249.    California Labor Plaintiffs and other employees were deprived of overtime wages for all hours worked as a result of Defendants' unlawful actions. Defendants have violated Cal. Lab. Code sections 510 and 1197, and California Labor Plaintiffs and similarly situated employees

are entitled to recover unpaid overtime wages for all overtime hours worked, interest, costs, and reasonable attorneys' fees. The Individual Defendants are personally liable for such amounts under Sections 558, 558.1, and/or 1197.1.

## SIXTEENTH CAUSE OF ACTION
### Failure To Provide Compliant Meal Periods Or Pay Premium Wages
### Alleged by California Labor Plaintiffs Against all Defendants

250.    Plaintiffs allege and incorporate by reference the allegations contained in all preceding paragraphs.

251.    Labor Code section 512 requires employers to provide non-exempt employees an off-duty, uninterrupted 30-minute meal period if the employee works more than five hours in a day, and a second off-duty, uninterrupted 30-minute meal period if the employee works more than 10 hours in a day. These meal periods must be free of all work duties.

252.    Defendants failed to provide timely, off-duty, uninterrupted 30-minute meal periods to Harvey and other employees it classified as non-exempt, and failed to compensate them for one additional hour of pay at their regular hourly rate for each meal period that was not provided or was missed, shortened, interrupted, on-duty, or untimely. Harvey regularly performed work during what should have been an off-duty meal period, but Defendants did not ask or require him to report noncompliant meal periods and did not pay him premium wages for noncompliant meal periods.

253.    Defendants violated Labor Code sections 512 and 226.7, and Harvey and similarly situated employees that were classified as non-exempt are entitled to recover premium wages in the amount of one additional hour of pay at their regular rates of pay for each violation, as well as costs and reasonable attorneys' fees. The Individual Defendants are personally liable for such amounts under Sections 558, 558.1, and/or 1197.1.

## SEVENTEENTH CAUSE OF ACTION

**Failure To Provide Compliant Rest Breaks Or Pay Premium Wages**
**Alleged by California Labor Plaintiffs Against all Defendants**

254.    Plaintiffs allege and incorporate by reference the allegations contained in all preceding paragraphs.

255.    Cal. Lab. Code section 226.7 requires employers to provide non-exempt employees a rest period mandated by an applicable statute, or applicable regulation, standard, or order of the Industrial Welfare Commission, the Occupational Safety and Health Standards Board, or the Division of Occupational Safety and Health. Under paragraph 12 of the governing Industrial Wage Order, employers must permit non-exempt employees to take 10 minutes of rest for every four hours worked, taken in the middle of the work period unless impracticable. Under Labor Code section 226.7 and paragraph 12 of the governing Industrial Wage Order, when employers do not provide compliant rest breaks, they must pay employees an additional hour of pay at the employees' regular rate of pay for each violation.

256.    Defendants failed to provide timely, off-duty, uninterrupted 10-minute rest breaks to the California Labor Plaintiffs and other employees they classified as non-exempt, and failed to compensate them for one additional hour of pay at their regular hourly rate for each rest break that was not provided or was missed, shortened, interrupted, on-duty, or untimely.

257.    Plaintiff Harvey regularly performed work during what should have been an off-duty rest break, but Defendants did not ask or require him to report noncompliant rest breaks and did not pay him premium wages for noncompliant rest breaks.

258.    Defendants violated Labor Code sections 512 and 226.7, and California Labor Plaintiffs and similarly situated employees that were classified as non-exempt are entitled to recover premium wages in the amount of one additional hour of pay at their regular rates of pay

for each violation, as well as costs and reasonable attorneys' fees. The Individual Defendants are personally liable for such amounts under Sections 558, 558.1, and/or 1197.1.

**EIGHTEENTH CAUSE OF ACTION**
**Violations Of Cal. Lab. Code § 204**
**Alleged by California Shutdown Plaintiffs Against all Defendants**

259.    Plaintiffs allege and incorporate by reference the allegations contained in all preceding paragraphs.

260.    Under Labor Code section 204, all wages must be attributed to and paid for the semimonthly pay period in which they were earned.

261.    Defendants violated Section 204 when they failed to pay the wages earned between June 16 and 30, 2022 in the next semimonthly pay period (the scheduled payday was July 7, 2022).

262.    Defendants violated Section 204 again when they failed to pay the wages earned between July 1 and 6, 2022 in the next semimonthly pay period, including commission wages for the June 2022 commission month.

263.    Defendants' decision to terminate California Shutdown Plaintiffs and California Shutdown Class employees without paying wages earned between June 16 and July 6, 2022 constitutes multiple violations of Labor Code section 204.

**NINETEENTH CAUSE OF ACTION**
**Violations Of Cal. Lab. Code §§ 432.5, 432.6, and 925**
**Alleged by California Labor Plaintiffs Against All Defendants**

264.    Plaintiffs allege and incorporate by reference the allegations contained in all preceding paragraphs.

265.    Labor Code 432.5 prohibits an employer, or agent, manager, superintendent, or officer thereof, from requiring employees or applicants to agree in writing to any term or condition which is known to be prohibited by law.

266.    Labor Code 432.6 prohibits employers and other persons, as a condition of employment, continued employment, or any employment-related benefit, from requiring the waiver of any right, forum, or procedure for any violation of the Labor Code or the Fair Employment and Housing Act.

267.    Labor Code section 925 states than an employer "shall not require an employee who primarily resides and works in California, as a condition of employment, to agree to a provision that would do either of the following: (1) Require the employee to adjudicate outside of California a claim arising in California. (2) Deprive the employee of the substantive protection of California law with respect to a controversy arising in California.

268.    Defendants required California Labor Plaintiffs and other employees who primarily resided and worked in California, as a condition of their employment, continued employment, or receipt of employment-related benefits, to agree to written provisions that (i) require all claims involving their employment agreements to be brought exclusively in courts located in the State of New York, waiving their right to bring claims in California; (ii) require New York law instead of California law to govern their employment agreement; and (iii) constitute overbroad and unlawful non-compete and non-solicitation provisions.

269.    Defendants knew or should have known that these written provisions were prohibited by California law and impermissibly waived California Labor Plaintiffs' and other employees' rights, forums, procedures, and substantive protections under California law.

270.    Defendants' written employment terms, policies, and agreements violate Labor Code sections 432.5, 432.6, and 925.

**TWENTIETH CAUSE OF ACTION**
**Violations Of Cal. Lab. Code § 2751**
**Alleged By California Labor Plaintiffs Against All Defendants**

271.     Plaintiffs allege and incorporate by reference the allegations contained in all preceding paragraphs.

272.     Defendants have engaged in unlawful business practices related to commissions. Under Section 2751, when an employer enters into a contract of employment and the contemplated payment method includes commissions, the contract must "set forth the method by which the commissions shall be computed and paid," and the employer "shall give a signed copy of the contract to every employee who is a party thereto and shall obtain a signed receipt for the contract from each employee."

273.     The Labor Code requires a complete commission agreement (including any attachments and addendums) to be signed by both the employer and the employee on or before the date the agreement starts applying to the employee, and a fully signed copy to be given to the employee.

274.     The Labor Code also requires the employer to obtain a receipt that is signed by the employee, identifies what was signed and when, and is capable of being kept as part of the employee's personnel file and provided upon request.

275.     Defendants violated Section 2751 in multiple ways. First, Defendants did not give California Labor Plaintiffs and other commission-eligible employees fully signed copies of the commission agreements (with attachment and any addendums) on or before the dates the agreements became effective and applied to them.

276.     Second, Defendants did not obtain receipts that were signed by the employee, identified what was signed and when, and were in a form capable of being placed in the employee's personnel file and provided upon request.

277.    Third, Defendants failed to calculate and pay commission wages in accordance with the terms set forth in the relevant commission documents, and failed to act in good faith and fair dealing under the terms of such documents.

278.    Specifically, but without limitation, Defendants terminated Plaintiffs and other commission-eligible employees on or around July 6, 2022, after commissions for the June 2022 commission month were reasonably calculable and earned but before they were scheduled to be paid on July 7, 2022. Defendants did not pay such commissions.

279.    California Labor Plaintiffs and other commission-eligible employees did not expressly or knowingly agree to any delayed calculation, earning, or payment of their commission wages for the June 2022 commission month or any other month, and any provision that did provide for delayed calculation, earning, or payment of commission wages was adhesive, construed strictly against Defendants, and unconscionable. Defendants violated Labor Code section 2751.

## TWENTY-FIRST CAUSE OF ACTION
### Failure To Make Proper Disclosure In Violation Of The Fair Credit Reporting Act ("FCRA")
### Alleged by California Labor Plaintiffs Against All Defendants)

280.    Plaintiffs allege and incorporate by reference the allegations contained in all preceding paragraphs.

281.    Under the FCRA, it is unlawful to procure a consumer report or cause a consumer report to be procured for employment purposes, unless:

> (i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or causes to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and,

> (ii) the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report. 15 U.S.C. § 1681b(b)(2)(A)(i)-(ii).

282.    Defendants' standard FCRA disclosure form is unlawful.

283.    The violations of the FCRA were willful based on the clear statutory text, case law guidance, and regulatory guidance. The statutory text of the standalone requirement is straightforward. The word "solely" in subsection (i) and the one express exception in subsection (ii) of 15 U.S.C. § 1681b(b)(2)(A), which allows the authorization to be on the same document as the disclosure, shows that "the FCRA should not be read to have implied exceptions[.]" *Gilberg,* 913 F.3d at 1175 (citing to *Syed v. M-I, LLC* (2017) 853 F.3d 492, 501-03 (*"Syed"*)).

284.    Defendants also had specific case law to provide guidance. *See Gilberg,* 913 F.3d at 1175 (*"Syed's* holding and statutory analysis were not limited to liability waivers; *Syed* considered the standalone requirement with regard to any surplusage*"*) citing to *Syed,* 853 F.3d at 501.

285.    Lastly, informal guidance from the FTC is unambiguous that no extraneous information should be included in the FCRA disclosure. *See* FTC, Opinion Letter, 1997 WL 33791227, at *1 (Oct. 21, 1997) ("[The] document should include nothing more than the disclosure and the authorization for obtaining a consumer report."); FTC, Opinion Letter, 1998 WL 34323748, at *2 (Feb. 11, 1998) (disclosure may describe the "nature of the consumer reports" it covers, but otherwise should "not be encumbered with extraneous information"); FTC, Opinion Letter, 1998 WL 34323756, at *1 (June 12, 1998) (inclusion of a waiver in a disclosure form violates Section 1681b(b)(2)(A)).

