**WESTERMAN BALL EDERER**
**MILLER ZUCKER & SHARFSTEIN LLP**
1201 RXR Plaza
Uniondale, New York 11556
(516) 622-9200
John E. Westerman
William C. Heuer
Todd M. Gardella
*Special Litigation Counsel to Allan B. Mendelsohn, Esq.,*
*Chapter 11 Trustee of the Estate of Sprout Mortgage LLC*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X

In re:

SPROUT MORTGAGE LLC,

                                 Debtor.

Chapter 11

Case No.:  23-72433 (REG)

-----------------------------------------------------------------------X

ALLAN B. MENDELSOHN, ESQ., CHAPTER 11
TRUSTEE OF THE ESTATE OF
SPROUT MORTGAGE LLC,

                                 Plaintiff,

              -against-

Adv. Proc. No.: 24- _____ (REG)

MICHAEL STRAUSS, RECOVCO MORTGAGE
MANAGEMENT LLC, MIDLAND AMERICAN
CAPITAL CORPORATION, SPROUT MEMBERSHIP
HOLDING, LLC, SPROUT PREFERRED HOLDINGS,
LLC, CLEEK INVESTMENT HOLDING, LLC, SMART
RATE MORTGAGE LLC, INVESTOR FUNDING CORP.,
ELIZABETH STRAUSS, KATHERINE STRAUSS,
JANE STRAUSS, AND KATHERINE STRAUSS LLC,

                                 Defendants.

-----------------------------------------------------------------------X

### COMPLAINT TO AVOID AND RECOVER FRAUDULENT
### TRANSFERS, FOR TURNOVER, FOR AN ACCOUNTING,
### AND FOR INJUNCTIVE AND FURTHER RELIEF

       Allan B. Mendelsohn, Esq., the trustee and plaintiff herein (the "Trustee" and "Plaintiff")

in the above captioned case, by and through his special litigation counsel, Westerman Ball Ederer

Miller Zucker & Sharfstein, LLP, respectfully submits this as and for his complaint (the "Complaint") against Michael Strauss ("Strauss"), Recovco Mortgage Management LLC ("Recovco"), Midland American Capital Corporation ("Midland"), Sprout Membership Holding, LLC ("Sprout Membership"), Sprout Preferred Holdings, LLC ("Sprout Preferred"), Cleek Investment Holding, LLC ("Cleek"), Smart Rate Mortgage LLC ("Smart Rate"), Investors Funding Corp. ("Investors Funding"), Elizabeth Strauss ("E. Strauss"), Katherine Strauss ("K. Strauss"), Jane Strauss ("J. Strauss") and Katherine Strauss LLC ("KS LLC") (collectively, "Defendants") to avoid and recover fraudulent transfers from Sprout Mortgage LLC (the "Debtor") to related entities and insiders, including the Defendants; for turnover of property; for an accounting; for injunctive relief and for other relief, pursuant to sections 105, 502(d), 542, 543, 544, 548, 550 and 551 of title 11 of the United States Code (the "Bankruptcy Code") and New York Debtor and Creditor Law section 273 *et seq.*, Rule 7001 of the Federal Rules of Bankruptcy Procedure *et seq.* (the "Bankruptcy Rules") and common law, and states as follows:

<u>**INTRODUCTION**</u>

1.      Defendant Strauss exploited his control over the Debtor to engage in a scheme to enrich himself at the expense of the Debtor's creditors.  Strauss engaged with members, employees and/or agents of the Debtor, and acted in concert with affiliates and insiders, to defraud the Debtor's creditors and shield its assets by funneling money from the Debtor to related entities and insiders, including himself and his family.  Upon information and belief, prior to the commencement of the Debtor's involuntary bankruptcy case on July 5, 2023, no less than $27,000,000.00 in funds (the "Funds") were transferred from the Debtor's accounts to related entities and insiders (the "Transfers").

2.      The Trustee's investigation to date has revealed that Strauss transferred funds from the Debtor, indiscriminately, as he saw fit, to related entities and ultimately to himself or in a way that benefitted him.  Strauss "layered" funds to avoid detection.  The funds which belonged to the Debtor were not used for legitimate purposes, but rather to benefit Strauss and pay his personal expenses.  By this adversary proceeding, the Trustee seeks, among other things, to recover the funds fraudulently transferred to the Defendants and Strauss, for the benefit of the Debtor's creditors.  Further, the Trustee seeks injunctive relief to prevent the Defendants from further dissipating and absconding with property belonging to and recoverable by the Debtor's estate.

## THE PARTIES, JURISDICTION AND VENUE

3.      On July 5, 2023, the Debtor's involuntary bankruptcy proceedings were commenced in the United States Bankruptcy Court for the Eastern District of New York (the "**Bankruptcy Court**").

4.      On August 11, 2023, the Bankruptcy Court entered an Order for Relief under chapter 7 of the Bankruptcy Code and Allan B. Mendelsohn, Esq. was appointed as Chapter 7 Trustee on an interim basis to administer the Debtor's bankruptcy estate.

5.      On September 29, 2023, the Debtor filed a motion seeking to convert the Debtor's chapter 7 bankruptcy case to a case under chapter 11.  By Order entered on October 20, 2023, the Bankruptcy Court granted relief and converted the Debtor's bankruptcy case to a case under chapter 11 but required that a chapter 11 operating trustee be put in place.

6.      On October 20, 2023, the Office of the United States Trustee filed a motion seeking the appointment of Allan B. Mendelsohn, Esq. as chapter 11 trustee. By Order entered that same day, the Bankruptcy Court granted the relief sought by the Office of the United States Trustee and appointed Allan B. Mendelsohn, Esq. as the chapter 11 trustee (the "**Trustee**").

7.      Upon information and belief, Defendant Strauss is an insider of the Debtor as that term is defined in section 101(31) of the Bankruptcy Code and is an individual with a residence located at 367 Great Plains Road, Southampton, New York 11968 and is the common principal in control of the corporate defendants in this action, among other entities.

