**WESTERMAN BALL EDERER**
**MILLER ZUCKER & SHARFSTEIN LLP**
1201 RXR Plaza
Uniondale, New York 11556
(516) 622-9200
John E. Westerman
William C. Heuer
Todd M. Gardella
Mickee M. Hennessy
*Special Litigation Counsel to Allan B. Mendelsohn, Esq.,*
*Chapter 11 Trustee of the Estate of Sprout Mortgage LLC*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
In re:

                                            Chapter 11

SPROUT MORTGAGE LLC,

                                       Case No.:  23-72433-reg

                    Debtor.
-------------------------------------------------------------------X
Allan B. Mendelsohn, Esq., Chapter 11
Trustee Of The Estate Of                 Adv. Proc. No.: 24- _____-reg
Sprout Mortgage LLC,

                    Plaintiff,

           -against-

AMERICAN EXPRESS NATIONAL BANK and
AMERICAN EXPRESS COMPANY,

                    Defendant.
-------------------------------------------------------------------X

## <u>COMPLAINT</u>

      Allan B. Mendelsohn, Esq., the chapter 11 trustee in the above-captioned chapter 11

bankruptcy case of Sprout Mortgage LLC ("<u>Sprout</u>" or the "<u>Debtor</u>") and plaintiff herein

("<u>Trustee</u>" or "<u>Plaintiff</u>"), by and through his special litigation counsel, Westerman Ball Ederer

Miller Zucker & Sharfstein, LLP, respectfully submits this as and for his complaint (the

"<u>Complaint</u>") against American Express National Bank ("<u>AENB</u>") and American Express

Company ("<u>AEC</u>," together with AENB, "<u>Amex</u>" and/or "<u>Defendant</u>") and states as follows:

## PRELIMINARY STATEMENT

1.      This is an action by the Trustee to avoid and recover certain amounts transferred to the Defendant within four (4) years prior to the filing of the Debtor's bankruptcy petition as fraudulent conveyances.

2.      Prior to the filing of the bankruptcy petition, the Debtor was managed by Michael Strauss ("Strauss"), who exploited his control over the Debtor in a scheme to enrich himself at the expense of the Debtor's creditors.  Strauss engaged with members, employees and/or agents of the Debtor, and acted in concert with affiliates and insiders, to defraud the Debtor's creditors and shield its assets by funneling money from the Debtor to related entities and insiders, including himself and his family.

3.      The Trustee's investigation to date has revealed that, as part of this scheme, Strauss transferred funds from the Debtor to pay exorbitant amounts of personal expenses. Upon information and belief, these fraudulent transfers included millions of dollars in payments to his personal Amex credit cards over the course of years.  Amex accepted payments from the Debtor directly, and other insider affiliate entities using Debtor funds, when it did not extend credit to such entities and did not provide any consideration to the Debtor.  For the reasons set forth in this Complaint, the transfers involving funds belonging to the Debtor are subject to avoidance and recovery pursuant to the claims set forth below.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(a) and 1334(b).

5.      This adversary proceeding is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B), (C), (E), (H) and (O).  The Trustee consents to the entry of final orders and judgments by the Bankruptcy Court on the claims alleged herein.

6.      Venue of this adversary proceeding is proper in this district pursuant to 28 U.S.C. § 1409.

7.      The statutory predicates for the relief sought in this proceeding are 11 U.S.C. §§ 105(a), 502(d), 542, 543, 544, 548, 550 and 551.

## PARTIES

8.      On July 5, 2023, the Debtor's involuntary bankruptcy proceedings were commenced in the United States Bankruptcy Court for the Eastern District of New York (the "**Bankruptcy Court**").

9.      On August 11, 2023, the Bankruptcy Court entered an Order for Relief under chapter 7 of the Bankruptcy Code and Allan B. Mendelsohn, Esq. was appointed as Chapter 7 Trustee on an interim basis to administer the Debtor's bankruptcy estate.

10.     On September 29, 2023, the Debtor filed a motion seeking to convert the Debtor's chapter 7 bankruptcy case to a case under chapter 11.  By Order entered on October 20, 2023, the Bankruptcy Court granted relief and converted the Debtor's bankruptcy case to a case under chapter 11 and required that a chapter 11 operating trustee be put in place.

11.     On October 20, 2023, the Office of the United States Trustee filed a motion seeking the appointment of Allan B. Mendelsohn, Esq. as chapter 11 trustee. By Order entered that same day, the Bankruptcy Court granted the relief sought by the Office of the United States Trustee and appointed Allan B. Mendelsohn, Esq. as the chapter 11 trustee (the "**Trustee**").

