KASOWITZ BENSON TORRES LLP
1633 Broadway
New York, New York 10019
Tel: (212) 506-1700
Matthew B. Stein
Katherine C. Boatman
*Attorneys for Michael Strauss*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
In re

      Sprout Mortgage LLC,

                            Debtor.
-------------------------------------------------------------------x

Case No. 23-72433-reg

Chapter 11

## MICHAEL STRAUSS' MOTION TO
## RECONSIDER THE ORDER GRANTING PNC BANK, N.A.'S 2004 MOTION

Michael Strauss ("Mr. Strauss"), by and through his undersigned attorneys, hereby submits this motion pursuant to Bankruptcy Rule 9023 for reconsideration and relief from the Court's Order granting the *ex parte* application of PNC Bank, National Association's ("PNC") pursuant to Bankruptcy Rule 2004, which authorized PNC to issue a subpoena for the production of documents and deposition testimony to Mr. Strauss (the "2004 Motion"), and respectfully states as follows:

### PRELIMINARY STATEMENT[1]

1.      On April 2, 2024, the Court entered an order granting PNC's 2004 Motion.[2] This decision was erroneously made because of PNC's intentional omission of material facts from the 2004 Motion, namely that it is actively engaged in litigation in New York state court on the same claims underlying its 2004 Motion. Indeed, prior to the commencement of this bankruptcy case,

---

[1] All undefined terms have the meaning ascribed to them below.
[2] As set forth below, PNC did not serve a subpoena on Mr. Strauss until April 29, 2024.

PNC brought an action against Sprout Mortgage LLC ("Sprout" or the "Debtor") and Mr. Strauss, among others, seeking to recover $420,497.16 that the Debtor allegedly received while acting as the interim servicer as part of an agreement in which PNC would purchase mortgage loans in bulk from the Debtor.  After Mr. Strauss was dismissed from the case, the involuntary petition was filed against the Debtor, and the State Court Action was stayed.  However, rather than seek to lift the automatic stay to permit discovery in the State Court Action, PNC filed its *ex parte* 2004 Motion.  Any mention of the pending State Court Action was omitted from its 2004 Motion (as well as its proof of claim), preventing the Court from making an informed decision on the merits of the 2004 Motion.  Because the 2004 Motion was filed *ex parte*, neither Mr. Strauss nor the Debtor could bring this glaring omission to the Court's attention prior to entry of the order.

2.  Courts have long held that a creditor may not use Rule 2004 to circumvent the more stringent discovery rules applicable in pending litigation outside of the bankruptcy court. *See In re Bennett Funding Group, Inc.*, 203 B.R. 24, 28 (Bankr. N.D.N.Y. 1996) ("The well-recognized rule is that once an adversary proceeding or contested matter has been commenced, discovery is made pursuant to the Fed. R. Bankr.P. 7026 *et seq.*, rather than by a Fed. R. Bankr.P.2004 examination."); *In re Glitnir banki hf.*, No. 08-14757 SMB, 2011 WL 3652764 (Bankr. S.D.N.Y. Aug. 19, 2011) (The "pending proceeding" rule is based on the different safeguards that attend Rule 2004 and civil litigation discovery.  The latter provides greater protection to adverse parties, including notice of the time and place of the examination and the right to attend, object to questions and cross-examine witnesses.).  Here, PNC has abused Rule

2004 to circumvent the discovery procedures in New York state court to obtain documents and testimony in violation of the well-developed law in this Circuit.

3. Accordingly, the Court should reconsider its order and deny the relief requested in the 2004 Motion.

## BACKGROUND

**A. The New York State Action Against Sprout and Mr. Strauss**

4. On October 6, 2022, PNC initiated an action against the Debtor and Mr. Strauss, among others, in the Supreme Court of the State of New York, New York County (the "NY State Court"), captioned *PNC Bank, National Association v. Sprout Mortgage, LLC et al.*, Index No. 653697/2022 (Sup. Ct. NY Cnty. 2022) (the "State Court Action").

5. On February 2, 2023, PNC filed an amended complaint in the State Action, seeking to obtain monies paid by third-party mortgage loan borrowers to the Debtor, which PNC claimed Sprout should have then paid over to it (the "State Complaint" or "State Compl."). [State Court Action, Dkt. No. 40.] The State Complaint asserted several causes of action against the Debtor, including breach of contract, conversion, and fraud. It also asserted causes of action against Mr. Strauss for fraudulent inducement and aiding and abetting fraud.

6. PNC alleged that on June 24, 2022, PNC and the Debtor executed a Mortgage Loan Purchase and Interim Servicing Agreement ("MLPISA"), which established a method and manner under which PNC would purchase mortgage loans in bulk from the Debtor. (State Compl., ¶ 31.) PNC alleged that under the terms of the agreement, the Debtor was to act as interim servicer for the period of time between the closing date of the agreement and the servicing transfer date. (*Id.*, ¶ 32.) PNC maintained that the Debtor acted as the interim servicer from June 2022 through August 2022, and it took over servicing thereafter. (*Id.*, ¶¶ 52-53.)