286.    Defendants knew that their standard disclosure form must be clear and not contain extraneous information that would confuse a reasonable person about the nature of her rights under the FCRA, such as state disclosures.

287.    California Labor Plaintiffs and all other members of the California Labor Class are entitled to statutory damages of not less than One Hundred Dollars ($100) and not more than One

Thousand Dollars ($1,000) for every willful violation of the FCRA, pursuant to 15 U.S.C. § 1681 n(a)(1)(A).

288.    California Labor Plaintiffs and all other members of the California Labor Class are also entitled to punitive damages for these willful violations, pursuant to 15 U.S.C. § 1681 n(a)(2).

289.    California Labor Plaintiffs and all other members of the California Labor Class are further entitled to recover their costs and attorney fees, pursuant to 15 U.S.C. § 1681n(a)(3).

**TWENTY-SECOND CAUSE OF ACTION**
**Failure To Obtain Proper Authorization In Violation Of The FCRA**
**Alleged by California Labor Plaintiffs Against All Defendants**

290.    Plaintiffs allege and incorporate by reference the allegations contained in all preceding paragraphs.

291.    Accordingly, California Labor Plaintiffs were confused regarding the nature of their rights under the FCRA and did not give valid authorization for Defendants to procure a consumer report in violation of 15 U.S.C. § 1681b(b)(2)(A)(ii).

292.    Nevertheless, Defendants procured a consumer report or caused a consumer report to be procured for employment purposes on California Labor Plaintiffs and the California Labor Class in violation of 15 U.S.C. § 1681b(b)(2)(A).

293.    This violation of the FCRA is willful. 15 U.S.C. § 1681n.  Defendants knew that their standard FCRA form must be standalone and must be clear and conspicuous.  In addition, Defendants knew that proper authorization is not possible without a legally compliant disclosure.

294.    California Labor Plaintiffs and all other members of the California Labor Class are entitled to statutory damages of not less than One Hundred Dollars ($100) and not more than One Thousand Dollars ($1,000) for every willful violation of the FCRA, pursuant to 15 U.S.C. § 1681n(a)(1)(A).

295.    California Labor Plaintiffs and all other members of the California Labor Class are also entitled to punitive damages for these willful violations, pursuant to 15 U.S.C. § 1681n(a)(2).

296.    California Labor Plaintiffs and all other members of the California Labor Class are further entitled to recover their costs and attorneys' fees, pursuant to 15 U.S.C. § 1681n(a)(3).

### TWENTY-THIRD CAUSE OF ACTION
### Violation Of California's Investigative Consumer Reporting Agencies Act ("ICRAA")
### Alleged by California Labor Plaintiffs Against All Defendants

297.    Plaintiffs allege and incorporate by reference the allegations contained in all preceding paragraphs.

298.    Each Defendant is a "person" as defined by California Civil Code section 1786.2, subdivision (n) of the Investigative Consumer Reporting Agencies Act ("ICRAA").

299.    California Labor Plaintiffs and the California Labor Class members are "consumers" within the meaning of California Civil Code section 1786.2, subdivision (b) of the ICRAA, because they are "individuals."

300.    California Civil Code section 1786.2 subdivision (c) of the ICRAA defines an "investigative consumer report" as: a consumer report in which information on a consumer's character, general reputation, personal characteristics, or mode of living is obtained through any means.

301.    Thus, Defendants' background checks qualify as an investigative consumer report under the ICRAA.

302.    California Civil Code section 1786.16, subdivision (a)(2) of the ICRAA provides, in relevant part:

> If, at any time. an investigative consumer report is sought for employment purposes… the person seeking the investigative consumer report may procure the report, or cause the report to be made, only if all of the following apply:
>
> …

(B) The person procuring or causing the report to be made provides a clear and conspicuous disclosure in writing to the consumer at any time before the report is procured or caused to be made in a document that consists solely of the disclosure, that:

(i) An investigative consumer report may be obtained.

…

(C) The consumer has authorized in writing the procurement of the report.

303.    As described above, California Labor Plaintiffs allege that in evaluating them and other California Labor Class members for employment or during employment, Defendants procured or caused to be prepared investigative consumer reports (e.g., background checks), as defined by California Civil Code section 1786.2, subdivision (c).

304.    Further, as described above, the purported disclosures and authorizations provided by Defendants to California Labor Plaintiffs and the California Labor Class are unlawful.  Thus, they do not meet the requirements under the law.

305.    Under the ICRAA, it is unlawful to procure or cause to be procured, an investigative consumer report for employment purposes unless the disclosure is made in a document that consists solely of the disclosure and the consumer has authorized, in writing, the procurement of the report. Cal. Civ. Code § 1786.16, subd. (a)(2)(B)-(C). The inclusion of extraneous information violates California Civil Code section 1786.16, subdivision (a)(2)(B).

306.    The plain language of the statute clearly indicates that the inclusion of this extraneous information in a disclosure form violates the disclosure and authorization requirements of the ICRAA, because such a form would not consist "solely" of the disclosure.

307.    Defendants willfully violated California Civil Code section 1786.16(a)(2)(B) of the ICRAA.  Additionally, the inclusion of the extraneous provisions causes a disclosure to fail to be "clear and conspicuous" and thus violates California Civil Code section 1786.16(a)(2)(B).

308.    Upon information and belief, California Labor Plaintiffs allege that Defendants have a policy and practice of failing to provide adequate written disclosures to applicants and employees, before procuring background checks, as described above.  Pursuant to that policy and practice, Defendants violated California Civil Code sections 1786.16(a)(2)(B) and 1786.16(b)(1) of the ICRAA, as described above.

309.    Defendants' conduct in violation of California Civil Code sections 1786.16(a)(2)(B) and 1786.16(b)(1) of the ICRAA were and are willful and/or grossly negligent.  Defendants acted in deliberate or reckless disregard of its obligations and the rights of applicants and employees, including the California Labor Plaintiffs and Class members.

310.    As a result of Defendants' illegal procurement of background reports by way of its inadequate disclosures, as set forth above, California Labor Plaintiffs and Class members have been deprived of their consumer rights and prevented from making informed decisions about whether to permit Defendants to obtain their personal information, and California Labor Plaintiffs and Class members have been injured, including, but not limited to, having their privacy and statutory rights invaded in violation of the ICRAA.

311.    California Labor Plaintiffs, on behalf of themselves and all California Labor Class members, seeks all available remedies pursuant to California Civil Code section 1786.50, including statutory damages and/or, punitive damages, and attorney fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, pray for the following relief:

a.    That, at the earliest possible time, Plaintiffs through their counsel be permitted to give notice of this collective action, or that the Court issue such notice of this collective action,

or that the Court issue such notice to all persons who are presently, or have at any time during the three years immediately preceding the filing of this suit, up through and including the date of the Court's issuance of court-supervised notice, been employed by Defendants. Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper hourly compensation and overtime wages;

b.  Certification of this case as a class action pursuant to Fed. R. Civ. P. 23;

c.  Certification of this case as a collective action pursuant to 29 U.S.C. § 216(b);

d.  Designation of the named Plaintiffs as class representatives and designation of the undersigned counsel of record as class counsel;

e.  Unpaid wages, back pay, front pay, compensatory damages, punitive damages,  attorneys' fees, costs, and interest pursuant to 29 U.S.C. § 201 *et seq.* and the NYLL § 190*;*

f.  An additional and equal amount in unpaid wages as liquidated damages pursuant to 29 U.S.C. § 201 *et seq.*;

g.  Equitable relief pursuant to ERISA § 502(a)(3), including a "surcharge" remedy which would provide monetary compensation to Nationwide Shutdown Plaintiffs for their uncovered medical expenses from May 1, 2022, through July 31, 2022, and/or equitable estoppel placing Nationwide Shutdown Plaintiffs in the position they would have occupied but for Defendants' breach of their fiduciary duty under ERISA;

h.  Statutory damages pursuant to NYLL §§ 193, 198; and the California Labor Code;

i.  Statutory damages pursuant to 29 U.S.C. § 2101 *et seq.,* N.Y. Labor Law § 860(g), and the California Labor Code;

j.  Statutory damages pursuant to 29 U.S.C. § 1132(c)(1), as modified by 29 C.F.R. § 2575.502c–1;

k.  Issuance of a declaratory judgement that the practices complained of herein are unlawful under the FLSA, ERISA, COBRA, NYLL, WARN Act, NY WARN Act, and California Labor Code, and a permanent injunction against Defendants' continued engagement in such practices; and

l.  All other and further relief that this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to FRCP 38(b), Plaintiffs demand a trial by jury on all question of fact raised by the Complaint.

Dated: New York, New York
      May 30, 2023

                       **MENKEN SIMPSON & ROZGER LLP**

                       By:  */s/Brenna Rabinowitz*
                           Brenna Rabinowitz
                           Bruce Menken
                           Scott Simpson
                           80 Pine St., 33rd Fl.
                           New York, NY 1005
                           (212) 509-1616
                           brabinowitz@nyemployeelaw.com
                           bmenken@nyemployeelaw.com
                           ssimpson@nyemployeelaw.com

                           *Attorneys for Plaintiffs and the Rule 23 Proposed Class*
                           *and FLSA Proposed Collective*

# EXHIBIT

# B

1

**JCL LAW FIRM, APC**
Jean-Claude Lapuyade (State Bar # 248676)
Sydney Castillo-Johnson (State Bar #343881)
5440 Morehouse Drive, Suite 3600
San Diego, CA 92121
Telephone: (619) 599-8292
Facsimile: (619) 599-8291
jlapuyade@jcl-lawfirm.com
scastillo@jcl-lawfirm.com

**ZAKAY LAW GROUP, APLC**
Shani O. Zakay (State Bar # 277924)
Jackland K. Hom (State Bar #327243)
5440 Morehouse Drive, Suite 3600
San Diego, CA 92121
Telephone: (619) 255-9047
Facsimile: (858) 404-9203
shani@zakaylaw.com
jackland@zakaylaw.com
julieann@zakaylaw.com

Attorneys for Plaintiffs

**JACKSON LEWIS P.C.**
Robert D. Vogel (SBN 63091)
725 South Figueroa Street, Suite 2500
Los Angeles, CA 90017
Telephone:    (213) 689-0404
Robert.Vogel@jacksonlewis.com
Attorneys for Defendants

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF SAN DIEGO - CENTRAL DIVISION**

| | |
|---|---|
| BLAKE BOYER, LORI STEWARD, and MIKE SHIRDEL, individuals, on behalf of themselves, and on behalf of all persons similarly situated, <br><br> Plaintiffs, <br> vs. <br><br> SPROUT MORTGAGE, LLC., a Delaware limited liability company; RECOVCO MORTGAGE MANAGEMENT, LLC, a Delaware limited liability company: MICHAEL STRAUSS, an individual; and DOES 1-50, inclusive, <br><br> Defendants. | **CASE NO.:  37-2022-00029036-CU-OE-CTL** <br><br> [*Assigned for all purposes to the Hon. Gregory W. Pollack, Dept. C-71*] <br><br> **STIPULATION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT WITHOUT PREJUDICE AND PROPOSED ORDER THEREON** <br><br> Complaint Filed:    July 22, 2022 <br> FAC Filed:    September 27, 2022 <br> SAC Filed    February 15, 2023 <br> Trial Date:    Not Set |

TO THE HONORABLE COURT:

WHEREAS, the claims asserted in the operative complaint in this case ("*Boyer* Action") largely overlap the claims asserted in the earlier filed in a lawsuit entitled *Agudelo et. al., v. Recovco Mortgage Management, LLC,* pending in the United States District Court for the Eastern District of New York, Civil Case No. 22-CV-4004 ("*Agudelo* Action").