8.      Upon information and belief, Defendant Recovco is an insider of the Debtor as that term is defined in section 101(31) of the Bankruptcy Code and is a Delaware limited liability company with offices at 80 Orville Drive, Bohemia, New York 11716, is owned by Strauss, and is a member of Sprout Holdings, LLC, which in turn is the sole member of the Debtor.

9.      Upon information and belief, Defendant Midland is an insider of the Debtor as that term is defined in section 101(31) of the Bankruptcy Code and is a Nevada Corporation with offices at 80 Orville Drive, Bohemia, New York 11716.

10.     Upon information and belief, Defendant Sprout Membership is an insider of the Debtor as that term is defined under section 101(31) of the Bankruptcy Code and is a Nevada limited liability company with an address at 80 Orville Drive, Bohemia, New York 11716, is owned by Strauss, and is a member of Sprout Holdings, LLC, which in turn is the sole member of the Debtor.

11.     Upon information and belief, Defendant Sprout Preferred is an insider of the Debtor as that term is defined in section 101(31) of the Bankruptcy Code and is a Delaware limited liability company with an address at 80 Orville Drive, Bohemia, New York 11716.

12.     Upon information and belief, Defendant Cleek is an insider of the Debtor as that term is defined in section 101(31) of the Bankruptcy Code and is a Delaware limited liability company with an address for service of process at The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington Delaware 19801.

13.    Upon information and belief, Defendant Investor Funding is a Colorado corporation that operates as a purported mortgage company and has an address for service of process of 4770 Baseline Road, Suite 200, Boulder, Colorado 80303.

14.    Upon information and belief, Defendant Smart Rate is a Florida limited liability company with an address of 9424 Bay Meadows Road, Suite 250 Jacksonville, Florida 32256.

15.    Upon information and belief, Defendant E. Strauss is Strauss's wife, residing at 367 Great Plains Road, Southampton, New York 11968.

16.    Upon information and belief, Defendant K. Strauss is Strauss's daughter, with a residence located at 367 Great Plains Road, Southampton, New York 11968.

17.    Upon information and belief, Defendant J. Strauss is Strauss's daughter, with a residence located at 367 Great Plains Road, Southampton, New York 11968.

18.    Upon information and belief, Defendant KS LLC is a Delaware limited liability company with an address for service of process of 367 Great Plains Road, Southampton, New York 11968, in which Strauss has a 98% ownership interest while each of his daughters, K. Strauss and J. Strauss, has a 1% interest.

19.    This Court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(a) and 1334(b).

20.    This adversary proceeding is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B), (C), (E), (H) and (O).  The Trustee consents to the entry of final orders and judgments by the Bankruptcy Court on the claims alleged herein.

21.    Venue of this adversary proceeding is proper in this district pursuant to 28 U.S.C. § 1409.

22.    The statutory predicates for the relief sought in this proceeding are 11 U.S.C. §§ 105(a), 502(d), 542, 543, 544, 548, 550 and 551, and Fed. R. Bankr. P. 7065.

## FACTS

**The Debtor's Failure and Insolvency**

23.    Prior to the involuntary bankruptcy filing, the Debtor was engaged in the business of originating, purchasing and re-selling bundles of mortgage loan portfolios across the country.

24.    At times, the Debtor serviced certain of the mortgage loans pending their ultimate sale or the assignment of the servicing obligations.

25.    The Debtor's business model lost feasibility once interest rates changed in or around March 2022.

26.    Strauss was aware that the Debtor's business was in distress, but did not retain a Chief Restructuring Officer ("**CRO**") in or around March 2022.  Rather, he continued to manage and control the Debtor and other related entity defendants from and after March 2022 until the filing of the involuntary bankruptcy petition in July 2023.

27.    In or around July 2022, the Debtor, at the direction of Strauss, abruptly terminated more than six hundred of its employees, failing to pay hundreds of thousands of dollars of outstanding wages owed and, upon information and belief, retroactively canceled various employees' health insurance benefit plans.

28.    The foregoing precipitated the filing of a Fair Labor Standards Act Complaint commenced in the United States District Court for the Eastern District Court of New York on July 8, 2022, titled *Agudelo v. Recovco Mortgage Management LLC, et al*, Civil Case No. 22-cv-4004 (the "**FLSA Action**").  Other actions were commenced in California on similar wage claims.

29.    At or around this same point in time:

6

- The Debtor and certain of its related entities were in substantial arrears for various state and federal taxes;

- The Debtor and its professionals were in the process of interviewing and consulting with various bankruptcy and turnaround professionals; and

- The individuals in management and control of the Debtor and its related entities were conducting various questionable inter-company transfers of monies to and from various accounts within their control.

30.    Despite the termination of employees and related business failings in July 2022, Strauss still did not retain a CRO for the Debtor at that time.

31.    As of September 30, 2022, the Debtor and Recovco had accumulated large debt balances for unpaid payroll taxes.  Defendants' financial documents reveal they collected millions of dollars' worth of payroll taxes from employees but did not forward these payments to the IRS beginning June 2017.[1]

32.    The Debtor has admitted that the Internal Revenue Service has "a large claim for payroll taxes" that were not paid.

33.    In 2020, the Debtor and Recovco received approximately $6.2 million and $600,000, respectively, in government funds in 2020 through the Paycheck Protection Program ("PPP"), while owing approximately $15.5 million in unpaid payroll taxes.

34.    Despite being a co-defendant in the FLSA Action and personally liable on a substantial amount of the indebtedness of the related entity defendants, Strauss has admittedly maintained control of the liquidation efforts and transfer of monies among the corporate defendants since the termination of the Debtor's employees in July 2022.

---

[1] During this time, Strauss also failed to pay millions in personal income taxes he owes. In 2021 alone, he failed to pay over $7 million in income taxes which are still outstanding today.