12.     Upon information and belief, Defendant AENB is a national bank maintaining a

3

primary place of business at 200 Vesey Street, New York, New York.

13.     Upon information and belief, Defendant AEC is a financial services corporation and bank holding company maintaining a primary place of business at 200 Vesey Street, New York, New York.

## FACTS

### The Debtor's Failure and Insolvency

14.     Prior to the involuntary bankruptcy filing, the Debtor was engaged in the business of originating, purchasing and re-selling bundles of mortgage loan portfolios across the country.

15.     At times, the Debtor serviced certain of the mortgage loans pending their ultimate sale or the assignment of the servicing obligations.

16.     By in or around March 2022, the Debtor's business was in a state of financial distress.  Strauss, aware of the distress, retained control and continued to manage the Debtor and other related entity defendants from and after March 2022 until the filing of the involuntary bankruptcy petition in July 2023.

17.     In or around July 2022, the Debtor, at the direction of Strauss, abruptly terminated more than six hundred of its employees, failing to pay hundreds of thousands of dollars of outstanding wages owed and, upon information and belief, retroactively canceled various employees' health insurance benefit plans.

18.     The foregoing precipitated the filing of a Fair Labor Standards Act Complaint commenced in the United States District Court for the Eastern District Court of New York on July 8, 2022, titled *Agudelo v. Recovco Mortgage Management LLC, et al*, Civil Case No. 22-cv-4004 (the "**FLSA Action**").  Other actions were commenced in California on similar wage claims.

19.     At or around this same point in time:

4

- The Debtor and certain of its related entities were in substantial arrears for various state and federal taxes;

- The Debtor and its professionals were in the process of interviewing and consulting with various bankruptcy and turnaround professionals; and

- The individuals in management and control of the Debtor and its related entities were conducting various questionable inter-company transfers of monies to and from various accounts within their control.

20.    Despite the termination of employees and related business failings in July 2022, Strauss still did not retain a CRO for the Debtor at that time.

21.    As of September 30, 2022, the Debtor and Recovco had accumulated large debt balances for unpaid payroll taxes.  Defendants' financial documents reveal they collected millions of dollars' worth of payroll taxes from employees but did not forward these payments to the IRS beginning June 2017.[1]

22.    The Debtor has admitted that the Internal Revenue Service has "a large claim for payroll taxes" that were not paid.

23.    In 2020, the Debtor and Recovco received approximately $6.2 million and $600,000, respectively, in government funds in 2020 through the Paycheck Protection Program ("PPP"), while owing approximately $15.5 million in unpaid payroll taxes.

24.    Despite being a co-defendant in the FLSA Action and personally liable on a substantial amount of the indebtedness of the related entity defendants, Strauss maintained control of the liquidation efforts and transfer of monies among the corporate defendants since the termination of the Debtor's employees in July 2022.

---

[1] During this time, Strauss also failed to pay millions in personal income taxes he owes. In 2021 alone, he failed to pay over $7 million in income taxes which are still outstanding today.

25.     Although a Chief Restructuring Officer ("**CRO**") candidate was recommended to Strauss in 2022, Strauss chose to remain in control and ultimately made decisions concerning retention of counsel and proposed settlement terms of indebtedness, including which debts to pay, at all times relevant to this Complaint.  This is so despite the fact that a CRO was paid a retainer by the Debtor in or around November 2022.  This is eight (8) months before the commencement of the involuntary bankruptcy proceeding that was filed against the Debtor in July 2023.  Despite retaining a CRO, Strauss did not utilize the services of the proposed CRO.  Instead, he retained control.

26.     Because Strauss was in many instances co-liable on certain indebtedness, he was hopelessly conflicted and should have stepped down as the decisionmaker regarding wind-down decisions and should not have attempted to act as a fiduciary for the benefit of creditors.  Instead, Strauss directed transfers for the benefit of his own self-interest, to the detriment of the estate's creditors.  Strauss could have utilized the services of an independent CRO to make decisions, at least from and after November 2022 – but he chose not to.

27.     During the period of time when the corporate defendants' payroll tax liabilities were increasing, and they were receiving millions of dollars in government funds meant to help struggling businesses during the COVID-19 pandemic, Defendant Strauss received millions of dollars in net transactions to him personally, not including payments to LLCs that were directly controlled by him or in which he had a substantial financial interest.

28.     The millions of dollars in payments to Strauss left Sprout in a weakened financial state, by depleting its cash reserves such that the company was left vulnerable against the decline in the real estate market.