During this time, the State Complaint asserted that the Debtor was required to turn over to PNC all sums collected on the loans for two periods. (*Id.*, ¶ 54.) PNC alleged that Sprout collected at least $322,025.73 in principle and interest payments as well as $98,471.43, for a total of $420,497.16. (*Id.*, ¶ 55.) It posited that the Debtor never turned over these payments to PNC despite being required to do so under the parties' agreement. (*Id.* ¶ 60.)

7. The State Complaint also alleged that Mr. Sprout exercised exclusive control over the Debtor, including its business, operations, and financial affairs, and that Mr. Strauss's approval was necessary before any information could be released or actions taken. (*Id.*, ¶¶ 89-90.) PNC also alleged that Mr. Strauss directed that certain of the servicing payments be impermissibly diverted to another account for his personal use and/or for use in funding the Debtor's eventual wind-down. (*Id.*, ¶ 102.)

8. On March 29, 2023, Mr. Strauss moved to dismiss the State Complaint. PNC opposed the motion on June 30, 2023, to which Mr. Strauss filed his reply on July 12, 2023. On July 28, 2023, the Supreme Court granted Mr. Strauss's motion to dismiss, dismissing all claims against him. On July 31, 2023, PNC filed a notice of appeal. On March 29, 2024, PNC filed a request to extend the time to perfect its appeal to May 1, 2024. *See PNC Bank, N.A. v Sprout Mortgage LLC et al.*, App. Div. Docket No. 2023-04113. PNC has failed to perfect its appeal.

B. The Bankruptcy Case

9. On July 5, 2023, certain creditors filed an involuntary petition against Sprout [Dkt. No. 1] commencing this bankruptcy case. On August 11, 2023, the Court entered an Order for Relief [Dkt. No. 13] and Allan B. Mendelsohn was appointed the interim chapter 7 Trustee.

10. On August 10, 2023, PNC filed a letter notifying the NY State Court of the bankruptcy stay in effect due to the involuntary bankruptcy petition filed against the Debtor.

11. On September 29, 2023, the Debtor filed a motion seeking to convert its Chapter 7 bankruptcy case to a case under chapter 11. [Dkt. No. 134.] After a hearing on the motion, on October 20, 2023, the Court converted the Debtor's bankruptcy case to a case under chapter 11 and appointed Allan B. Mendelsohn as the chapter 11 operating trustee. [Dkt. Nos. 185, 187.]

12. On December 11, 2023, PNC filed a Proof of Claim in the amount of $420,4977.16, based on the purchase of certain mortgage loans from the Debtor under the MLPISA dated June 24, 2022 (the "Proof of Claim"). [Proof of Claim 123.]

C. **The 2004 Motion**

13. On March 29, 2024, PNC filed its *ex parte* 2004 Motion. The 2004 Motion seeks to obtain information from Mr. Strauss to confirm, among other related issues, the Debtor's receipt of the third-party loan borrower payments made while servicing the loans under the parties' June 24, 2022 MLPISA. (2004 Motion, ¶¶ 3, 12.) According to the 2004 Motion, the Debtor collected at least $420,497.16 while servicing the loans under the parties' agreement. (*Id.*, ¶ 14.) Therefore, PNC "seek[s] information related to the extent and whereabouts of specific money that were received and improperly retained by Debtor pre-petition while servicing certain identifiable mortgage loans pursuant to the Agreement." (*Id.*, ¶ 21.)

14. On April 2, 2024, the Court granted PNC's 2004 Motion (the "Order"). [Dkt. No. 312.]

15. On April 29, 2024, PNC served a copy of the 2004 Motion and Order on Mr. Strauss. [*See* Dkt. No. 328.]

## APPLICABLE LAW

16. "A motion for reconsideration of an order may be made pursuant to Bankruptcy Rule 9023." Local Bankruptcy Rule 9023-1; *see also* Bankruptcy Rule 9023, which incorporates

Fed. R. Civ. P. 59, and Bankruptcy Rule 9024, which incorporates Fed. R. Civ. P. 60. "Interlocutory orders may be challenged pursuant to Bankruptcy Rule 9023." *In re Joe's Friendly Serv. & Son, Inc.*, No. 8-14-70001-REG, 2020 WL 3120288, at *7 (Bankr. E.D.N.Y. June 11, 2020) (Grossman, J.)  In a motion for reconsideration, "the movant must demonstrate that the court overlooked controlling court decisions or factual matters." *Byrne v. Liquid Asphalt Sys., Inc.*, 250 F. Supp. 2d 84, 88 (E.D.N.Y. 2003). "Alternatively, the movant must demonstrate 'the need to correct a clear error or prevent manifest injustice.'" *Perez v. Progenics Pharm., Inc.*, 46 F. Supp. 3d 310, 314 (S.D.N.Y. 2014). "These criteria are strictly construed against the moving party so as to avoid repetitive arguments on issues that have been considered fully by the court." *Griffin Indus., Inc. v. Petrojam, Ltd.*, 72 F. Supp. 2d 365, 368 (S.D.N.Y. 1999). *See also Kolel Beth Yechiel Mechil of Tertikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013) (analyzing Fed. R. Civ Pro. 59).