WHEREAS, after a mediation was conducted and extensive settlement discussions and negotiations were collectively held with Plaintiffs' counsel in this case, counsel in *Agudelo* Action and two (2) related cases filed and currently pending in Orange County Superior Court entitled *Jared Sawyer and Scott Harvey v. Sprout Mortgage, LLC, et al.,* Orange Superior Court Case No. 30-2022-01271017-CU-OE-CXC ("*Sawyer* Action") and  *Karen Kelley v. Sprout Mortgage, LLC*, Orange County Superior Court Case No. 30-2022-01246916-CU-OE-CXC ("*Kelley* Action") an agreed upon Class Action Settlement Agreement And Release ("Settlement Agreement") was executed by legal counsel for all Plaintiffs and Defendants in the above cases and submitted to  the court in the Eastern District of New York.

WHEREAS, the Settlement Agreement requests the assigned federal judge: (1) preliminarily approve the settlement reached after a mediation and long protracted negotiations; (2) conditionally certify the settlement class consistent therewith; (3) enter an order consolidating the *Boyer* Action, *Sawyer* Action and *Kelley* Action with the *Agudelo* Action before the United States District Court for the Eastern District of New York; and (4) permit the filing a third amended complaint in the *Agudelo* Action consistent with the above.

WHEREAS, the above-referenced pleadings compromise, resolve, discharge and settle all claims asserted by the Plaintiff *Boyer* against the Defendants in this case and release all claims associated therewith.

WHEREAS, in that regard, the Settlement Agreement expressly provides that upon (1) filing of the Third Amended Complaint in the *Agudelo* Action that adds Plaintiff *Boyer* and the claims asserted in the *Boyer* Action, and (2) entry by the United States District Court for the Eastern District of New York of an order granting preliminary approval of the Settlement Agreement, the parties herein and their counsel obtain a dismissal of this case without prejudice.

WHEREAS, on [INSERT DATE] an amended complaint adding plaintiff *Boyer* and the claims asserted in the *Boyer* Action was entered by the United States District Court for the Eastern District of New York,

WHEREAS, on [INSERT DATE], United States District Court for the Eastern District of New York entered an order granting preliminary approval of the Settlement Agreement.

Accordingly, the parties, through their counsel herein, request this court grant a dismissal of this case without prejudice and set a further status conference to be conducted in approximately two (2) months when at that time, the parties will report as to the status of the global settlement and whether this case should be dismissed with prejudice or reactivated.

IT IS HEREBY STIPULATED:

Dated: XXX, 2023                                **JACKSON LEWIS P.C.**

_____
Robert D. Vogel
Dated: Attorneys for Defendants

Dated: XXX, 2023                                **JCL LAW FIRM, APC**

_____
Jean-Claude Lapuyade
Sydney Castillo-Johnson

Attorneys for Plaintiffs

Dated: XXX, 2023                                **ZAKAY LAW GROUP, APLC**

_____
Shani O. Zakay
Jackland K. Hom
Julieann Alvarado

Attorneys for Plaintiffs

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF SAN DIEGO - CENTRAL DIVISION**

| | |
|---|---|
| BLAKE BOYER, LORI STEWARD, and MIKE SHIRDEL, individuals, on behalf of themselves, and on behalf of all persons similarly situated, <br><br> Plaintiffs, <br> vs. <br><br> SPROUT MORTGAGE, LLC., a Delaware limited liability company; RECOVCO MORTGAGE MANAGEMENT, LLC, a Delaware limited liability company: MICHAEL STRAUSS, an individual; and DOES 1-50, inclusive, <br><br> Defendants. | **CASE NO.:  37-2022-00029036-CU-OE-CTL** <br><br> [*Assigned for all purposes to the Hon. Gregory W. Pollack, Dept. C-71*] <br><br> **[PROPOSED] ORDER** <br><br><br><br> Complaint Filed:      July 22, 2022 <br> FAC Filed:             September 27, 2022 <br> SAC Filed              February 15, 2023 <br> Trial Date:             Not Set |

Based upon the stipulation of the parties and for good cause shown, is hereby ordered that the Second Amended Complaint in this case be dismissed without prejudice and a further status conference be conducted on August____2023 to determine, at that time, whether the complaint should be reactivated or dismissed with prejudice.

Dated:XXX

_____

*Gregory W. Pollack*
Judge of the San Diego Superior Court

## PROOF OF SERVICE

**CALIFORNIA SUPERIOR COURT, COUNTY OF SAN DIEGO**

**CASE NAME:**   *Blake Boyer, et al. v. Sprout Mortgage, LLC, et al.*

**CASE NO.:**      37-2022-00029036

     I am employed in the County of Salt Lake, State of Utah.  I am over the age of 18 and not a party to the within action.  My business address is: 215 South State Street, Suite 760, Salt Lake City, Utah 84111.

     On **June 1, 2023,** I caused the following document(s) described as:

**STIPULATION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT WITHOUT PREJUDICE AND PROPOSED ORDER THEREON**

to be served on all interested parties in this action as follows:

| | |
|---|---|
| Jean-Claude Lapuyade<br>Sydney Castillo-Johnson<br>**JCL LAW FIRM, APC**<br>5440 Morehouse Drive, Suite 3600<br>San Diego, CA 92121 | Attorneys for Plaintiff<br><br>T: (619) 599-8292<br>F: (619) 599-8291<br>Emails:<br>jlapuyade@jcl-lawfirm.com<br>scastillo@jcl-lawfirm.com |
| Shani O. Zakay<br>Jackland K. Hom<br>Julieann Alvarado<br>**ZAKAY LAW GROUP, APLC**<br>5440 Morehouse Drive, Suite 3600<br>San Diego, CA 92121 | T: (619) 255-9047<br>F: (858) 404-9203<br>Emails :<br>shani@zakaylaw.com<br>jackland@zakaylaw.com<br>julieann@zakaylaw.com |

     **BY MAIL:** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Irvine, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

**STATE**: I declare under penalty of perjury under the laws of the State of Utah that the foregoing is true and correct.

     Executed on **XXX**, at Salt Lake City, Utah.

_____

4857-3709-0919, v. 1

PROOF OF SERVICE

# EXHIBIT

# C

1  Jamin S. Soderstrom, Bar No. 261054
   **SODERSTROM LAW PC**
2  1 Park Plaza, Suite 600
   Irvine, California 92614
3  Tel:    (949) 667-4700
   Fax:    (949) 424-8091
4  jamin@soderstromlawfirm.com

5

6  Shirin Forootan, Bar No. 260390
   **FOROOTAN LAW**
7  3334 East Coast Highway, No. 307
   Corona del Mar, California 92625
8  Tel:    (949) 610-9878
   shirin@forootanlaw.com

9

10 Attorneys for Plaintiffs

11 **JACKSON LEWIS P.C.**
   Robert D. Vogel (SBN 63091)
12 725 South Figueroa Street, Suite 2500
   Los Angeles, CA 90017
13 Telephone:    (213) 689-0404
   Robert.Vogel@jacksonlewis.com

14 Attorneys for Defendants

15

16                **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

17          **FOR THE COUNTY OF ORANGE CIVIL COMPLEX CENTER**

18 JARED SAWYER and SCOTT HARVEY,        **CASE NO.:** 30-2022-01246916-CU-OE-CXC
   individually and on behalf of all others
19 similarly situated and all aggrieved employees,    Action Filed: February 22, 2022

20 Plaintiffs,                          *[Assigned for all purposes to the Hon. Glenda
   vs.                                 Sanders, Dept. CX101]*
21
   SPROUT MORTGAGE, LLC., RECOVCO       **STIPULATION TO DISMISS SECOND
22 MORTGAGE MANAGEMENT, LLC,            AMENDED CLASS ACTION COMPLAINT
   MICHAEL STRAUSS, SHEA PALLANTE,      WITHOUT PREJUDICE AND PROPOSED
23 CHRISTOPHER WRIGHT, ELLIOT           ORDER THEREON**
   SALZMAN, and DOES 1-25
24
   Defendants.
25                                      Complaint Filed:    July 22, 2022
                                        FAC Filed:          August 22.2022
26

27

28 TO THE HONORABLE COURT:

WHEREAS, the claims asserted in the operative complaint in this case ("*Sawyer* Action") largely overlap the claims asserted in the earlier filed in a lawsuit entitled *Agudelo et. al., v. Recovco Mortgage Management, LLC,* pending in the United States District Court for the Eastern District of New York, Civil Case No. 22-CV-4004 ("*Agudelo* Action").

WHEREAS, after a mediation was conducted and extensive settlement discussions and negotiations were collectively held with Plaintiffs' counsel in this case, counsel in *Agudelo* Action and two related cases filed and currently pending California: One in San Diego Superior Court entitled *Blake Boyer, Lori Steward and Mike Shirdel v. Sprout Mortgage, LLC, et al.,* Orange Superior Court Case No. 37-2022-00029036-CU-OE-CTL ("*Boyer* Action") and *Karen Kelley v. Sprout Mortgage, LLC*, Orange County Superior Court Case No. 30-2022-01246916-CU-OE-CXC ("*Kelley* Action") an agreed upon Class Action Settlement Agreement And Release ("Settlement Agreement") was executed by legal counsel for all Plaintiffs and Defendants in the above cases and submitted to the court in the Eastern District of New York.