35.     Although a CRO candidate was recommended to Strauss, Strauss chose to remain in control and ultimately made decisions concerning retention of counsel and proposed settlement terms of indebtedness, including which debts to pay, at all times relevant to this Complaint.

36.     According to Strauss, a CRO was paid a retainer by the Debtor in or around November 2022.  This is eight (8) months before the commencement of the involuntary bankruptcy proceeding that was filed against the Debtor in July 2023.

37.     In September 2023, Strauss asserted that he determined not to utilize the services of the proposed CRO in light of the filing of the involuntary bankruptcy proceeding.

38.     Because Strauss was in many instances co-liable on certain indebtedness, he was hopelessly conflicted and should have stepped down as the decisionmaker regarding wind-down decisions and should not have attempted to act as a fiduciary for the benefit of creditors.  Instead, Strauss directed transfers for the benefit of his own self-interest, to the detriment of the estate's creditors.  Strauss could have utilized the services of an independent CRO to make decisions, at least from and after November 2022 – but he chose not to.

39.     During the period of time when the corporate defendants' payroll tax liabilities were increasing, and they were receiving millions of dollars in government funds meant to help struggling businesses during the COVID-19 pandemic, Defendant Strauss received millions of dollars in net transactions to him personally, not including payments to LLCs that were directly controlled by him or in which he had a substantial financial interest.

40.     The millions of dollars in payments to Strauss left Sprout in a weakened financial state, by depleting its cash reserves such that the company was left vulnerable against the decline in the real estate market.

41.     The Schedules show that just $13.49 remained in the Debtor's bank accounts as of September 2023.

42.     Upon information and belief, the Debtor's failure and insolvency was caused by Strauss's longstanding scheme to siphon money out of the business, not simply changing market conditions.

**Strauss's Layering Scheme Using Recovco and Midland To Deplete The Debtor's Assets**

43.     Forensic accountants retained by plaintiffs in the FLSA Action determined, after analysis of records that Strauss provided, that Strauss received net transfers totaling $24.4 million between January 2020 and September 2022, in large part through transfers involving Recovco.

44.     Forensic accountants retained by the Trustee have similarly determined that Strauss received significant net transfers of funds from the Debtor for many years predating the bankruptcy filing.

45.     Upon information and belief, at all relevant times prior to the Petition Date, Strauss maintained firm control over the Debtor and each of the corporate defendants and exploited them for his own benefit.

46.     Strauss received millions of dollars up to and after the date Sprout was shut down on July 6, 2022.  He received approximately $3.5 million from January 2022 through July 12, 2022 alone, including:

- $1,335,000 in January 2022
- $525,000 in February 2022
- $730,000 in March 2022
- $300,000 in April 2022
- $455,000 in May 2022
- $50,000 in June 2022
- $130,000 on July 12, 2022

47.     The Trustee's forensic accountants have determined that, during the two years preceding the Petition Date alone, the Debtor transferred at least $6.58 million directly to Recovco and $1.20 million directly to Midland out of its operating account, for a total of $7.78 million in transfers to these entities, which were controlled by Strauss.

48.     Upon information and belief, these transfers had no legitimate business purpose. The Debtor's general ledger provides no description of a business purpose and the testimony of various individuals employed by or otherwise involved with the operation of the Debtor and/or Strauss-related entities establishes that all transfers of funds were conducted at the exclusive direction of Strauss.

49.     Strauss's joint account with his wife, E. Strauss, maintained at Wells Fargo Bank (x6578) (the "Strauss Personal Account") received approximately $10.59 million from Midland during the two-year period preceding the Petition Date.  The $10.59 million of transfers from Midland account x3421 were identified as "Wire Transfers to Michael Strauss" in the bank statements.  A forensic investigation further revealed the primary source of funds transferred from Midland to the Strauss Personal Account can be traced back to the Debtor's account at Metropolitan Commercial Bank ending in 3529.

50.     The following diagram illustrates the transfer of funds involving these accounts during the two years prior to the Petition Date:



51.     While the above illustration is merely a snapshot of the transfer of funds during the two-year period prior to the Petition Date, bank statements and other documents reveal that this same pattern of Debtor funds being transferred to Strauss via Recovco and Midland dates back much further.

52.     For example, approximately $30.2 million in funds from the Debtor was transferred to Recovco between July 2020 and September 2022, with $16 million being transferred back to the Debtor from Recovco, resulting in a net benefit to Recovco of approximately $14.7 million. During this same period, $18.2 million was transferred from Recovco to Midland.  The Debtor's president, Shea Pallante, has testified that the Debtor had no business relationship with Recovco such that that Sprout would owe or have to pay money to Recovco.  Recovco's president, Craig Pino, testified that he has no understanding of the funds which Recovco received, or why it transferred or paid money to anyone.  Both the president of the Debtor and of Recovco testified that Strauss gave all the orders regarding money for the Debtor and for Recovco.  There is no legitimate business reason for the transfers among the Debtor, Recovco, Midland and Strauss.

53.     This pattern of transactional activity has the hallmarks of money laundering. Strauss engaged in "layering" the funds through one or more transactions or movements that distance the funds from their initial source, which is the Debtor. The Debtor's funds were routinely transferred through and between Recovco and Midland, both Strauss-controlled accounts, before ultimately being transferred to Strauss' personal accounts.