29.     The Schedules show that just $13.49 remained in the Debtor's bank accounts as of September 2023.

30.     Upon information and belief, the Debtor's failure and insolvency was caused by Strauss's longstanding scheme to siphon money out of the business, not simply changing market conditions.

**Fraudulent Transfers to Amex as Part of the Scheme to Deplete The Debtor's Assets**

31.     Forensic accountants retained by plaintiffs in the FLSA Action determined, after analysis of records that Strauss provided, that Strauss received net transfers totaling $24.4 million between January 2020 and September 2022, in large part through transfers involving insider affiliate companies that he controlled ("**Insider Affiliates**"), including Recovco Mortgage Management LLC ("**Recovco**") and Midland American Capital Corporation ("**Midland**").

32.     Forensic accountants retained by the Trustee have similarly determined that Strauss received significant net transfers of funds from the Debtor for many years predating the bankruptcy filing.

33.     The Trustee's forensic accountants have also determined that Strauss used substantial funds belonging to the Debtor to pay personal expenses incurred on his personal Amex credit cards (the "**Strauss Amex Cards**").

34.     A forensic investigation has determined that millions of dollars were transferred within four years prior to the Petition Date from the Debtor directly to Amex to cover Strauss's personal obligations on the Strauss Amex Cards.

35.     Since July 2020 alone, the Debtor has transferred more than $5 million directly to Amex to be applied to pay Strauss's obligations to Amex on the Strauss Amex Cards.

36.     In addition, since August 2019, Strauss transferred more than $2 million in Debtor funds from Recovco to Amex to cover his personal obligations on the Strauss Amex Cards.

37.     Strauss also transferred additional Debtor funds to himself to fund his payments to Amex to cover his personal obligations on the Strauss Amex Cards.

38.     Upon information and belief, at all relevant times prior to the Petition Date, Strauss maintained firm control over the Debtor and each of the Insider Affiliates and exploited them for his own benefit.

39.     Upon information and belief, the transfers of funds from the Debtor to and for the benefit of Strauss using the Insider Affiliates had no legitimate business purpose.  The Debtor's general ledger provides no description of a business purpose and the testimony of various individuals employed by or otherwise involved with the operation of the Debtor and/or Strauss-related entities establishes that all transfers of funds were conducted at the exclusive direction of Strauss.  For example:

- The Debtor's president, Shea Pallante, has testified that the Debtor had no business relationship with Recovco such that that Sprout would owe or have to pay money to Recovco.

- Recovco's president, Craig Pino, testified that he has no understanding of the funds which Recovco received, or why it transferred or paid money to anyone.

- Both the president of the Debtor and of Recovco testified that Strauss gave all the orders regarding money for the Debtor and for Recovco.

40.     This pattern of transactional activity has the hallmarks of money laundering. Strauss engaged in "layering" the funds through one or more transactions or movements that distance the funds from their initial source, which is the Debtor.

41.     Strauss's layering scheme is so blatant that, on many occasions, the initial funding from the Debtor's account to Recovco and Midland was the only source of funds for the subsequent transfers to Strauss.  The same is true for payments made to Amex from Recovco.  Bank records show instances where the Recovco account would have had insufficient funds to make the Amex payment without the Debtor's transfer.

42.     It is evident that Strauss exploited his control over the Insider Affiliates and their bank accounts to fraudulently transfer funds from the Debtor with actual intent to hinder, delay and defraud the creditors of the Debtor, and benefit himself as an insider.  There was no legitimate business purpose, nor any reasonably equivalent value exchanged for these and many other transfers.  Strauss used the monies derived from the Debtor to benefit himself and his family members.

43.     On February 16, 2024, the Trustee commenced an adversary proceeding against Strauss and several of his family members and Insider Affiliates seeking, among other things, avoidance and recovery on his fraudulent transfers and related fraudulent activity.

44.     By this adversary proceeding, the Trustee seeks to avoid and recover millions of dollars fraudulently transferred to Amex within four (4) years prior to the Petition Date.

45.     Strauss has admitted to transferring funds of the Debtor with the intent to remove them from the reach of the Debtor's creditors.  Indeed, at the 341(a) Meeting of Creditors conducted by the Trustee in this bankruptcy case, Strauss admitted to transferring funds from the Debtor to put them out of reach of the Debtor's creditors so that he could use the funds toward a settlement of claims against him in the FLSA Action.

46.     Consequently, the Trustee may recover, for the benefit of the estate, the value of the funds transferred to Amex, pursuant to section 550 of the Bankruptcy Code, the New York Debtor & Creditor Law, and other applicable law.