## ARGUMENT

I. **The Court Should Reconsider its Decision to Grant the 2004 Motion Because PNC Failed to Inform The Court About Its Pending Proceeding Against The Debtor**

17.     Reconsideration is warranted here because PNC intentionally failed to inform the Court about the pending State Court Action to use Rule 2004 to circumvent the more stringent discovery rules applicable in New York state court.  In a bankruptcy action, a creditor is generally not permitted to obtain a Rule 2004 examination of a non-debtor when litigation has already been commenced in another venue.  This is guided by the "pending proceeding rule," which states that "after the commencement of an adversary proceeding or other contested matter, the parties to that proceeding or matter may no longer utilize the liberal provisions of Bankruptcy Rule 2004, but must seek discovery under the more restrictive standards of Bankruptcy Rule 7026." *In re Nat'l Risk Assessment, Inc.*, 547 B.R. 63, 65 (Bankr. W.D.N.Y. 2016); *see also In re*

*Bennett Funding Group, Inc.*, 203 B.R. at 28 ("The well-recognized rule is that once an adversary proceeding or contested matter has been commenced, discovery is made pursuant to the Fed. R. Bankr. P. 7026 *et seq.*, rather than by a Fed. R. Bankr. P. 2004 examination."); *In re Ecam Publications, Inc.*, 131 B.R. 556, 559 (Bankr. S.D.N.Y. 1991) ("[O]nce an adversary proceeding or another contested matter has been initiated, parties must proceed with discovery for that litigation pursuant to the Federal Rules of Civil Procedure.").

18. Courts in this circuit do not permit parties to use Rule 2004 to circumvent the more stringent discovery rules applicable in pending litigation outside of the bankruptcy court. *See In re MF Glob. Inc.*, 2013 WL 74580, at *2 (denying Rule 2004 examination of the defendants in a pending MDL as a "poorly-disguised and misguided effort" to the discovery schedule in the MDL); *In re Sunedison, Inc.*, 572 B.R. 482, 490 (Bankr. S.D.N.Y. 2017) (holding that the pending proceeding rule applied defendants in state court action from attempting to use motion for Rule 2004 examination in order to obtain, free of constraints imposed by state discovery rules, discovery that could and should be sought in pending state court action).

19. Despite the black letter law that prohibits parties from abusing Rule 2004 to obtain an advantage in pending litigation, PNC filed its 2004 Motion seeking discovery of information to support its State Court Action claims. It did so while intentionally shielding the Court from the knowledge that the State Court Action was pending. Both the 2004 Motion and the State Court Action are based upon PNC's attempted recovery of the $420,497.16 that Sprout collected during the period in which it serviced the mortgage loans under the parties' agreement. (*Compare* 2004 Motion, ¶¶ 14, 21-22; *with* State Compl., ¶¶ 55, 64, Count One). Indeed, the 2004 Motion seeks information to support is Proof of Claim, which contains the same underlying facts and allegations against the Debtor as the claims brought in the State Court Action. This is

the exact situation that is barred by the pending proceeding rule in order to preserve the safeguards of civil litigation. *See In re Enron Corp.*, 281 B.R. at 841 ("Based on Rule 2004's substantive differences, courts have expressed concern that Rule 2004 examinations not be used as a tactic to circumvent the safeguards of the Federal Rules of Civil Procedure."); *In re Glitnir banki hf.*, 2011 WL 3652764, at *4 ("The 'pending proceeding' rule reflects a concern that a party to litigation could circumvent his adversary's rights by using Rule 2004 rather than civil discovery to obtain documents or information relevant to the lawsuit.").

20. As such, based upon PNC's failure to provide the Court with controlling factual information, and the fact that such information precludes the relief sought in the 2004 Motion, the Court should reconsider its Order and deny PNC's 2004 Motion.

## CONCLUSION

21. For the foregoing reasons, the Court should reconsider its Order and deny the 2004 Motion.[3]

---

[3] Mr. Strauss reserves the right to seek sanctions against PNC pursuant to Fed. R. Bankr. P. 9011(b)(2) as a result of its intentional omission of material factual information from its 2004 Motion.

Dated: New York, New York
May 13, 2024

                KASOWITZ BENSON TORRES LLP

                By:  */s/ Matthew B. Stein*
                    Matthew B. Stein
                    Joshua N. Paul
                    Katherine C. Gauthier
              1633 Broadway
              New York, New York 10019
              (212) 506-1700
              MStein@kasowitz.com
              KBoatman@kasowitz.com
              *Attorneys for Michael Strauss*

## **CERTIFICATE OF SERVICE**

I, Matthew B. Stein, an attorney, hereby certify that on May 13, 2024, a copy of the foregoing document was duly served to all registered parties through the CM/ECF system for the United States Bankruptcy Court for the Eastern District of New York, and by email upon the certain parties entitled to receive email service.

*/s/ Matthew B. Stein*
Matthew B. Stein