WHEREAS, the Settlement Agreement requests the assigned federal judge: (1) preliminarily approve the settlement reached after a mediation and long protracted negotiations; (2) conditionally certify the settlement class consistent therewith; (3) enter on order consolidating the *Boyer* Action, *Sawyer* Action and *Kelley* Action with the *Agudelo* Action before the United States District Court for the Eastern District of New York; and (4) permit the filing a third amended complaint in the *Agudelo* Action consistent with the above.

WHEREAS, the above-referenced pleadings compromise, resolve, discharge and settle all claims asserted by the Plaintiffs against the Defendants in this case and release all claims associated therewith.

WHEREAS, in that regard, the Settlement Agreement expressly provides that upon (1) filing of the Third Amended Complaint in the *Agudelo* Action that adds Plaintiffs in this case and the claims asserted in this Action, and (2) entry by the United States District Court for the Eastern District of New York of an order granting preliminary approval of the Settlement Agreement, the parties herein and their counsel obtain a dismissal of this case without prejudice.

1    WHEREAS, on [INSERT DATE] an amended complaint adding Plaintiffs in this Action and the

2    claims asserted in this Action was entered by the United States District Court for the Eastern District of

3    New York,

4    WHEREAS, on [INSERT DATE], United States District Court for the Eastern District of New

5    York entered an order granting preliminary approval of the Settlement Agreement.

6    Accordingly, the parties, through their counsel herein, request this court grant a dismissal of this

7    case without prejudice and set a further status conference to be conducted in approximately two (2)

8    months when at that time, the parties will report as to the status of the global settlement and whether this

9    case should be dismissed with prejudice or reactivated.

10

11

IT IS HEREBY STIPULATED:

12

13    Dated: XXX, 2023                           **JACKSON LEWIS P.C.**

14

15                                              _____

16                                              Robert D. Vogel, Esq,
                                                Attorney for Defendants

17

18    Dated: XXX, 2023                           **SODERSTROM LAW PC**

19

20                                              _____

Jamin S. Soderstrom, Esq,

21                                              Attorney for Plaintiffs

22

23    Dated: XXX, 2023                           **FOROOTAN LAW**

24

25                                              _____

Shirin Forootan, Esq,

26                                              Attorney for Plaintiffs

27

28

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

# FOR THE COUNTY OF ORANGE

| | |
|---|---|
| JARED SAWYER and SCOTT HARVEY, individually and on behalf of all others similarly situated and all aggrieved employees,<br><br>Plaintiffs,<br>vs.<br><br>SPROUT MORTGAGE, LLC., RECOVCO MORTGAGE MANAGEMENT, LLC, MICHAEL STRAUSS, SHEA PALLANTE, CHRISTOPHER WRIGHT, ELLIOT SALZMAN, and DOES 1-25,<br><br>Defendants. | **CASE NO.:  30-2022-01271017-CU-OE-CXC**<br><br>*[Assigned for all purposes to the Hon. Glenda Sanders, Dept. CX101]*<br><br>**[PROPOSED] ORDER**<br><br><br><br>Complaint Filed:     July 22, 2022<br>FAC Filed:            August 22.2022 |

Based upon the stipulation of the parties and for good cause shown, it is hereby ordered that the Second Amended Complaint in this case be dismissed without prejudice and a further status conference be conducted on August____2023 to determine, at that time, whether the complaint should be reactivated or dismissed with prejudice.

Dated: XXX

_____

*Glenda Sanders*
Judge of the Orange County Superior Court

## PROOF OF SERVICE

**CALIFORNIA SUPERIOR COURT, COUNTY OF ORANGE**

**CASE NAME:**   *Jared Sawyer, et al. v. Sprout Mortgage, LLC, et al.*

**CASE NO.:**     30-2022-01271017

I am employed in the County of Salt Lake, State of Utah.  I am over the age of 18 and not a party to the within action.  My business address is: 215 South State Street, Suite 760, Salt Lake City, Utah 84111.

On **XXX,** I caused the following document(s) described as:

**STIPULATION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT WITHOUT PREJUDICE AND PROPOSED ORDER THEREON**

to be served on all interested parties in this action as follows:

Jamin S. Soderstrom
**SODERSTROM LAW PC**
1 Park Plaza, Suite 600
Irvine, California 92614
Tel:     (949) 667-4700
Fax:     (949) 424-8091
jamin@soderstromlawfirm.com

Shirin Forootan
**FOROOTAN LAW**
3334 East Coast Highway, No. 307
Corona del Mar, California 92625
Tel:     (949) 610-9878
shirin@forootanlaw.com

**BY MAIL:** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Irvine, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

**STATE**:  I declare under penalty of perjury under the laws of the State of Utah that the foregoing is true and correct.

Executed on **XXX**, at Salt Lake City, Utah.

_____
*Jamie McInelly*

4883-6272-5479, v. 1

1

PROOF OF SERVICE

# EXHIBIT

# D

**NOSRATILAW, APLC**
Omid Nosrati, Esq. (SBN 216350)
Amiel Azizollahi, Esq. (SBN 335319)
1801 Century Park East, Suite 840
Los Angeles, California 90067
Telephone: (310) 553-5630
Facsimile: (310) 553-5691
Email: omid@nosratilaw.com
Email: amiel@nosratilaw.com

Attorneys for Plaintiffs

**JACKSON LEWIS P.C.**
Robert D. Vogel (SBN 63091)
725 South Figueroa Street, Suite 2500
Los Angeles, CA 90017
Telephone:    (213) 689-0404
Robert.Vogel@jacksonlewis.com
Attorneys for Defendants

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF ORANGE/CIVIL COMPLEX CENTER**

| | |
|---|---|
| KAREN KELLEY, individually and on behalf of all other persons similarly situated, and on behalf of the general public;<br><br>Plaintiffs,<br>vs.<br><br>SPROUT MORTGAGE, LLC, a Delaware limited liability company; and DOES 1 through 50, inclusive;<br><br>Defendants. | CASE NO.:  30-2022-01246916-CU-OE-CXC<br><br>*[Assigned for all purposes to the Hon. Randall J. Sherman Sanders, Dept. CX105]*<br><br>**STIPULATION TO DISMISS CLASS ACTION COMPLAINT WITHOUT PREJUDICE AND PROPOSED ORDER THEREON**<br><br><br>Complaint Filed:  February 22, 2022<br>Trial Date:        None Set |

TO THE HONORABLE COURT:

After a mediation was conducted and extensive settlement discussions and negotiations were collectively held with counsel in this case, counsel in a federal case pending in the Eastern District of New York entitled *Agudelo et. al., v. Recovco Mortgage Management, LLC,* pending in the United States District Court for the Eastern District of New York, Civil Case No. 22-CV-4004 ("*Agudelo*"), and two (2) related cases filed and currently pending in San Diego and Orange County Superior Court, an

agreed upon Class Action Settlement Agreement and Release ("Settlement Agreement") was executed by legal counsel for all Plaintiffs and Defendants in the above cases and submitted to the court in the Eastern District of New York.

The Settlement Agreement requests the assigned federal judge in *Agudelo*: (1) preliminarily approve the settlement reached after a mediation and long protracted negotiations; (2) conditionally certify the settlement class consistent therewith; (3) enter on order consolidating that case with the two (2) later filed related cases pending in state court in California, and this case, for settlement purposes; and (4) permit the filing a third amended complaint in the federal case consistent with the above.

The above-referenced pleadings compromise, resolve, discharge and settle all claims asserted by the Plaintiffs against the Defendants in this case and release all claims associated therewith.

In that regard, the Settlement Agreement expressly provides the parties herein and their counsel presently obtain a dismissal of this case without prejudice with the explicit understanding that in the event the federal court later grants approval of the jointly proposed settlement, the claims asserted in this case shall be dismissed with prejudice. If the federal court does not grant approval of the jointly proposed settlement, the parties to this action, through their counsel, stipulate that Plaintiff can file this action again with the filing date relating back to the original filing date of the class action complaint.

Accordingly, the parties, through their counsel herein, request this court grant a dismissal of this case without prejudice and set a further status conference to be conducted in approximately two (2) months when at that time, the parties will report as to the status of the global settlement and whether this case should be dismissed with prejudice or reactivated.

IT IS HEREBY STIPULATED:

Dated: XXX, 2023                                              **JACKSON LEWIS P.C.**

                                                             _____
                                                             Robert D. Vogel
                                                             Attorney for Defendant, Sprout Mortgage, LLC

1

2

Dated: XXX, 2023                                        **NOSRATILAW, APLC**

3

4    _____                                          _____
                                                        Omid Nosrati, Esq.
5                                                       Amiel Azizollahi, Esq.
                                                        Attorneys for Plaintiff, Karen Kelley
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

2

**FOR THE COUNTY OF ORANGE/CIVIL COMPLEX CENTER**

3 | KAREN KELLEY, individually, and on behalf | **CASE NO.:  30-2022-01271017-CU-OE-CXC**
of all other persons similarly situated, and on

4 | behalf of the general public;

*[Assigned for all purposes to the Hon. Randall J.*

5 | Plaintiffs, | *Sherman Dept. CX105]*

vs.

6 | | **[PROPOSED] ORDER**

7 | SPROUT MORTGAGE, LLC, a Delaware
limited liability company, and DOES 1 through

8 | 50, inclusive,

Complaint Filed:        February 22, 2022

9 | Defendants.

10

11      Based upon the stipulation of the parties and for good cause shown, it is hereby ordered that the

12 Complaint in this case be dismissed without prejudice and a further status conference be conducted on

13 August____2023 to determine, at that time, whether the complaint should be reactivated or dismissed

14 with prejudice.

15 Dated: XXX, 2023

16

17

18 _____

*Randall J. Sherman*

19 Judge of the Orange County Superior Court

20

21

22

23

24

25

26

27

28

3

<u>**PROOF OF SERVICE**</u>

**CALIFORNIA SUPERIOR COURT, COUNTY OF ORANGE**

**CASE NAME:   *Karen Kelley, et al. v. Sprout Mortgage, LLC, et al.***

**CASE NO.:      30-2022-01246916**

     I am employed in the County of Salt Lake, State of Utah.  I am over the age of 18 and not a party to the within action.  My business address is: 215 South State Street, Suite 760, Salt Lake City, Utah 84111.