54.     In fact, funds were regularly transferred on the *same day*, for the *same dollar amount*, from the Debtor account to Recovco and/or Midland, and further onto Strauss during the two-year period prior to the Petition Date.  The following chart illustrates this pattern of "layering":

| Transfer Date | Sprout Mortgage LLC x3529 | | Recovco Mortgage Management LLC x3405 | | Midland American Capital Corporation x3421 | | Michael Strauss x6578 | |
|---|---|---|---|---|---|---|---|---|
| 7/8/21 | $ 225,000 | → | $ 225,000 | → | $ 225,000 | → | | $ 225,000 |
| 9/10/21 | 600,000 | → | 300,000 | → | 300,000 | → | | 300,000 |
| 10/14/21 | 175,000 | → | 175,000 | → | 175,000 | → | | 175,000 |
| 12/14/21 | 400,000 | → | 450,000 | → | 450,000 | → | | 450,000 |
| 1/3/22 | 650,000 | → | 650,000 | → | 650,000 | → | x6578 | 650,000 |
| 1/10/22 | 250,000 | → | 250,000 | → | 250,000 | → | x6578 | 250,000 |
| 3/29/22 | 125,000 | → | 125,000 | → | 125,000 | → | x6578 | 125,000 |
| 4/25/22 | 200,000 | → | 200,000 | → | 200,000 | → | x6578 | 200,000 |
| 5/17/22 | 80,000 | → | 80,000 | → | 80,000 | → | x6578 | 80,000 |
| 6/30/22 | 25,000 | → | 25,000 | → | 25,000 | → | x6578 | 25,000 |
| 9/7/21 | 2,100,000 | | | → | 2,100,000 | → | | 2,100,000 |
| 2/15/22 | 300,000 | | | → | 300,000 | → | x6578 | 300,000 |

55.    There is no legitimate business purpose for the funds to filter through multiple accounts in order to transfer to Strauss.

56.    Strauss's layering scheme is so blatant that, on many occasions, the initial funding from the Debtor's account to Recovco and Midland was the only source of funds for the subsequent transfers to Strauss.  Without the transfer of Debtor's funds, there were insufficient balances in the Recovco and Midland accounts to fund the Strauss transfers.  An example of this can be seen in the following excerpt of transactions fun through the Recovco x3405 account, Midland x3421 account and Midland x3421 account:

| Entity | Bank Acct | Debit / Outgoing | Credit / Incoming | Balance |
|---|---|---|---|---|
| **Sprout Mortgage LLC** | **3529** | | | |
| 07/08/2021    Transfer to DDA 3405 | | $225,000.00 | | $2,752,661.30 |
| **Recovco Mortgage Management LLC** | **3405** | | | |
| 07/08/2021    Transfer from DDA 3529 | | | $225,000.00 | $251,293.22 |
| 07/08/2021    Transfer to DDA 3421 | | $225,000.00 | | $26,293.22 |
| **Midland American Capital Corporation** | **3421** | | | |
| 07/08/2021    Transfer from DDA 3405 | | | $225,000.00 | $225,518.39 |
| 07/08/2021    WIRE TO Michael Strauss | | $225,000.00 | | $518.39 |

57.     It is evident that Strauss exploited his control over these entities and their bank accounts to fraudulently transfer funds from the Debtor with actual intent to hinder, delay and defraud the creditors of the Debtor, and benefit himself as an insider.  There was no legitimate business purpose, nor any reasonably equivalent value exchanged for these and many other transfers.  Strauss used the monies derived from the Debtor to benefit himself and his family members.

**Strauss's Additional Transfers and Fraudulent Activity**

58.     Though Recovco and Midland appear to be the entities most frequently exploited by Strauss to layer his illicit transfers of funds from the Debtor, they are not the only vehicles used by Strauss to accomplish his fraudulent self-dealing.  The other defendants are named in this Adversary Proceeding because the evidence available thus far shows them to have been initial, immediate or mediate transferees, or beneficiaries of avoidable transfers, as the case may be, for particular transactions.  Thus, the Trustee may recover, for the benefit of the estate, the value of the funds transferred to or through them, pursuant to section 550 of the Bankruptcy Code, section 273(a)(1) of the New York Debtor & Creditor Law, and other applicable law.

59.     A review of the Strauss Personal Account reveals that he paid exorbitant amounts of personal expenses with the Debtor's funds, including:

- $2.3 million in payments for properties he owned at 610 Park Ave Apt 16e, New York, New York, and at 367 Great Plains Rd, Southampton, New York;

- $1.2 million in payments relating to horse racing/breeding for his daughter, Katherine Strauss;

- $610k for American Express related payments; and

- $69k in payments related to SMU University where his daughter Jane Strauss attended college.

60.     The records for the Strauss Personal Account further reveal that Strauss made transfers to many other bank accounts held by him, his family members and other personally owned entities.

61.     In addition to transfers made directly by Strauss from the Strauss Personal Account, he also caused the Debtor to make transfers to other corporate entities over which he had sole control, was the beneficial owner or which were held in the names of Strauss's family members.

62.     From 2020 to September 2022, Strauss directed transfers of funds from the Debtor to Defendants Sprout Membership, Sprout Preferred and Cleek, which, upon information and belief, received net distributions of approximately $7.3 million.

63.     Funds were also funneled into and through Smart Rate, a company owned by Strauss's wife.  The testimony of E. Strauss, however, reveals that she knows very little about her own company and that her husband was really in control and handled the bank accounts. The bank records show that significant funds were transferred here by Strauss personally and through Recovco and KS LLC.  Strauss, in turn, caused funds to be paid out of Smart Rate to E. Strauss, Pallante and Investors Funding, among others.

64.     After Sprout Mortgage shut down on July 6, 2022, roughly $2.1 million was transferred into Strauss' bank account from KS LLC.  Upon information and belief, Strauss used this money in part to pay almost $100,000 of charges on his personal American Express credit card.

65.     Strauss has admitted to transferring funds of the Debtor with the intent to remove them from the reach of the Debtor's creditors.  For example, at the 341(a) Meeting of Creditors conducted by the Trustee in this bankruptcy case, Strauss admitted to transferring funds from the

Debtor to put them out of reach of the Debtor's creditors so that he could use the funds toward a settlement of claims against him in the FLSA Action.

**AS AND FOR A FIRST CAUSE OF ACTION
TO AVOID AND RECOVER FRAUDULENT TRANSFERS
PURSUANT TO SECTIONS 548(a)(1)(A), 550 and 551 OF THE BANKRUPTCY CODE
(Against All Defendants)**

66.     The Trustee repeats and realleges each and every allegation contained in the foregoing paragraphs as if each were more fully set forth herein.