**AS AND FOR A FIRST CAUSE OF ACTION**
**TO AVOID AND RECOVER FRAUDULENT TRANSFERS**
**PURSUANT TO SECTIONS 548(a)(1)(A), 550 and 551 OF THE BANKRUPTCY CODE**

47.     The Trustee repeats and realleges each and every allegation contained in the foregoing paragraphs as if each were more fully set forth herein.

48.     Pursuant to sections 548(a)(1)(A) and 550 of the Bankruptcy Code, the Trustee may avoid and recover any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within two (2) years of the Petition Date, if the debtor voluntarily or involuntarily made such transfer or incurred such obligation with the actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted.

49.     As described above, funds belonging to the Debtor were transferred to Amex for Strauss's personal benefit during the two (2) year period immediately prior to the Petition Date. The total transfers and amounts shall be established by evidence proffered at trial.

50.     Upon information and belief, these transfers were made with the actual intent to hinder, delay or defraud the Debtor's creditors.

51.     Among the badges of fraud at or near the time of the transfers: (i) Strauss caused money to be transferred from the Debtor, utilizing the Insider Affiliates to funnel money to himself or for his benefit, such as paying his personal obligations or those of his family members, including his personal obligations to Amex; (ii) pursuant to these transfers, the Debtor removed property from the reach of its creditors; (iii) the Debtor did not receive reasonably equivalent value in

exchange for the transfers; (iv) the Debtor was insolvent at the time of the transfers or became insolvent as a result of transfers, the substantial unpaid taxes owed (with more than ten states having filed claims, as well as the IRS claim for $27,850,155.14) and/or the millions in unpaid wages and other liabilities as claimed in the FLSA Action; (v) Strauss was misusing the Debtor and one or more of the defendants in various fraudulent or deceptive schemes at the time of the transfers (vi) Strauss caused the Debtor to misuse and misappropriate trust fund taxes that were not the Debtor's property; and (vii) the Debtor was not paying its debts as they became due.

52.    As a result of the above, the Trustee may avoid the transfers of Debtor's funds to Amex pursuant to section 548(a)(1)(A) of the Bankruptcy Code.

53.    Pursuant to section 551 of the Bankruptcy Code, the avoided transfers are preserved for the benefit of the estate.

54.    Pursuant to section 550 of the Bankruptcy Code, in a fraudulent conveyance action commenced under section 548(a)(1)(A) of the Bankruptcy Code, the trustee may recover for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from (i) the initial transferee of such transfer or the entity for whose benefit such transfer was made, or (ii) any immediate or mediate transferee of such initial transferee that lacks good faith in receipt of such transfer and lacks knowledge of the voidability of the transfer avoided.

55.    As described above, the Trustee may recover the transfers and/or value of the transfers as against Amex, which, upon information and belief, is an initial transferee, a party that benefitted from the initial transfers, an immediate transferee and/or mediate transferee.

**AS AND FOR A SECOND CAUSE OF ACTION**
**TO AVOID AND RECOVER FRAUDULENT TRANSFERS**
**PURSUANT TO SECTIONS 548(a)(1)(B), 550 and 551 OF THE BANKRUPTCY CODE**

56.     The Trustee repeats and realleges each and every allegation contained in the foregoing paragraphs as if each were more fully set forth herein.

57.     Pursuant to sections 548(a)(1)(B) and 550 of the Bankruptcy Code, the Trustee may avoid and recover any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within two (2) years of the Petition Date, if the debtor voluntarily or involuntarily:

(i)   received less than reasonably equivalent value in exchange for such transfer or obligation; and

(ii)    (I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

(II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;

(III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or

(IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of any insider, under an employment contract and not in the ordinary course of business.

58.     As described above, funds belonging to the Debtor were transferred to Amex for Strauss's personal benefit during the two (2) year period immediately prior to the Petition Date. The total transfers and amounts shall be established by evidence proffered at trial.

59.     Upon information and belief, the Debtor received less than reasonably equivalent value in exchange for one or more of these transfers and the Debtor was insolvent on the date that such transfer was made, or became insolvent as a result of such transfer, the substantial unpaid taxes owed (with more than ten states having filed claims, as well as the IRS claim for $27,850,155.14) and/or the millions in unpaid wages and other liabilities as claimed in the FLSA Action.

60.     Upon information and belief, the Debtor received less than reasonably equivalent value in exchange for one or more of these transfers and the Debtor was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the Debtor was an unreasonably small capital.

61.     Upon information and belief, the Debtor received less than reasonably equivalent value in exchange for one or more of these transfers and the Debtor intended to incur, or believed that it would incur, debts that would be beyond its ability to pay as such debts matured.