     On XXX, 2023 I caused the following document(s) described as:

**STIPULATION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT WITHOUT PREJUDICE AND PROPOSED ORDER THEREON**

to be served on all interested parties in this action as follows:

**THE LAW OFFICE OF OMID NOSRATI**
Omid Nosrati, Esq.
Amiel Azizollahi, Esq.
1801 Century Park East, Suite 840
Los Angeles, California 90067
Telephone: (310) 553-5630
Facsimile: (310) 553-5691
Email:omid@nosratilaw.com
amiel@nosratilaw.com

**<u>BY MAIL</u>:** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Irvine, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

**STATE**:  I declare under penalty of perjury under the laws of the State of Utah that the foregoing is true and correct.

     Executed on **XXX, 2023**, at Salt Lake City, Utah.

                           _____

                           *Jamie McInelly*

4884-2858-9415, v. 1

# EXHIBIT

# E

## GENERAL RELEASE OF CLAIMS

This General Release (hereinafter "Release" or "General Release") is made by and between the Named Plaintiffs Nathaniel Agudelo, Helen Owens, Holly Keith, Amanda Cooper, Blake Boyer, Lori Steward, Mike Shirdel, Jared Sawyer, Scott Harvey, Karen Kelley ("Plaintiffs") and Defendants Recovco Mortgage Management LLC, Sprout Mortgage LLC, Michael Strauss, Christopher Wright, Shea Pallante, and Elliot Salzman (the "Defendants") (collectively referred to as the "Parties").

WHEREAS, Plaintiffs desire to resolve and settle all claims relating to Plaintiffs' employment with the Defendants as set forth in the Settlement Agreement between the Parties dated May __, 2023, the terms of which are incorporated herein by reference,

NOW THEREFORE, the Parties, for good and sufficient consideration, agree as follows:

1.      The Parties enter into this General Release in consideration for the mutual covenants and promises set forth in the Parties' Class Action Settlement Agreement and Release to which this General Release is attached as Exhibit "_" and is incorporated therein by reference.

2.      Plaintiffs (and all presently or formerly affiliated persons or entities, including, but not limited to, Plaintiffs' present or former spouses, dependents, heirs, assigns, lien holders, fiduciaries, employers, successors, creditors, debtors, counsel and any otherwise affiliated or related persons and entities), knowingly and voluntarily release and forever discharge Defendants, their parent corporations, affiliates, subsidiaries, divisions, brands, shareholders, members, owners, predecessors, insurers, successors and assigns, and their current and former employees, attorneys, accountants, officers, directors and agents thereof, both individually and in their business capacities, and their employee benefit plans and programs and their administrators and fiduciaries, and as to the individual Defendants, their spouses, dependents, heirs, agents, executors, administrators, predecessors, successors, assigns, lien holders, creditors, debtors, fiduciaries, insurers, attorneys, and other representatives (collectively referred to as "Releasees"), of and from any and all claims, known and unknown, asserted or unasserted, which Plaintiffs have or may have against Releasees as of the respective dates of execution of this General Release, including all claims covered by the corresponding Settlement Agreement between the Parties, the terms of which, as noted above, are incorporated by reference herein and include paragraphs 23 and 24 which provide for this General Release, and further including but not limited to, any alleged violation of:

- Title VII of the Civil Rights Act of 1964;
- The Civil Rights Act of 1991;
- Sections 1981 through 1988 of Title 42 of the United States Code;
- The Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132(a)(3) and 1132(c)(1);
- Consolidated Omnibus Budget Reconciliation Act ("COBRA"), 29 U.S.C. § 1166(a);
- The Immigration Reform and Control Act;
- The Sarbanes-Oxley Act of 2002;
- The Americans with Disabilities Act of 1990;
- The Equal Pay Act;
- The Family and Medical Leave Act;

- The Age Discrimination in Employment Act of 1967;
- The federal Workers Adjustment and Retraining Notification Act, 29 U.S.C. § 2101 *et seq.* (the "WARN Act");
- The Occupational Safety and Health Act;
- The Genetic Information Non-Discrimination Act;
- The Fair Credit Reporting Act;
- The Fair Labor Standards Act;
- The New York State Human Rights Law;
- The New York Civil Rights Law;
- The New York Equal Pay Law;
- The New York Labor Law;
- The New York Paid Family Leave Law;
- The New York COVID-19 Paid Sick Leave Law ("New York Quarantine Leave Law");
- New York Worker Adjustment and Retraining Notification Act (the "NY WARN Act"), N.Y. Labor Law § 860 *et seq.*;
- The New York Non-Discrimination for Legal Activities Law;
- The New York Whistleblower Law;
- The New York Workers' Compensation Law;
- The New York wage and hour and wage payment laws and regulations;
- The New York False Claims Act;
- The New York Criminal and Consumer Background Laws, N.Y. Gen. Bus. Law § 380-B et seq.;
- The New York Persons with Genetic Disorders Law;
- The New York Marriage Equality Act;
- The New York Constitution;
- The New York State Worker Adjustment and Retraining Notification Act;
- The Non-Discrimination and Anti-Retaliation Provisions of the New York Workers' Compensation Law and the New York Disabilities Law;
- The New York Occupational Safety and Health Laws;
- The New York Fair Credit Reporting Act;
- California Family Rights Act;
- California Fair Employment and Housing Act;
- California Unruh Civil Rights Act;
- California Confidentiality of Medical Information Act;
- The California Paid Sick Leave Laws;
- California Equal Pay Law;
- The California Consumer Credit Reporting Agencies Act;
- The California Investigative Consumer Reporting Agencies Act;
- California Worker Adjustment and Retraining Notification Act ("WARN");
- California Industrial Welfare Commission Wage Orders;
- California Government Code section 12940 *et seq.*;
- California Civil Code section 51 *et seq.*;
- The California Constitution;
- Any other local supplemental sick leave entitlement;
- Those other provisions of the California Labor Code that lawfully may be

released;
- Fair Credit Reporting Act ("FCRA");
- Cal. Lab. Code § 1400 *et seq*.;
- Cal. Lab. Code §§ 1182.12, 1184, and 1197;
- Cal. Lab. Code §§ 510, 1194, 1198;
- Cal. Bus. and Prof. Code § 17200, *et seq*.;
- Cal. Lab. Code §§ 221 and 223;
- Cal. Lab. Code § 2802;
- Cal. Lab. Code §§ 201, 202, 203;
- Cal. Lab. Code § 227.3;
- Cal. Lab. Code § 512;
- Cal. Lab. Code § 226.7;
- Cal. Lab. Code § 226;
- Cal. Lab. Code § 204;
- Cal. Lab. Code §§ 432.5, 432.6, and 925;
- Cal. Lab. Code § 2751;
- Cal Lab. Code § 1174;
- Cal. Lab. Code §§ 218.5, 218.6;
- Cal. Lab. Code § 2698 *et seq*.;
- Cal Lab. Code § 17201;
- Cal. Lab Code § 1021;
- Investigative Consumer Reporting Agencies Act ("ICRAA");
- Private Attorneys General Act ("PAGA");
- Any other federal, state or local civil, human rights, bias, whistleblower, discrimination, retaliation, compensation, employment, labor or other local, state or federal law, regulation or ordinance;
- Any amendments to the foregoing laws;
- Any benefit, payroll or other plan, policy or program, including any claim to vacation pay;
- Any public policy, contract, third-party beneficiary, tort or common law claim; or,
- Any claim for costs, fees, or other expenses including attorneys' fees.

3.      Named Plaintiffs affirm that they received this General Release on or before the day they or their counsel executed the Settlement Agreement and have been provided a 21-calendar day period to consult with counsel and consider executing this General Release.

4.      Nothing in this General Release prohibits, prevents, or otherwise limits any Named Plaintiff from filing a charge or complaint with or participating, testifying, or assisting in any investigation, hearing, or other proceeding before any federal, state, or local government agency (e.g., EEOC, NLRB, SEC) or in any legislative or judicial proceeding nor does anything in this General Release preclude, prohibit or otherwise limit, in any way, any Named Plaintiff's rights and abilities to contact, communicate with or report unlawful conduct to federal, state, or local officials for investigation or participate in any whistleblower program administered by any such agencies. However, to the maximum extent permitted by law, Named Plaintiffs agree that if such an administrative claim is made, Named Plaintiffs shall not be entitled to recover any individual monetary relief or other individual remedies.

5.      This General release shall be governed by and construed in accordance with the laws of the State of New York, without regard to choice of law principles. Any action arising out of this General Release, or to enforce any of its terms, shall be venued in the United States District Court for the Eastern District of New York before a judge sitting without a jury.

6.      This General Release shall be binding upon and shall inure to the benefit of the successors and assigns of the Parties to the Settlement Agreement, including any and all Released Parties and any individual, corporation, partnership, or other entity into or with which any Party thereto may merge, consolidate, or reorganize, each of which is entitled to enforce this General Release.

7.      This General Release may be executed in counterparts, each of which shall be deemed an original and all of which, when taken together, shall constitute one and the same instrument. The date of execution shall be the latest date on which any Named Plaintiff signs this General Release.

8.      This General Release may be delivered by facsimile or scanned signature and in counterparts, each of which shall constitute a duplicate original.