67.     Pursuant to sections 548(a)(1)(A) and 550 of the Bankruptcy Code, the Trustee may avoid and recover any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within two (2) years of the Petition Date, if the debtor voluntarily or involuntarily made such transfer or incurred such obligation with the actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted.

68.     As described above, certain funds were transferred to one or more of the Defendants which constituted transfers of an interest in property of the Debtors to such Defendants during the two (2) year period immediately prior to the Petition Date.  The total transfers and amounts shall be established by evidence proffered at trial.

69.     Upon information and belief, these transfers were made with the actual intent to hinder, delay or defraud the Debtors' creditors.

70.     Among the badges of fraud at or near the time of the transfers: (i) Strauss caused money to be transferred from the Debtor, utilizing the corporate defendants to funnel money to himself or for his benefit, such as paying his personal obligations or those of his family members; (ii) pursuant to these transfers, the Debtor removed property from the reach of its creditors; (iii) the Debtor did not receive equivalent value in exchange for the transfers; (iv) the Debtor was

insolvent at the time of the transfers or became insolvent as a result of transfers, the substantial unpaid taxes owed (with more than ten states having filed claims, as well as the IRS claim for $27,850,155.14) and/or the millions in unpaid wages and other liabilities as claimed in the FLSA Action; (v) Strauss was misusing the Debtor and one or more of the defendants in various fraudulent or deceptive schemes at the time of the transfers (vi) Strauss caused the Debtor to misuse and misappropriate trust fund taxes that were not the Debtor's property; and (vii) the Debtor was not paying its debts as they became due.

71.    As a result of the above, the Trustee may avoid these transfers pursuant to section 548(a)(1)(A) of the Bankruptcy Code.

72.    Pursuant to section 551 of the Bankruptcy Code, the avoided transfers are preserved for the benefit of the estate.

73.    Pursuant to section 550 of the Bankruptcy Code, in a fraudulent conveyance action commenced under section 548(a)(1)(A) of the Bankruptcy Code, the trustee may recover for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from (i) the initial transferee of such transfer or the entity for whose benefit such transfer was made, or (ii) any immediate or mediate transferee of such initial transferee that lacks good faith in receipt of such transfer and lacks knowledge of the voidability of the transfer avoided.

74.    As described above, the Trustee may recover the transfers and/or value of the transfers as against the Defendants which, upon information and belief, are initial transferees, parties that benefitted from the initial transfers, immediate transferees and/or mediate transferees.

**AS AND FOR A SECOND CAUSE OF ACTION**
**TO AVOID AND RECOVER FRAUDULENT TRANSFERS**
**PURSUANT TO SECTIONS 548(a)(1)(B), 550 and 551 OF THE BANKRUPTCY CODE**
**(Against All Defendants)**

75.     The Trustee repeats and realleges each and every allegation contained in the foregoing paragraphs as if each were more fully set forth herein.

76.     Pursuant to sections 548(a)(1)(B) and 550 of the Bankruptcy Code, the Trustee may avoid and recover any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within two (2) years of the Petition Date, if the debtor voluntarily or involuntarily:

(i) received less than equivalent value in exchange for such transfer or obligation; and

(ii)     (I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

(II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;

(III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or

(IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of any insider, under an employment contract and not in the ordinary course of business.

77.     As described above, certain funds were transferred to or through one or more of the Defendants which constituted transfers of an interest in property of the Debtor to such Defendants during the two (2) year period immediately prior to the Petition Date.  The total transfers and amounts shall be established by evidence proffered at trial.

78.     Upon information and belief, the Debtor received less than equivalent value in exchange for one or more of these transfers and the Debtor was insolvent on the date that such

transfer was made, or became insolvent as a result of such transfer, the substantial unpaid taxes owed (with more than ten states having filed claims, as well as the IRS claim for $27,850,155.14) and/or the millions in unpaid wages and other liabilities as claimed in the FLSA Action.

79.    Upon information and belief, the Debtor received less than equivalent value in exchange for one or more of these transfers and the Debtor was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the Debtor was an unreasonably small capital.

80.    Upon information and belief, the Debtor received less than equivalent value in exchange for one or more of these transfers and the Debtor intended to incur, or believed that it would incur, debts that would be beyond its ability to pay as such debts matured.

81.    Upon information and belief, the Debtor received less than equivalent value in exchange for one or more of these transfers and the Debtor made such transfers to or for the benefit of an insider, or incurred such obligation to or for the benefit of any insider, under an employment contract and not in the ordinary course of business.

82.    As a result of the above, the Trustee may avoid the transfers pursuant to section 548(a)(1)(B) of the Bankruptcy Code.

83.    Pursuant to section 551 of the Bankruptcy Code, the avoided transfers are preserved for the benefit of the estate.

84.    Pursuant to section 550 of the Bankruptcy Code, in a fraudulent conveyance action commenced under section 548(a)(1)(B) of the Bankruptcy Code, the trustee may recover for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from (i) the initial transferee of such transfer or the entity for whose benefit such transfer was

made, or (ii) any immediate or mediate transferee of such initial transferee that lacks good faith in receipt of such transfer and lacks knowledge of the voidability of the transfer avoided.

85.     As described above, the Trustee may recover the transfers and/or value of the transfers as against the Defendants which, upon information and belief, are initial transferees, parties that benefitted from the initial transfers, immediate transferees and/or mediate transferees.

**AS AND FOR A THIRD CAUSE OF ACTION
TO AVOID AND RECOVER FRAUDULENT TRANSFERS
PURSUANT TO SECTIONS 544, 550, 551 OF THE BANKRUPTCY CODE
AND NEW YORK DEBTOR & CREDITOR LAW SECTION 273(a)(1)
(Against All Defendants)**

86.     The Trustee repeats and realleges each and every allegation contained in the foregoing paragraphs as if each were more fully set forth herein.