62.     Upon information and belief, the Debtor received less than reasonably equivalent value in exchange for one or more of these transfers and the Debtor made such transfers to or for the benefit of an insider, or incurred such obligation to or for the benefit of any insider, under an employment contract and not in the ordinary course of business.

63.     As a result of the above, the Trustee may avoid the transfers pursuant to section 548(a)(1)(B) of the Bankruptcy Code.

64.     Pursuant to section 551 of the Bankruptcy Code, the avoided transfers are preserved for the benefit of the estate.

65.     Pursuant to section 550 of the Bankruptcy Code, in a fraudulent conveyance action commenced under section 548(a)(1)(B) of the Bankruptcy Code, the trustee may recover for the

benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from (i) the initial transferee of such transfer or the entity for whose benefit such transfer was made, or (ii) any immediate or mediate transferee of such initial transferee that lacks good faith in receipt of such transfer and lacks knowledge of the voidability of the transfer avoided.

66.     As described above, the Trustee may recover the transfers and/or value of the transfers as against Amex, which, upon information and belief, is an initial transferee, a party that benefitted from the initial transfers, an immediate transferee and/or mediate transferee.

### AS AND FOR A THIRD CAUSE OF ACTION
### TO AVOID AND RECOVER FRAUDULENT TRANSFERS
### PURSUANT TO SECTIONS 544, 550, 551 OF THE BANKRUPTCY CODE
### AND NEW YORK DEBTOR & CREDITOR LAW SECTION 273(a)(1)

67.     The Trustee repeats and realleges each and every allegation contained in the foregoing paragraphs as if each were more fully set forth herein.

68.     Pursuant to section 544 of the Bankruptcy Code and section 273(a)(1) of the New York Debtor & Creditor Law, the Trustee may avoid and recover any transfer made or obligation incurred by a debtor as to a creditor within four (4) years of the Petition Date, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation with actual intent to hinder, delay or defraud any creditor of the debtor.

69.     As described above, funds belonging to the Debtor were transferred to Amex for Strauss's personal benefit during the four (4) year period immediately prior to the Petition Date. The total transfers and amounts shall be established by evidence proffered at trial.

70.     Upon information and belief, these transfers were made with the actual intent to hinder, delay or defraud the Debtor's creditors or any one of them.

14

71.     Among the badges of fraud at or near the time of the transfers: (i) Strauss caused money to be transferred from the Debtor, utilizing the Insider Affiliates to funnel money to himself or for his benefit, such as paying his personal obligations or those of his family members, including his personal obligations to Amex; (ii) pursuant to these transfers, the Debtor removed property from the reach of its creditors; (iii) the Debtor did not receive reasonably equivalent value in exchange for the transfers; (iv) the Debtor was insolvent at the time of the transfers or became insolvent as a result of transfers, the substantial unpaid taxes owed (more than ten states have filed claims, as well as the IRS claim for $27,850,155.14) and/or the millions in unpaid wages and other liabilities as claimed in the FLSA Action; (v) Strauss was misusing the Debtor and one or more of the defendants in various fraudulent or deceptive schemes at the time of the transfers (vi) Strauss caused the Debtor to misuse and misappropriate trust fund taxes that were not the Debtor's property; and (vii) the Debtor was not paying its debts as they became due.

72.     As a result of the above, the Trustee may avoid the transfers pursuant to section 544 of the Bankruptcy Code and section 273(a)(1) of the New York Debtor & Creditor Law.

73.     Pursuant to section 551 of the Bankruptcy Code, the avoided transfers are preserved for the benefit of the estate.

74.     Pursuant to section 550 of the Bankruptcy Code, in a fraudulent conveyance action commenced under section 544 of the Bankruptcy Code and section 273(a)(1) of the New York Debtor & Creditor Law, the trustee may recover for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from (i) the initial transferee of such transfer or the entity for whose benefit such transfer was made, or (ii) any immediate or mediate transferee of such initial transferee that lacks good faith in receipt of such transfer and lacks knowledge of the voidability of the transfer avoided.

75.    As described above, the Trustee may recover the transfers and/or value of the transfers as against Amex, which, upon information and belief, is an initial transferee, a party that benefitted from the initial transfers, an immediate transferee and/or mediate transferee.

**AS AND FOR A FOURTH CAUSE OF ACTION**
**TO AVOID AND RECOVER FRAUDULENT TRANSFERS**
**PURSUANT TO SECTIONS 544, 550 AND 551 OF THE BANKRUPTCY CODE**
**AND NEW YORK DEBTOR & CREDITOR LAW SECTION 273(a)(2)**

76.    The Trustee repeats and realleges each and every allegation contained in the foregoing paragraphs as if each were more fully set forth herein.