**NAMED PLAINTIFFS HAVE BEEN ADVISED THAT THEY HAVE UP TO TWENTY-ONE (21) CALENDAR DAYS TO CONSIDER THIS GENERAL RELEASE. NAMED PLAINTIFFS ALSO WERE ADVISED TO CONSULT WITH AN ATTORNEY PRIOR TO SIGNING THIS GENERAL RELEASE.  BY SIGINING THIS GENERAL RELEASE, NAMED PLAINTIFFS AFFIRM THAT THEY HAVE HAD THE OPPORTUNITY TO CONSULT AN ATTORNEY OF THEIR CHOOSING AND THAT DEFENDANTS HAVE NOT DISCOURAGED THEM FROM DOING SO.**

**NAMED PLAINTIFFS FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION, ENTER INTO THIS GENERAL RELEASE INTENDING TO WAIVE, SETTLE AND RELEASE ALL CLAIMS NAMED PLAINTIFFS HAVE OR MIGHT HAVE AGAINST RELEASEES.**

The Named Plaintiffs knowingly and voluntarily sign this Agreement and General Release as of the date(s) set forth below:

_____          _____
Nathaniel Agudelo                                             Dated


_____          _____
Helen Owens                                                    Dated


_____          _____
Holly Keith                                                      Dated


_____          _____
Amanda Cooper                                               Dated


_____          _____
Blake Boyer                                                     Dated


_____          _____
Lori Steward                                                    Dated


_____          _____
Mike Shirdel                                                    Dated


_____          _____
Jared Sawyer                                                   Dated


_____          _____
Scott Harvey                                                   Dated

# EXHIBIT

# F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------- x
NATHANIEL AGUDELO, HELEN          :
OWENS, HOLLY KEITH, AMANDA        :
COOPER, BLAKE BOYER, LORI         :
STEWARD, MIKE SHIRDEL, JARED      :
SAWYER, SCOTT HARVEY, and         :   Civil Action No. 22-cv-4004
KAREN KELLEY, on behalf of        :
themselves and others similarly situated   :
                                  :
          *Plaintiffs, and Lead*  :
          *Plaintiffs for the*    :
          *Proposed Class,*       :
  v.                              :
                                  x
RECOVCO MORTGAGE
MANAGEMENT LLC, SPROUT
MORTGAGE LLC, MICHAEL
STRAUSS, CHRISTOPHER WRIGHT,
SHEA PALLANTE, and ELLIOT
SALZMAN
          *Defendants*
--------------------------------------------------- 

## <u>COURT-AUTHORIZED NOTICE OF SETTLEMENT</u>

If you worked for Recovco Mortgage Management LLC, Sprout Mortgage LLC, Michael Strauss, Christopher Wright, Elliot Salzman, or any related entity (collectively, "Defendants") and

(1) You were employed by Sprout Mortgage between June 6, 2022 and July 31, 2022, **OR**
(2) you were employed by Sprout Mortgage in the state of California at any time between February 22, 2017, and July 6, 2022,

*YOU COULD GET A PAYMENT FROM A CLASS AND COLLECTIVE ACTION SETTLEMENT.*

> *Important: You are NOT being sued. This Notice is NOT a solicitation from a lawyer. The Court authorized this Notice.*

- The $3.5 million settlement will provide payment to former employees of Defendants. Plaintiffs brought multiple lawsuits against Defendants on behalf of themselves and all other current and former employees who worked for Defendants. *See Karen Kelley v. Sprout Mortgage, LLC and Does 1 through 50*, Case No. 30-2022-01246916-CU-OE-CXC, California Superior Court, Orange County; *Jared Sawyer and Scott Harvey, individually and on behalf of all others similarly situated and all aggrieved employees v. Sprout Mortgage, LLC, Recovco Mortgage Management LLC, Michael Strauss, Shea Pallante, Christopher Wright, Elliot Salzman, and Does 1 through 25,* Case No. 30-2022-01271017-CU-OE-CXC, California Superior Court, Orange County; and *Boyer v. Sprout, Recovco, & Strauss*, Case No. 37-2022-00029036-CU-OE-CTL,

California Superior Court, San Diego County. All four lawsuits have been consolidated into the instant action for purposes of settlement.

- With regard to all of the above claims, Defendants deny any wrongdoing and maintain they paid all employees in accordance with applicable wage and hour laws.

- The settlement resolves all claims made in the above-referenced lawsuits.

- Employees who were employed by Defendants from June 6, 2022 through July 31, 2022 and did not receive wages for work performed during that period will receive a payment based on their share of Defendants' missed payroll distributions of July 7 and 22, 2022. California employees who are not exempt from overtime requirements under California law and were employed by Defendants between February 22, 2018, and July 6, 2022 will receive a payment based on the weeks they worked and their regular rate of pay during the time period they allege Defendants failed to pay them overtime and other wages under the California labor code. All California employees, regardless of whether or not they are exempt from California's overtime requirements, will receive a $30 payment for Defendants' alleged violations of California's Fair Credit Reporting Act ("FCRA") and Investigative Consumer Reporting Agency Act ("ICRAA").

- The lawyers for the class and collective members will ask the Court for up to $1,166,550 in legal fees and expenses, plus approximately $50,000 in settlement administration costs, to be paid out of the $3.5 million award.

- Your legal rights are affected whether you act or choose not to act. Please read this notice carefully.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS LAWSUIT | |
|---|---|
| 1.  DO NOTHING | Receive a payment (see Paragraph 6). |
| 2.  OBJECT | Tell the Court about why you don't like the settlement. |
| 3.  GO  TO  A  HEARING | Speak in Court about the fairness of the settlement. |
| 4.  OPT OUT | Exclude yourself from the lawsuit. |

- These rights and options – **and the deadlines to exercise them** – are explained in this notice.

- The Court in charge of this case still has to decide whether to approve the settlement. Payments will be made if the Court approves the settlement. Please be patient.

# BASIC INFORMATION

### 1.  <u>Why did I get this notice?</u>

On [*insert date of preliminary approval*], the Court certified a class and collective action lawsuit consisting of:

- All employees of Sprout Mortgage who were employed between June 6, 2022 and July 7, 2022 (the "Shutdown Class"), who claim that all Defendants failed to pay them earned wages for work performed during that period in violation of the Fair Labor Standards Act ("FLSA"), that certain Defendants carried out a "shutdown" or "mass layoff" without notice in violation of the Worker Adjustment and Retraining Notification ("WARN") Act, and that certain Defendants violated their fiduciary duties under the Employee Retirement Income Security Act ("ERISA") by causing employees' health insurance benefits to be retroactively terminated and by failing to issue proper notices regarding COBRA insurance coverage.

- All employees of Sprout Mortgage employed in California at any time between February 22, 2018, and July 6, 2022, and who are not exempt from the overtime requirements of the California Labor Code ("California Labor Class"), who claim Defendants violated the California Labor Code in multiple ways, including by failing to pay them required overtime wages, as well as statutory meal and rest breaks, reimburse them for business expenses, pay their wages when due, and properly attribute their wages to a correct pay period.

- All Plaintiffs who were employed by Defendants in California at any time between February 22, 2017, and July 6, 2022, ("FCRA Class"), who claim that Defendants violated California's Fair Credit Reporting Act ("FCRA") and Investigative Consumer Reporting Agency Act ("ICRAA") by conducting background checks on employees without proper notice.

This means that all such people are a part of this lawsuit, and notice of this is being mailed to each person in this class. Additionally, those who worked for Sprout Mortgage in California during the relevant time period receive compensation as a member of one, two or all three of the above categories.

The Court sent you this notice because you have a right to know about a proposed settlement of a class action lawsuit, and about all of your options, before the Court decides whether to approve the settlement. If the Court approves it and after objections are heard, an administrator appointed by the Court will make the payments that the settlement allows.

The Court assigned to this case is the United States District Court for the Eastern District of New York, and the case is known as *Agudelo, et al. v. Recovco Mortgage Management LLC et al.*, Case No. 22-cv-4004. The people who brought the case are called Plaintiffs, and the companies and individuals they sued are called the Defendants.

## 2. <u>What is this collective action lawsuit about?</u>

Plaintiffs allege that Defendants' failure to pay employees wages in connection with the Sprout Mortgage shutdown of July 6, 2022, violated federal and state law. Additionally, the California lawsuits that are now consolidated with this action allege violations of the various California state labor laws. All Plaintiffs claim that they and others who worked for Defendants are entitled to unpaid minimum wages, unpaid overtime wages, statutory damages, liquidated damages, attorneys' fees, and costs.

## 3. <u>Why is this a class and collective action?</u>

The Court has found that the named Plaintiffs are representatives who may sue on behalf of Class and Collective Members who have similar claims. One court resolves the issues for all Class

and Collective Members, except for those who have excluded themselves from the Class. U.S. District Judge Joan M. Azrack is the judge assigned to review the settlement in this case.

**4.  Why is there a settlement?**

On March 16, 2023, both sides agreed, with the assistance of a mediator, to a settlement without any admission of liability by Defendant. That way, the risk and cost of a trial is avoided, payment can be made without additional months or years of litigation, and the workers affected will get compensation. The Class Representatives and their attorneys think the settlement is best for all Class and Collective Members.

# WHO IS IN THE SETTLEMENT

**5.  How do I know if I am a class member?**

Judge Azrack decided that everyone who fits one or more of the below descriptions is a Class and/or Collective Member:

- Employees who were employed by Defendants between June 6, 2022, and July 7, 2022, and who allege they did not receive wages for work performed during that period (the "Shutdown Class");

- Employees who were employed by Defendants in California at any time between February 22, 2018, and July 6, 2022, and who are not exempt from the overtime requirements of the California Labor Code (the "California Labor Class"); and

- All employees who were employed by Defendants in California at any time between February 22, 2017, and July 6, 2022 (the "FCRA Class").

You have been identified as a Class and/or Collective member. If you are still not sure whether you are included, you can call the Class Action Administrator, SSI, for more information.

# THE SETTLEMENT BENEFITS – WHAT YOU GET

**6.  How much will my payment be?**

Your share of the $3.5 million settlement fund, after the payment of attorneys' fees, case expenses and service awards, will be based on calculations performed by Plaintiffs' counsel of each class member's damages. The calculation will give each Shutdown Class member a share of the settlement fund according to their percentage of the unpaid wages from Defendants' payrolls of July 7 and 22, 2022. The calculation will give each California Labor Class member one hour of overtime pay based on each employee's regular rate of pay, up to a maximum of $1,000 per employee. Finally, the calculation will give each FCRA Class member a $30 flat award.

Because the settlement amount is less than the total amount of damages calculated in this case, each Class Member will get a percentage of the damages estimate.

**7.  How can I get a payment?**

If you do nothing, you will receive a payment if the Court approves the settlement.

**8.  When will I get a payment?**

The Court will hold a hearing on _____, 2023, at _____ to decide whether to approve the settlement. If Judge Azrack approves the settlement after that, there may be appeals

by objectors, if there are any objectors. It is always uncertain whether these appeals can be resolved, but they typically are, and thirty (30) days after they are resolved, the process of making the payments will begin..

# THE LAWYERS REPRESENTING YOU

**9. <u>Do I have a lawyer in this case?</u>**

The Court authorized the law firms of Menken Simpson & Rozger LLP in New York, NY and the California law firms of JCL Law Firm, APC; Zakay Law Group, ALPC; Soderstrom Law, PC; Forootan Law; and NosratiLaw PLC to represent you and other Class Members. These lawyers are called Class Counsel. You will not be charged for these lawyers. If you want to be represented by your own lawyer, you may hire one at your own expense.