87.     Pursuant to section 544 of the Bankruptcy Code and section 273(a)(1) of the New York Debtor & Creditor Law, the Trustee may avoid and recover any transfer made or obligation incurred by a debtor as to a creditor within four (4) years of the Petition Date, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation with actual intent to hinder, delay or defraud any creditor of the debtor.

88.     As described above, certain funds were transferred to one or more of the Defendants which constituted transfers of an interest in property of the Debtors to such Defendants during the four (4) year period immediately prior to the Petition Date.  The total transfers and amounts shall be established by evidence proffered at trial.

89.     Upon information and belief, these transfers were made with the actual intent to hinder, delay or defraud the Debtors' creditors or any one of them.

90.     Among the badges of fraud at or near the time of the transfers: (i) Strauss caused money to be transferred from the Debtor, utilizing the corporate defendants to funnel money to himself or for his benefit, such as paying his personal obligations or those of his family members; (ii) pursuant to these transfers, the Debtor removed property from the reach of its creditors; (iii) the Debtor did not receive equivalent value in exchange for the transfers; (iv) the Debtor was insolvent at the time of the transfers or became insolvent as a result of transfers, the substantial unpaid taxes owed (more than ten states have filed claims, as well as the IRS claim for $27,850,155.14) and/or the millions in unpaid wages and other liabilities as claimed in the FLSA Action; (v) Strauss was misusing the Debtor and one or more of the defendants in various fraudulent or deceptive schemes at the time of the transfers (vi) Strauss caused the Debtor to misuse and misappropriate trust fund taxes that were not the Debtor's property; and (vii) the Debtor was not paying its debts as they became due.

91.     As a result of the above, the Trustee may avoid the transfers pursuant to section 544 of the Bankruptcy Code and section 273(a)(1) of the New York Debtor & Creditor Law.

92.     Pursuant to section 551 of the Bankruptcy Code, the avoided transfers are preserved for the benefit of the estate.

93.     Pursuant to section 550 of the Bankruptcy Code, in a fraudulent conveyance action commenced under section 544 of the Bankruptcy Code and section 273(a)(1) of the New York Debtor & Creditor Law, the trustee may recover for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from (i) the initial transferee of such transfer or the entity for whose benefit such transfer was made, or (ii) any immediate or mediate transferee of such initial transferee that lacks good faith in receipt of such transfer and lacks knowledge of the voidability of the transfer avoided.

94.     As described above, the Trustee may recover the transfers and/or value of the transfers as against the Defendants which, upon information and belief, are initial transferees, parties that benefitted from the initial transfers, immediate transferees and/or mediate transferees.

**AS AND FOR A FOURTH CAUSE OF ACTION
TO AVOID AND RECOVER FRAUDULENT TRANSFERS
PURSUANT TO SECTIONS 544, 550 AND 551 OF THE BANKRUPTCY CODE
AND NEW YORK DEBTOR & CREDITOR LAW SECTION 273(a)(2)
(Against All Defendants)**

95.     The Trustee repeats and realleges each and every allegation contained in the foregoing paragraphs as if each were more fully set forth herein.

96.     Pursuant to section 544 of the Bankruptcy Code and section 273(a)(2) of the New York Debtor & Creditor Law, the Trustee may avoid and recover any transfer made or obligation incurred by a debtor as to a creditor within four (4) years of the Petition Date, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

> (i) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

> (ii) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

97.     Here, certain funds were transferred to one or more of the Defendants which constituted transfers of an interest in property of the Debtor to such Defendants during the four (4) year period immediately prior to the Petition Date.  The total transfers and amounts shall be established by evidence proffered at trial.

21

98.     Upon information and belief, the Debtor made one or more of the transfers without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the Debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction.

99.     Upon information and belief, the Debtor made one or more of the transfers without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the Debtor intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

100.    As a result of the above, the Trustee may avoid the transfers pursuant to section 544 of the Bankruptcy Code and section 273(a)(2) of the New York Debtor & Creditor Law.

101.    Pursuant to section 551 of the Bankruptcy Code, the avoided transfers are preserved for the benefit of the estate.

102.    Pursuant to section 550 of the Bankruptcy Code, in a fraudulent conveyance action commenced under section 544 of the Bankruptcy Code and section 273(a)(2) of the New York Debtor & Creditor Law, the trustee may recover for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from (i) the initial transferee of such transfer or the entity for whose benefit such transfer was made, or (ii) any immediate or mediate transferee of such initial transferee that lacks good faith in receipt of such transfer and lacks knowledge of the voidability of the transfer avoided.

103.    As described above, the Trustee may recover the transfers and/or value of the transfers as against the Defendants which, upon information and belief, are initial transferees, parties that benefitted from the initial transfers, immediate transferees and/or mediate transferees.

**AS AND FOR A FIFTH CAUSE OF ACTION
TO AVOID AND RECOVER FRAUDULENT TRANSFERS
PURSUANT TO SECTIONS 544, 550 AND 551 OF THE BANKRUPTCY CODE
AND NEW YORK DEBTOR & CREDITOR LAW SECTION 274(a)**
(Against All Defendants)

104.    The Trustee repeats and realleges each and every allegation contained in the foregoing paragraphs as if each were more fully set forth herein.

105.    Pursuant to section 544 of the Bankruptcy Code and section 274(a) of the New York Debtor & Creditor Law, the Trustee may avoid and recover any transfer made or obligation incurred by a debtor as to a creditor within four (4) years of the Petition Date, if the transfer was made or obligation incurred by a debtor to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

106.    As described above, certain funds were transferred to one or more of the Defendants which constituted transfers of an interest in property of the Debtors to such Defendants during the four (4) year period immediately prior to the Petition Date.  The total transfers and amounts shall be established by evidence proffered at trial.