77.    Pursuant to section 544 of the Bankruptcy Code and section 273(a)(2) of the New York Debtor & Creditor Law, the Trustee may avoid and recover any transfer made or obligation incurred by a debtor as to a creditor within four (4) years of the Petition Date, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

(i) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

(ii) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

78.    As described above, funds belonging to the Debtor were transferred to Amex for Strauss's personal benefit during the four (4) year period immediately prior to the Petition Date. The total transfers and amounts shall be established by evidence proffered at trial.

79.    Upon information and belief, the Debtor made one or more of the transfers without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the Debtor

was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction.

80.    Upon information and belief, the Debtor made one or more of the transfers without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the Debtor intended to incur, or believed or reasonably should have believed that the Debtor would incur, debts beyond the debtor's ability to pay as they became due.

81.    As a result of the above, the Trustee may avoid the transfers pursuant to section 544 of the Bankruptcy Code and section 273(a)(2) of the New York Debtor & Creditor Law.

82.    Pursuant to section 551 of the Bankruptcy Code, the avoided transfers are preserved for the benefit of the estate.

83.    Pursuant to section 550 of the Bankruptcy Code, in a fraudulent conveyance action commenced under section 544 of the Bankruptcy Code and section 273(a)(2) of the New York Debtor & Creditor Law, the trustee may recover for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from (i) the initial transferee of such transfer or the entity for whose benefit such transfer was made, or (ii) any immediate or mediate transferee of such initial transferee that lacks good faith in receipt of such transfer and lacks knowledge of the voidability of the transfer avoided.

84.    As described above, the Trustee may recover the transfers and/or value of the transfers as against Amex, which, upon information and belief, is an initial transferee, a party that benefitted from the initial transfers, an immediate transferee and/or mediate transferee.

**AS AND FOR A FIFTH CAUSE OF ACTION
TO AVOID AND RECOVER FRAUDULENT TRANSFERS
PURSUANT TO SECTIONS 544, 550 AND 551 OF THE BANKRUPTCY CODE
AND NEW YORK DEBTOR & CREDITOR LAW SECTION 274(a)**

85.     The Trustee repeats and realleges each and every allegation contained in the foregoing paragraphs as if each were more fully set forth herein.

86.     Pursuant to section 544 of the Bankruptcy Code and section 274(a) of the New York Debtor & Creditor Law, transfers made or obligations incurred by a debtor are voidable as to a creditor whose claim arose before such transfer was made or obligation incurred, if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.  The Trustee may avoid and recover any such transfer made or obligation incurred by a debtor within four (4) years of the Petition Date.

87.     As described above, funds belonging to the Debtor were transferred to Amex for Strauss's personal benefit during the four (4) year period immediately prior to the Petition Date. The total transfers and amounts shall be established by evidence proffered at trial.

88.     Upon information and belief, the Debtor received less than reasonably equivalent value in exchange for the transfers and the Debtor was insolvent at that time or the Debtor became insolvent as a result of the transfers.

89.     As a result of the above, the Trustee may avoid the transfers pursuant to section 544 of the Bankruptcy Code and section 274(a) of the New York Debtor & Creditor Law.

90.     Pursuant to section 551 of the Bankruptcy Code, the avoided transfers are preserved for the benefit of the estate.

91.     Pursuant to section 550 of the Bankruptcy Code, in a fraudulent conveyance action commenced under section 544 of the Bankruptcy Code and section 274(a) of the New York Debtor

& Creditor Law, the trustee may recover for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made, or (2) any immediate or mediate transferee of such initial transferee that lacks good faith in receipt of such transfer and lacks knowledge of the voidability of the transfer avoided.

92.     As described above, the Trustee may recover the transfers and/or value of the transfers as against Amex, which, upon information and belief, is an initial transferee, a party that benefitted from the initial transfers, an immediate transferee and/or mediate transferee.

**AS AND FOR A SIXTH CAUSE OF ACTION
TO AVOID AND RECOVER FRAUDULENT TRANSFERS
PURSUANT TO SECTIONS 544, 550 AND 551 OF THE BANKRUPTCY CODE
AND NEW YORK DEBTOR & CREDITOR LAW SECTION 274(b)**

93.     The Trustee repeats and realleges each and every allegation contained in the foregoing paragraphs as if each were more fully set forth herein.

94.     Pursuant to section 544 of the Bankruptcy Code and section 274(b) of the New York Debtor & Creditor Law, transfers made or obligations incurred by a debtor are voidable as to a creditor whose claim arose before such transfer was made or obligation incurred, if the transfer was made or obligation incurred by a debtor to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent. The Trustee may avoid and recover any such transfer made or obligation incurred by a debtor within one (1) year of the Petition Date.