**10. <u>How will the lawyers be paid?</u>**

Class Counsel will ask the Court to approve payment of up to about one-third of the total settlement amount, $1,166,550, for payment of legal fees and expenses, plus approximately $50,000 in settlement administration costs, to be paid out of the $3.5 million award. The fees would pay Class Counsel for investigating the facts, litigating the case, and negotiating the settlement. The Court may award less than these amounts.

Ultimately, Judge Azrack will decide how much the attorneys will receive in fees after the final approval hearing.

**11. <u>How do I tell the Court if I don't like the settlement?</u>**

If you are a Class and/or Collective Member, you can object to the settlement if you don't like any part of it. Any Class and/or Collective Member who wants to object to the proposed Settlement must file with or submit to the Settlement Administrator a timely statement of objection. To be timely, the objection must be postmarked and mailed to the Settlement Administrator, no later than _____, 2023 (the "Exclusion/Objection Deadline"). The date of the postmark on the return-mailing envelope shall be the exclusive means used to determine whether objection has been timely submitted.

The objection must contain at least the following: (i) the objector's full name, address, telephone, and signature; (ii) a clear reference to the Action; (iii) a statement describing the basis for your objection; and (iv) a statement whether the objecting person or entity intends to appear at the Fairness Hearing, either in person or through counsel and, if through counsel, a statement identifying that counsel by name, bar number, address, and telephone number. All objections shall be signed by the objecting Settlement Class or Collective Member (or his or her Legally Authorized Representative), even if the Settlement Class or Collective Member is represented by counsel.

Any Settlement Class Member (and/or his or her attorney), or any attorney working for a governmental entity, who wishes to appear in the Action to object to the Settlement or who is representing or assisting a Settlement Class Member in connection with any objection to the Settlement (including, but not limited to, by drafting or preparing papers for an objection on behalf of a Settlement Class Member) must submit to or file with the Clerk of the Court a notice of appearance no later than the Exclusion/Objection Deadline.

You cannot assert objections as a group, class, or subclass.  You may only submit objections on an individual basis, by yourself or by your attorney.

Any Settlement Class Member who does not file a timely notice of intent to object in accordance with this Section shall waive the right to object or to be heard at the Fairness Hearing and shall be forever barred from making any objection to the proposed Settlement, the Plan of Allocation, the Fee and Expense Award, and the Service Payments. Settlement Class and Collective Members who object to the proposed Settlement shall remain Settlement Class and Collective Members and shall be deemed to have voluntarily waived their right to pursue an independent remedy against Defendants and the Released Parties. To the extent any Settlement Class or Collective Member objects to the proposed Settlement, and such objection is overruled in whole or in part, such Settlement Class or Collective Member will be forever bound by the Final Approval Order and Final Judgment.

# TO EXCLUDE YOURSELF FROM THIS CLASS ACTION

**12. <u>Can I exclude myself from the lawsuit?</u>**

You have the right to exclude yourself from the class action, and receive no money from the settlement, by writing a letter stating that you wish to be excluded from the case and the settlement. The request must contain the case name and number, and be signed with your name and address printed below your signature. All requests for exclusions must be mailed to the address below and postmarked no later than ____, 2023.

Settlement Services, Inc., P.O. Box 469, Tallahassee, FL 32302-0469.

You may also email the letter to XXX@SSI, but it must be received by ____, 2023.

# THE COURT'S FINAL APPROVAL HEARING

The Court will hold a hearing to decide whether to approve the settlement. You may attend and you may speak, but you don't have to do so.

**13. <u>When and where will the Court decide whether to approve the settlement?</u>**

The Court will hold a Final Approval Hearing at _____ on _____, 2023, at the United States District Court for the Eastern District of New York, 100 Federal Plaza, Central Islip NY, 11722, at _____.  At this hearing the Court will consider whether the settlement is fair, reasonable, and adequate.  If there are objections, the Court will consider them. Judge Azrack will listen to people who wish to speak at the hearing. The Court may also decide how much to pay Class Counsel.  After the hearing, the Court will decide whether to approve the settlement.  We do not know how long these decisions will take.

**14. <u>Do I have to come to the hearing?</u>**

No.  Class Counsel will answer questions Judge Azrack may have.  But you are welcome to come at your own expense.  If you send a written objection, you don't have to come to Court to talk about it.  As long as you mailed your written objection on time to the three addresses listed above in item 11, the Court will consider it.  You may also pay your own lawyer to attend, but it's not necessary.

**15. <u>May I speak at the hearing?</u>**

Yes, you may speak at the hearing, by dialing in to the Court's telephone system by dialing XXX-XXX-XXXX and entering passcode XXXXXXX by __ AM on ___, 2023, or you may attend in person.

# IF YOU DO NOTHING

**16. <u>What happens if I do nothing at all?</u>**

If you do nothing, you will receive a settlement payment, as described above, if the Court approves the settlement.

# GETTING MORE INFORMATION

**17. <u>Are there more details about the settlement?</u>**

This notice summarizes the proposed settlement.  More details are in a Settlement Agreement.  A website has been set up at <mark>XXXXXX</mark> to provide updates and to answer frequently asked questions.  You can get a copy of the Settlement Agreement by writing to Class Counsel or by calling _____.

# INFORMATION CORRECTION FORM

Included with this Notice is an Information Correction Form. If the information on the form is incorrect, please correct it and mail it to the settlement administrator: <mark>XXXXXXXXX</mark>.

# INFORMATION CORRECTION FORM

To:  Class Members in *Agudelo et al. v. Recovco Mortgage Management Inc., et al.*, Case No. 22-cv-4004 (Eastern District of New York)

If the following information on file for you is not correct, please correct this form and mail it *promptly* to Settlement Administrator, P.O. Box 469, Tallahassee, FL 32302-0469.

## CORRECTION

Name:  [Name]                           _____

Address:  [Address]                    _____

        City, State, Zip]               _____

Social Security # (last four digits): [XXXX]        _____

Latest W-4 information at Sprout Mortgage:

        Number of exemptions:  [Exemptions]        _____

        Status:  [MarriedStatus]                   _____

[NAME]          [MAILID]
[ADDRESS]
[CITY, STATE, ZIP]

4893-7489-7766, v. 1

# EXHIBIT

# G

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF NEW YORK

```
--------------------------------------------  x
NATHANIEL AGUDELO, HELEN                       :
OWENS, HOLLY KEITH, AMANDA                     :
COOPER, BLAKE BOYER, LORI                      :
STEWARD, MIKE SHIRDEL, JARED                   :
SAWYER, SCOTT HARVEY, and                      :
KAREN KELLEY, on behalf of                     :
themselves and others similarly situated      :
                                               :
          Plaintiffs, and Lead                 :   Civil Action No. 22-cv-4004
          Plaintiffs for the                   :
          Proposed Class,                      :
   v.                                          :
                                               x
RECOVCO MORTGAGE
MANAGEMENT LLC, SPROUT
MORTGAGE LLC, MICHAEL
STRAUSS, CHRISTOPHER WRIGHT,
SHEA PALLANTE, and ELLIOT
SALZMAN
          Defendants
--------------------------------------------
```

## [PROPOSED] ORDER GRANTING PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARYA PPROVAL OF THE CLASS AND COLLECTIVE ACTION SETTLEMENT, PROVISIONAL CERTIFICATION OF THE SETTLEMENT CLASS AND COLLECTIVE, APPOINTMENT OF CLASS COUNSEL, <u>AND APPROVAL OF THE NOTICE PLAN</u>

The above-entitled matter came before the Court on Plaintiffs' Unopposed Motion for Preliminary Approval of Class and Collective Action Settlement, Proposed Notice of Settlement, and Class Action Settlement Procedure ("Motion for Preliminary Approval").

## I.    Preliminary Approval of Settlement

1.    Based on the Court's review of the Motion for Preliminary Approval and all other papers submitted in connection therewith, the Court grants preliminary approval of the settlement

1

memorialized in the Settlement Agreement and Release ("Settlement Agreement"), attached as Exhibit A to the Declaration of _____ in Support of the Motion for Preliminary Approval, and "so orders" all of its terms.

2.    The approval of a proposed class action settlement is a matter of discretion for the trial court. *See Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1995). "In exercising this discretion, courts should give proper deference to the private consensual decision of the parties." *Willix v. Healthfirst, Inc.*, 2010 U.S. Dist. LEXIS 139137, at *6 (E.D.N.Y. Nov. 12, 2010) (internal quotation marks and citation omitted) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1988)). "In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation . . . ." *Id.* (quoting *Clark v. Ecolab, Inc.*, No. 07 Civ. 8623 (PAC), 2009 U.S. Dist. LEXIS 108736 (S.D.N.Y. Nov. 17, 2009)).

3.    Preliminary approval "requires only an initial evaluation of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties." *Lizondro-Garcia v. Kefi L.L.C.*, 300 F.R.D. 169, 179 (S.D.N.Y. 2014) (internal quotation marks omitted). It simply allows notice to issue to the class and for Class Members to object to or opt-out of the settlement. After the notice period, the Court will be able to evaluate the settlement with the benefit of the Class Members' input.

4.    To grant preliminary approval, the court need only find that there is "probable cause to submit the [settlement] proposal to class members and hold a full-scale hearing as to its fairness." *In re Traffic Exec. Ass'n-E. R.R.*, 627 F.2d 631, 634 (2d Cir. 1980) (internal quotation marks and citation omitted); Newberg § 11.25 (noting that "[i]f the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness . . . and appears to fall within the range of

possible approval," the court should permit notice of settlement to the class members) (quoting Manual for Complex Litigation (3d ed.) § 30.41)).

5.      The Court concludes that the proposed Settlement Agreement is within the range of possible final settlement approval, such that notice to the class is appropriate. *See In re Traffic Exec. Ass'n*, 627 F.2d at 634.

6.      The Court finds that the Settlement Agreement is the result of extensive, arms'-length negotiations by counsel well-versed in the prosecution of wage and hour class and collective actions.

7.      An experienced class action employment mediator, Martin Scheinman, assisted the Parties with the settlement negotiations and presided over a full-day mediation. This reinforces the non-collusive nature of the settlement.  *See Kujat v. Roundy's Supermarkets*, 2021 U.S. Dist. LEXIS 161249, at *2 (N.D. Ill. Aug. 11, 2021).