107.    Upon information and belief, the Debtor made one or more of the transfers to a creditor whose claim arose before the transfer was made without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

108.    As a result of the above, the Trustee may avoid the transfers pursuant to section 544 of the Bankruptcy Code and section 274(a) of the New York Debtor & Creditor Law.

109.     Pursuant to section 551 of the Bankruptcy Code, the avoided transfers are preserved for the benefit of the estate.

110.     Pursuant to section 550 of the Bankruptcy Code, in a fraudulent conveyance action commenced under section 544 of the Bankruptcy Code and section 274(a) of the New York Debtor & Creditor Law, the trustee may recover for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made, or (2) any immediate or mediate transferee of such initial transferee that lacks good faith in receipt of such transfer and lacks knowledge of the voidability of the transfer avoided.

111.     As described above, the Trustee may recover the transfers and/or value of the transfers as against the Defendants which, upon information and belief, are initial transferees, parties that benefitted from the initial transfers, immediate transferees and/or mediate transferees.

**AS AND FOR A SIXTH CAUSE OF ACTION
TO AVOID AND RECOVER FRAUDULENT TRANSFERS
PURSUANT TO SECTIONS 544, 550 AND 551 OF THE BANKRUPTCY CODE
AND NEW YORK DEBTOR & CREDITOR LAW SECTION 274(b)**
**(Against All Defendants)**

112.     The Trustee repeats and realleges each and every allegation contained in the foregoing paragraphs as if each were more fully set forth herein.

113.     Pursuant to section 544 of the Bankruptcy Code and section 274(b) of the New York Debtor & Creditor Law, the Trustee may avoid and recover any transfer made by a debtor as to a creditor within one (1) year of the Petition Date, if the transfer was made by a debtor to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.

114.    Upon information and belief, certain funds were transferred to one or more of the Defendants who were insiders for an antecedent debt.

115.    The Debtor was insolvent at the time of the transfers or became insolvent as a result of transfers, the substantial unpaid taxes owed (more than ten states have filed claims, as well as the IRS claim for $27,850,155.14) and/or the millions in unpaid wages and other liabilities as claimed in the FLSA Action.

116.    Upon information and belief, the insider had reasonable cause to believe that the Debtor was insolvent.

117.    As a result of the above, the Trustee may avoid the transfers pursuant to section 544 of the Bankruptcy Code and section 274(b) of the New York Debtor & Creditor Law.

118.    Pursuant to section 551 of the Bankruptcy Code, the avoided transfers are preserved for the benefit of the estate.

119.    Pursuant to section 550 of the Bankruptcy Code, in a fraudulent conveyance action commenced under section 544 of the Bankruptcy Code and section 274(b) of the New York Debtor & Creditor Law, the trustee may recover for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from (i) the initial transferee of such transfer or the entity for whose benefit such transfer was made, or (ii) any immediate or mediate transferee of such initial transferee that lacks good faith in receipt of such transfer and lacks knowledge of the voidability of the transfer avoided.

120.    As described above, the Trustee may recover the transfers and/or value of the transfers as against the Defendants which, upon information and belief, are initial transferees, parties that benefitted from the initial transfers, immediate transferees and/or mediate transferees.

### AS AND FOR A SEVENTH CAUSE OF ACTION
### FOR DISALLOWANCE OF DEFENDANTS' CLAIMS

**PURSUANT TO SECTION 502(d) OF THE BANKRUPTCY CODE**
**(Against All Defendants)**

121.    The Trustee repeats and realleges each and every allegation contained in the foregoing paragraphs as if each were more fully set forth herein.

122.    Defendants are parties from which property is recoverable under section 550 of the Bankruptcy Code or are transferees of a transfer or obligation avoidable under sections 544 and 548 of the Bankruptcy Code.

123.    Defendants have not paid the amount or turned over any property transferred for which Defendants are liable under section 550 of the Bankruptcy Code.

124.    Any filed or scheduled claims held by Defendants are disallowed until such Defendants pay in full or return the property for which they are liable under section 550 of the Bankruptcy Code.

**AS AND FOR AN EIGHTH CAUSE OF ACTION**
**FOR TURNOVER OF PROPERTY OF THE ESTATE**
**AND DEMAND FOR AN ACCOUNTING**
**PURSUANT TO SECTION 542 OF THE BANKRUPTCY CODE**

125.    The Trustee repeats and realleges each and every allegation contained in the foregoing paragraphs as if each were more fully set forth herein.

126.    The funds that were transferred to the Defendants belonged to the Debtor.

127.    The funds were, prior to the Petition Date, the Debtor's property.

128.    The funds remain, in the postpetition period, the Debtor's property.

129.    The Trustee continues in his demands that the Defendants return the funds to the Trustee.

130.    Defendants are aware of the Debtor's bankruptcy proceedings.

131.    Defendants have not returned the funds to the Trustee.

132.    The Trustee seeks the turnover of property of the estate pursuant to section 542 of the Bankruptcy Code and demands an accounting.

133.    The Defendants' and the Debtor's interests, disclosed and non-disclosed, constitute property of the estate to be recovered and administered by the Trustee pursuant to section 542 of the Bankruptcy Code.

134.    Accordingly, the Trustee is entitled to immediate payment and turnover of the interests in the Defendants and of any and all transfers made by the Debtor, directly or indirectly.

135.    The Trustee is entitled to an accounting of all the funds dissipated by the Debtor through the Defendants.

136.    By reason of the foregoing, the Trustee is entitled to judgment against the Defendants pursuant to Bankruptcy Code section 542 (i) requiring an accounting of all the funds dissipated by the Debtor through the Defendants; (ii) requiring that the funds be returned to the Trustee in full, and/or (iii) for monetary damages in the amount to be determined at trial, plus (iv) interest, attorneys' fees, and costs as may be appropriate.

### AS AND FOR A NINTH CAUSE OF ACTION
### FOR THE IMPOSITION OF AN EQUITABLE LIEN

137.    The Trustee repeats and realleges each and every allegation contained in the foregoing paragraphs as if each were more fully set forth herein.