95.     Upon information and belief, certain funds were transferred to Amex for the benefit of Strauss, as an insider, for an antecedent debt.

96.     The Debtor was insolvent at the time of the transfers or became insolvent as a result of the fraudulent transfers, the substantial unpaid taxes owed (more than ten states have filed

claims, as well as the IRS claim for $27,850,155.14) and/or the millions in unpaid wages and other liabilities as claimed in the FLSA Action.

97.     Upon information and belief, the insider knew and/or had reasonable cause to believe that the Debtor was insolvent.

98.     As a result of the above, the Trustee may avoid the transfers pursuant to section 544 of the Bankruptcy Code and section 274(b) of the New York Debtor & Creditor Law.

99.     Pursuant to section 551 of the Bankruptcy Code, the avoided transfers are preserved for the benefit of the estate.

100.     Pursuant to section 550 of the Bankruptcy Code, in a fraudulent conveyance action commenced under section 544 of the Bankruptcy Code and section 274(b) of the New York Debtor & Creditor Law, the trustee may recover for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from (i) the initial transferee of such transfer or the entity for whose benefit such transfer was made, or (ii) any immediate or mediate transferee of such initial transferee that lacks good faith in receipt of such transfer and lacks knowledge of the voidability of the transfer avoided.

101.     As described above, the Trustee may recover the transfers and/or value of the transfers as against Amex, which, upon information and belief, is an initial transferee, a party that benefitted from the initial transfers, an immediate transferee and/or mediate transferee.

<strong>AS AND FOR A SEVENTH CAUSE OF ACTION<br>FOR DISALLOWANCE OF DEFENDANTS' CLAIMS<br><u>PURSUANT TO SECTION 502(d) OF THE BANKRUPTCY CODE</u></strong>

102.     The Trustee repeats and realleges each and every allegation contained in the foregoing paragraphs as if each were more fully set forth herein.

103.    Amex is a party from which property is recoverable under section 550 of the Bankruptcy Code and/or is a transferee of a transfer or obligation avoidable under sections 544 and 548 of the Bankruptcy Code.

104.    Amex has not paid the amount or turned over any property transferred for which Amex is liable under section 550 of the Bankruptcy Code.

105.    Any filed or scheduled claim held by Amex is disallowed until Amex pays in full or returns the property for which it is liable under section 550 of the Bankruptcy Code.

### AS AND FOR AN EIGHTH CAUSE OF ACTION
### FOR TURNOVER OF PROPERTY OF THE ESTATE
### AND DEMAND FOR AN ACCOUNTING
### PURSUANT TO SECTION 542 OF THE BANKRUPTCY CODE

106.    The Trustee repeats and realleges each and every allegation contained in the foregoing paragraphs as if each were more fully set forth herein.

107.    The funds that were transferred to Amex belonged to the Debtor.

108.    The funds were, prior to the Petition Date, the Debtor's property.

109.    The funds remain, in the postpetition period, the Debtor's property.

110.    The Trustee continues in his demands that Amex return the funds to the Trustee.

111.    Amex is aware of the Debtor's bankruptcy proceedings.

112.    Amex has not returned the funds to the Trustee.

113.    The Trustee seeks the turnover of property of the estate pursuant to section 542 of the Bankruptcy Code and demands an accounting.

114.    The funds and transfers, disclosed and non-disclosed, constitute property of the estate to be recovered and administered by the Trustee pursuant to section 542 of the Bankruptcy Code.

115.    Accordingly, the Trustee is entitled to immediate payment and turnover of any and all transfers to Amex made by the Debtor or of the Debtor's property, directly or indirectly.

116.    The Trustee is entitled to an accounting of all the funds dissipated by the Debtor to or using Amex.

117.    By reason of the foregoing, the Trustee is entitled to judgment against Amex pursuant to Bankruptcy Code section 542 (i) requiring an accounting of all the funds dissipated by the Debtor to or using Amex; (ii) requiring that the funds be returned to the Trustee in full, and/or (iii) for monetary damages in the amount to be determined at trial, plus (iv) interest, attorneys' fees, and costs as may be appropriate.

### AS AND FOR A NINTH CAUSE OF ACTION
### FOR THE IMPOSITION OF AN EQUITABLE LIEN

118.    The Trustee repeats and realleges each and every allegation contained in the foregoing paragraphs as if each were more fully set forth herein.