## II.    Conditional Certification of the Proposed Rule 23 Settlement Class for Settlement Purposes

8.      For settlement purposes only, the Court finds that the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a), and the predominance and superiority requirements of Rule 23(b)(3) have been met warranting class certification for purposes of effectuating settlement. The Court hereby provisionally certifies for settlement purposes a "Settlement Class" meaning all members of the Shutdown Class, California Labor Class, and FCRA Class, as defined in the Settlement Agreement, who do not file a timely and compliant request to exclude themselves from the settlement.  The definitions of the relevant classes are repeated here:

a.   "California Labor Class" means all non-exempt employees of Sprout Mortgage who worked for Sprout Mortgage while residing in California between February 22, 2018, and July 6, 2022;

    b.   "Shutdown Class" means all employees of Sprout Mortgage who were employed at any time between June 6, 2022 and July 7, 2022 and did not receive wages for work performed during that period;

    c.   "FCRA Class" means all employees of Sprout Mortgage who worked for Sprout Mortgage while residing in California between February 22, 2017, and July 6, 2022.

### III.    Conditional Certification of the "FLSA Collective" Pursuant to 29 U.S.C. § 216(b)

9.    The Court also provisionally certifies the following FLSA Collective under 29 U.S.C. § 216(b) for settlement purposes only:

"Settlement Collective Member" means the members of the Settlement Collective who have filed a consent to join pursuant to 29 U.S.C. § 216(b), as well as any Settlement Collective member who endorses a settlement check in conformity with Paragraph 82 of the Settlement Agreement.

10.    Section 216(b) of the FLSA provides that plaintiffs must be "similarly situated" in order to pursue an FLSA collective action. 29 U.S.C. § 216(b).  The parties have now agreed on the definition of the FLSA Collective in the Settlement Agreement and thus there are no impediments to notifying potential Collective Members of the settlement and their right to opt into the settlement.

11.    The Court also preliminarily finds that the proposed FLSA settlement is fair and reasonable. Under *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), an FLSA settlement "should be approved if the proposed agreement 'reflects a reasonable compromise over contested issues.'" *Santiago v. Church Ave. Express Inc*., No. 18 CV 1594 (RJD) (LB), 2020 U.S. Dist. LEXIS 11508, at *4-5 (E.D.N.Y. Jan. 22, 2020) (Bloom, M.J.) (quoting *Kochilas v. Nat'l Merch. Servs*., Civil Action No. 1:14-cv-00311, 2015 U.S. Dist. LEXIS 135553, at *17 (E.D.N.Y. Oct. 2, 2015)). "Generally, there is a strong presumption in favor of finding a settlement fair, as the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Santiago*, at *5 (quoting *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013)).

determine the reasonableness of an FLSA settlement." *Santiago*, at \*5 (quoting *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013)).

12.     "In determining whether a proposed FLSA settlement is fair and reasonable, a court should consider the totality of circumstances, including but not limited to the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's length bargaining between experienced counsel; and (5) the possibility of fraud or collusion." *Santiago*, at \*6-7 (quoting *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012)) (internal alterations omitted).

13.     Critically, "[t]he standard for approval of an FLSA settlement is lower than for a Rule 23 settlement because an FLSA settlement does not implicate the same due process concerns as does a Rule 23 settlement." *Kochilas*, at \*16 (internal citations omitted); *see also Rasulev v. Good Care Agency, Inc.*, No. 16 CV 1993 (CLP), 2017 U.S. Dist. LEXIS 228063, at \*20 (E.D.N.Y. Apr. 19, 2017) (same); *Surdu v. Madison Glob., LLC*, No. 15 CV 6567, 2018 U.S. Dist. LEXIS 48356, at \*16-17 (S.D.N.Y. Mar. 23, 2018) ("[A]n FLSA settlement is examined with less scrutiny than a class action settlement" and "settlement of a collective action does not implicate the same due process concerns as the settlement of a class action"). This is because FLSA settlements typically do not bind the individuals who fail to obtain a settlement payment. The settlement here is one such settlement.

14.     Even after *Cheeks* several courts in the Eastern District have held that "[b]ecause the standard for approval of an FLSA settlement is lower than for a Rule 23 settlement, satisfaction of the *Grinnell* factor analysis satisfies the standards of approval of an FLSA settlement." *Sierra*

*v. Spring Scaffolding LLC*, No. 12-cv-05160 (JMA), 2015 U.S. Dist. LEXIS 178006, at *14 (E.D.N.Y. Sep. 30, 2015) ("[S]atisfaction of the *Grinnell* factor analysis will, necessarily, satisfy the standards of approval of the FLSA settlement."); *Ramos v. Nikodemo Operating Corp.*, No. 16-CV-1052, 2017 U.S. Dist. LEXIS 216246, at *15 (E.D.N.Y. Aug. 7, 2017) (same); *Surdu,* 2018 U.S. Dist. LEXIS 48356, at *17 (same); *Hall v. Prosource Techs., LLC*, No. 14-CV-2502 (SIL), 2016 U.S. Dist. LEXIS 53791, at *29-30 (E.D.N.Y. Apr. 11, 2016) (same).

15.    Nevertheless, whether satisfying *Grinnell* also satisfies *Cheeks* is not settled law in this Circuit, as other courts in this District have determined that at the preliminary approval stage a full *Cheeks* and *Wolinsky* review are "integral components of the Rule 23(e) preliminary class approval" process. *Douglas v. Allied Universal Sec. Servs. LLC*, 371 F. Supp. 3d 78, 82 (E.D.N.Y. 2019) (collecting cases for the proposition that a preliminary approval ruling should include a *Cheeks* and *Wolinsky* analysis).

16.    Regardless, here, this settlement also satisfies *Cheeks* and *Wolinsky*. For example, Plaintiffs have made a sufficient showing that Class Members' range of possible recovery demonstrates that the parties have reached a reasonable compromise of contested FLSA claims.

17.    Turning to the other *Wolinsky* factors, the Court finds as follows: (i) the settlement will enable the parties to avoid further protracted litigation and appeals; (ii) the seriousness of the litigation risks faced by both sides justify the parties' decision to compromise; (iii) the settlement is the product of arm's length bargaining between experienced counsel is detailed; and (iv) the settlement is untainted with fraud or collusion. Accordingly, the Court finds sufficient basis to certify the FLSA Collective for settlement purposes.

## IV.    Notices and Settlement Procedure

18.    The Court approves as Class Counsel for the classes: (i) Menken Simpson & Rozger LLP; (ii) JCL Law Firm, APC; (iii) Zakay Law Group, APLC; (iv) Soderstrom Law PC; (v) Forootan Law; and (vi) Nosrati Law.  "Collective Counsel" means the law firm of Menken Simpson & Rozger LLP.

19.    The Court approves the proposed Class and Collective Settlement Notice, attached as Exhibit __ to the Motion for Preliminary Approval, which fully and accurately inform the class members of all material elements of the action and the proposed settlement.

20.    The Court approves Settlement Services, Inc., as the Settlement Administrator.

21.    The Court finds that the Settlement Agreement satisfies all the requirements for certification of a settlement class under Rule 23(a) and 23(b)(3).

22.    The Court approves the filing of Plaintiffs' Proposed Third Amended Complaint, attached to the Motion for Preliminary Approval as Exhibit _____.

23.    Funding of the Settlement Fund shall proceed in the manner agreed upon by the Parties, as set forth in paragraphs _____ through _____ of the Settlement Agreement.

24.    The Court approves the following schedule:

a.    Within 2 calendar days of the Preliminary Approval Order, Class Counsel shall file the Third Amended Complaint.

b.    Within 14 days of the Preliminary Approval Order, but subject to the Settlement Administrator providing adequate and contractual assurances with respect to confidentiality and data security, Defendants will provide the Settlement Administrator the names and last-known street and electronic mail addresses of potential Settlement Class and Collective Members that they are able to identify following a good-faith inquiry.  The data provided to the Settlement Administrator shall remain confidential and shall not be disclosed to anyone, except as required by applicable tax authorities, pursuant to the express written consent of Defendants, or by order of the Court.  The data provided under this Section shall be used only for the purpose of administering this Settlement.

c. Within 21 days of the Preliminary Approval Order, and subject to the terms set forth in section 24(b) of this Preliminary Approval Order, the Settlement Administrator shall disseminate the approved Notice of Settlement of Class and Collective Action to Class and Collective Members in a manner that complies with the Notice dissemination described in the parties' settlement agreement at paragraphs _____ through _____.

d. The Exclusion or Objection deadline, as defined in paragraph ____ of the Settlement Agreement (the "Exclusion or Objection deadline") shall occur on the 60th day that immediately follows the date on which the Settlement Administrator disseminates Notice in accordance with the terms of section 24(b) of this Preliminary Approval Order.

e. At least 35 days before the Exclusion or Objection deadline, Class Counsel shall file a Petition for awards of attorneys' fees, costs, and service payments.

f. At least 35 days before the date on which the Fairness Hearing is scheduled, Class Counsel shall file the motion for Final Approval.

g. Any opposition(s) to Class Counsel's Petition for awards of attorneys' fees, costs, and service payments, and any opposition(s) to Class Counsel's motion for Final Approval, must be filed at least 21 days before the date on which the Fairness Hearing is scheduled.

h. The Settlement Administrator shall prepare a Declaration of Due Diligence and Proof of Notice Dissemination ("Due Diligence Declaration") with regard to the mailing of the Notice of Settlement, and any attempts by the Settlement Administrator to locate Settlement Class and Collective Members, the Settlement Administrator's receipt of valid requests for exclusion, the filing of valid opt-ins, and the Settlement Administrator's inability to deliver the Notice of Settlement to Settlement Class or Collective Members due to invalid addresses ("Due Diligence Declaration"). At least 21 days before the date on which the Fairness Hearing is scheduled, the Settlement Administrator shall transmit the Due Diligence Declaration to Class Counsel, Collective Counsel, and Defense Counsel via email.

i. Class Counsel shall file the Due Diligence Declaration with the Court at least 15 days before the date on which the Fairness Hearing is scheduled.

j. The Court will conduct a fairness hearing on , 2023, at _____, [a.m./p.m.], **which is no sooner than 21 days after the Exclusion or Objection deadline**, to address: (a) whether the proposed Settlement Agreement should be finally approved as fair, reasonable, and adequate; (b) Plaintiffs Counsel's application for attorneys' fees and costs; and (c) Plaintiffs' application for service payments. The date and time of the fairness hearing shall be set forth in the Notices,

but the fairness hearing shall be subject to adjournment by the Court pursuant to its scheduling authority without further notice to the members of the class other than that which may be posted by the Court on the docket for this civil action.

It is so ORDERED this __ day of          , 2023