138.    The Trustee is the legal title holder of all property of the Debtor.

139.    The fraudulent transfers to Strauss and the Defendants were all part of the scheme to defraud the Debtor's creditors.

140.    The transfers to the Defendants allowed them to be unjustly enriched to the detriment of the Debtor's creditors.

141.    It is against equity and good conscience to permit the Defendants to retain the funds or the value thereof since they properly belong to the Debtor.  Consequently, an equitable lien should be imposed against such funds and the value thereof held by the Defendants.

## AS AND FOR A TENTH CAUSE OF ACTION
## SEEKING AN INJUNCTION

142.    The Trustee repeats and realleges each and every allegation contained in the foregoing paragraphs as if each were more fully set forth herein.

143.    The Trustee seeks the entry of a temporary and permanent injunction against the Defendants pursuant to Fed. R. Civ. P. 65 as incorporated by Fed. R. Bankr. P. 7065, section 105(a) of the Bankruptcy Code, and section 276(a)(3)(i) of the New York Debtor & Creditor Law.

144.    Given the allegations against the Defendants, and the facts and circumstances surrounding the actions of Strauss and the Debtor in using the Defendants to defraud the Debtor's creditors, it is necessary and appropriate for a preliminary and a permanent injunction to issue against the Defendants, their officers, directors, agents, shareholders, members, and all others in custody, possession or control of funds or other property that is the subject of this action, to fully protect the interests of the estate and safeguard against any further fraudulent conveyances.

## AS AND FOR AN ELEVENTH CAUSE OF ACTION
## FOR UNJUST ENRICHMENT

145.    The Trustee repeats and realleges each and every allegation contained in the foregoing paragraphs as if each were more fully set forth herein.

146.    The Trustee is the legal title holder of all property of the Debtor.

147.    Defendants received funds from the Debtor.

148.    Defendants had knowledge that the funds were transferred fraudulently and/or without consideration.

149.    By receiving such funds, Defendants were unjustly enriched at the expense of the Debtor.

150.    By reason of the foregoing, Plaintiff is entitled to payment from Defendants, and the imposition of a constructive trust against them, in an amount to be determined at trial.

**AS AND FOR A TWELFTH CAUSE OF ACTION
FOR CONVERSION**

151.    The Trustee repeats and realleges each and every allegation contained in the foregoing paragraphs as if each were more fully set forth herein.

152.    Defendants or some of them intentionally and without authority assumed or exercised control over specifically identifiable funds received from the Debtor.

153.    The Debtor has a possessory right and interest in the specifically identifiable funds received from the Debtor.

154.    Defendants' domination over and/or interference with the specifically identifiable funds received from the Debtor is in derogation of the Debtor's rights.

155.    Defendants have retained the funds from the Debtor for an unauthorized purpose.

156.    As a direct and proximate result of Defendants' conversion of the Debtor's property, Plaintiff has been damaged in an amount to be determined at trial, plus interest and all costs, attorneys' fees and expenses.

**AS AND FOR A THIRTEENTH CAUSE OF ACTION
FOR ATTORNEYS FEES PURSUANT TO SECTION 276-A OF
THE NEW YORK DEBTOR & CREDITOR LAW**

157.    The Trustee repeats and realleges each and every allegation contained in the foregoing paragraphs as if each were more fully set forth herein.

158.    Pursuant to section 276-a of the New York Debtor & Creditor Law, in an action where a bankruptcy trustee successfully obtains a judgment to set aside a conveyance by a debtor

on grounds of actual intent to hinder, delay or default either present or future creditors, the Court

shall fix the reasonable attorney's fees of the bankruptcy trustee, who shall have judgment therefor

against the debtor and the transferees who are defendants in addition to the other relief granted by

the judgment.

159.    As alleged above, the transfers at issue were made with the actual intent to hinder,

delay or default present and future creditors.

160.    Consequently, upon obtaining judgment on such grounds, the Trustee is entitled to

a judgment against Defendants for his reasonable attorney's fees in an amount to be determined.

## AS AND FOR A FOURTEENTH CAUSE OF ACTION
## FOR CONSTRUCTIVE TRUST

161.    The Trustee repeats and realleges each and every allegation contained in the

foregoing paragraphs as if each were more fully set forth herein.

162.    The Trustee is the legal title holder of all property of the Debtor.

163.    The fraudulent transfers to Strauss and the Defendants were all part of the scheme

to defraud the Debtor's creditors.

164.    The transfers to the Defendants allowed them to be unjustly enriched to the

detriment of the Debtor's creditors.

165.    It is against equity and good conscience to permit the Defendants to retain the funds

or the value thereof since they properly belong to the Debtor.

166.    Consequently, a constructive trust should be imposed against such funds and the

value thereof held by the Defendants.

## RESERVATION OF RIGHTS

167.    As set forth herein, Trustee seeks to recover certain transfers and to substantively

consolidate certain non-debtor entities with the Debtor's bankruptcy estate in order to ensure

recovery for the Debtor's creditors.  To the extent that the Trustee discovers new evidence, he may amend this Complaint to include additional and/or new causes of actions as that may be discovered.

## <u>CONCLUSION</u>

**WHEREFORE**, the Trustee seeks relief as set forth herein, together with such other and further relief this Court deems just and proper under the facts and circumstances herein.

Dated: Uniondale, New York
   February 16, 2024      **WESTERMAN BALL EDERER**
                **MILLER ZUCKER & SHARFSTEIN LLP**

          By:  */s/ Todd M. Gardella*
              Todd M. Gardella, Esq.
              John E. Westerman, Esq.
              William C. Heuer, Esq.
          1201 RXR Plaza
          Uniondale, New York 11556
          *Special Litigation Counsel for Plaintiff Allan B.*
          *Mendelsohn, Esq., Chapter 11 Trustee*