119.    The Trustee is the legal title holder of all property of the Debtor.

120.    The fraudulent transfers to Amex were all part of the scheme to defraud the Debtor's creditors.

121.    The transfers to Amex allowed it to be unjustly enriched to the detriment of the Debtor's creditors.

122.    It is against equity and good conscience to permit Amex to retain the funds or the value thereof since they properly belong to the Debtor.  Consequently, an equitable lien should be imposed against such funds and the value thereof held by Amex.

## AS AND FOR AN TENTH CAUSE OF ACTION
## FOR UNJUST ENRICHMENT

123.    The Trustee repeats and realleges each and every allegation contained in the foregoing paragraphs as if each were more fully set forth herein.

124.    The Trustee is the legal title holder of all property of the Debtor.

125.    Amex received funds from the Debtor.

126.    Amex had knowledge or is charged with knowledge that the funds were transferred fraudulently and/or without consideration.

127.    By receiving such funds, Amex was unjustly enriched at the expense of the Debtor.

128.    By reason of the foregoing, Plaintiff is entitled to payment from Amex, and the imposition of a constructive trust against it, in an amount to be determined at trial.

## AS AND FOR A ELEVENTH CAUSE OF ACTION
## FOR CONVERSION

129.    The Trustee repeats and realleges each and every allegation contained in the foregoing paragraphs as if each were more fully set forth herein.

130.    Amex intentionally and without authority assumed or exercised control over specifically identifiable funds received from the Debtor.

131.    The Debtor has a possessory right and interest in the specifically identifiable funds received from the Debtor or one of the Insider Affiliates.

132.    Amex's dominion over and/or interference with the specifically identifiable funds received from the Debtor or one of the Insider Affiliates is in derogation of the Debtor's rights.

133.    Amex has retained the funds from the Debtor for an unauthorized purpose.

134.    As a direct and proximate result of Amex's conversion of the Debtor's property, Plaintiff has been damaged in an amount to be determined at trial, plus interest and all costs, attorneys' fees and expenses.

## AS AND FOR A TWELFTH CAUSE OF ACTION
## FOR ATTORNEYS FEES PURSUANT TO SECTION 276-A OF
## THE NEW YORK DEBTOR & CREDITOR LAW

135.    The Trustee repeats and realleges each and every allegation contained in the foregoing paragraphs as if each were more fully set forth herein.

136.    Pursuant to section 276-a of the New York Debtor & Creditor Law, in an action where a bankruptcy trustee successfully obtains a judgment to set aside a conveyance by a debtor on grounds of actual intent to hinder, delay or default either present or future creditors, the Court shall fix the reasonable attorney's fees of the bankruptcy trustee, who shall have judgment therefor against the debtor and the transferees who are defendants in addition to the other relief granted by the judgment.

137.    As alleged above, the transfers at issue were made with the actual intent to hinder, delay or default present and future creditors.

138.    Consequently, upon obtaining judgment on such grounds, the Trustee is entitled to a judgment against Defendant for his reasonable attorney's fees in an amount to be determined.

## AS AND FOR A THIRTEENTH CAUSE OF ACTION
## FOR CONSTRUCTIVE TRUST

139.    The Trustee repeats and realleges each and every allegation contained in the foregoing paragraphs as if each were more fully set forth herein.

140.    The Trustee is the legal title holder of all property of the Debtor.

141.    The fraudulent transfers to Amex were all part of the scheme to defraud the Debtor's creditors.

24

142.     The transfers to the Amex allowed it to be unjustly enriched to the detriment of the Debtor's creditors.

143.     It is against equity and good conscience to permit Amex to retain the funds or the value thereof since they properly belong to the Debtor.

144.     Consequently, a constructive trust should be imposed against such funds and the value thereof held by Amex.

## RESERVATION OF RIGHTS

145.     As set forth herein, the Trustee seeks to recover certain transfers in order to ensure recovery for the Debtor's creditors.  To the extent that the Trustee discovers new evidence, he may amend this Complaint to include additional and/or new causes of actions as that may be discovered.

## CONCLUSION

**WHEREFORE**, the Trustee seeks relief as set forth herein, together with such other and further relief this Court deems just and proper under the facts and circumstances herein.


Dated: Uniondale, New York
      April 29, 2024

                    WESTERMAN BALL EDERER
                    MILLER ZUCKER & SHARFSTEIN LLP


                    By:    _/s/ Todd M. Gardella_____
                          Todd M. Gardella, Esq.
                          John E. Westerman, Esq.
                          William C. Heuer, Esq.
                          Mickee M. Hennessy
                    1201 RXR Plaza
                    Uniondale, New York 11556
                    *Special Litigation Counsel for Plaintiff Allan B.*
                    *Mendelsohn, Esq., Chapter 11 Trustee*